

290 W. Mt. Pleasant Avenue, Suite 2350, Livingston, NJ 07039 (973) 533-1000

**Richard D. Trenk, Esq.**
rtrenk@trenkisabel.law
(973) 533-1040

March 7, 2022

**Via ECF**

Honorable Jerrold N. Poslusny, Jr.
United States Bankruptcy Judge
Mitchell H. Cohen U.S. Courthouse
400 Cooper Street, 4th Floor
Camden, New Jersey 08101

  Re: **The Diocese of Camden, New Jersey**
     **Chapter 11 Case No. 20-21257 (JNP)**

     **Diocese's Opposition to Motion to Quash Subpoenas Served on Levy, Baldante, Finney & Rubenstein, P.C. and Jeff Anderson & Associates**

     **Return Date: March 9, 2022 at 10:00 a.m.**

Dear Judge Poslusny:

  This firm represents The Diocese of Camden, New Jersey (the "Diocese"), the chapter 11 debtor and debtor-in-possession in the above-captioned case. Please accept this letter memorandum in lieu of a more formal opposition to the *Motion of Levy, Baldante, Finney & Rubenstein, P.C. and Jeff Anderson & Associates for Entry of an Order Quashing Rule 2004 Subpoena Issued by Debtor* (the "Motion") [ECF 1173] filed on behalf of the law firms of Levy, Baldante, Finney & Rubenstein, P.C. (the "Baldante Firm") and Jeff Anderson & Associates (the "Anderson Firm", and collectively with the Baldante Firm, the "Plaintiffs' Firms") and the joinder (the "Joinder") [ECF 1179] filed by the Official Committee of Tort Claimant Creditors (the "Tort Committee," and collectively with Plaintiffs' Firms, the "Objecting Parties"). After issuing over 80 subpoenas and collecting thousands of pages of documents, the Objecting Parties seek, through the Motion and Joinder, to bar the Diocese from obtaining even the most basic information on the Survivor claims, asserting broad, uniform objections regarding privilege. As set forth herein, the Motion and Joinder must be denied.

  **A. Diocese Sought to Meet and Confer, Which was Rejected by the Plaintiffs' Firms**

  Unlike the Plaintiffs' Firms and the Tort Committee, which failed to comply with the Local Rules and meet and confer prior to the filing of the Motion and Joinder, the Diocese has attempted to meet and confer. On March 4, 2022, counsel for the Diocese spoke with Mr. Carroll

Honorable Jerrold N. Poslusny, Jr., U.S.B.J.
March 7, 2022
Page 2

and, at his request, sent follow up emails. On March 5, 2022, Mr. Carroll advised that no consensual resolution was possible.

In this regard, the Diocese agreed to limit the document requests (in addition to a deposition) to the following:

1. Any and all documents, information or facts which the Plaintiffs' Firms have concerning the value of any abuse claim including but not limited to particular settlements, verdicts, resolutions or other valuation information concerning any abuse claim which they are aware of in any jurisdiction;

2. Any and all documents, information or facts which the Plaintiffs' Firms have concerning any Diocese insurance coverage which their clients assert a right to and any other abuse claim where Plaintiffs' Firms have asserted claims against any insurance coverage(s) in which there has been a recovery, denial, declaratory judgment determination, settlement or other resolution implicating insurance coverages or defenses;

3. Any and all advertising budgets, documents or other information as to efforts to obtain claimants concerning the Diocese and the names of any non-attorney or non-law firm employees which have provided facts or information concerning any alleged claimants against the Diocese;

4. Any information which Plaintiffs' Firms have provided to The Claro Group or Thomas Baker concerning any of the issues or defenses asserted in the pending insurance settlement approval motion;

5. Any information or documents which Plaintiffs' Firms have concerning the reasonableness, or lack thereof, of the pending insurance settlement approval motion;

6. Agreements with any profit claims aggregators that were involved in the generation, sale and transfer of claims against the Diocese to the Plaintiffs' Firms; and

7. Information and all source documents supporting the report and conclusions made by the Anderson Firm in its "Anderson Report" regarding the Diocese, which has been widely publicly advertised by the Anderson Firm and is not privileged.

This attempt to meet and confer was rejected without any further communication from the Plaintiffs' Firms.

### B. The Information Sought is Relevant and Probative to the Issues in this Case

From the outset, it is important for the Court to consider the fact that the Plaintiffs' Firms have taken an active role in this case, including appearing at numerous hearings, filing pleadings with the Court, actively attending the mediation sessions before Chief Judge Kaplan, Judge Linares, and Your Honor, and participating in various other settlement negotiations with

Honorable Jerrold N. Poslusny, Jr., U.S.B.J.
March 7, 2022
Page 3

Diocesan counsel. In addition, as the Court is aware, 346 Survivor claims have been filed in this case. Of the 346 claims, 22 are duplicates, which leaves 324 for consideration. More than half of those claims (163 claims) were signed by Survivor counsel rather than the actual Survivor claimant. The Anderson Firm, alone, signed 23 proofs of claim on behalf of its clients. The Baldante Firm signed 64 proofs of claim on behalf of its clients. Notably, the Baldante Firm signed **every single claim filed** on behalf of its clients.

By signing these proofs of claim, the Plaintiffs' Firms actively certified to this Court, pursuant to Bankruptcy Rule 9011(b), "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support." Bankruptcy Rule 9011(b). The "factual contentions" and "reasonable inquiry" completed by the Plaintiffs' Firms relating to these claims, including, but not limited to, the value of such claims, is discoverable information. The Tort Committee has raised various objections to the Diocese's valuation of the Survivor claims, including taking issue with the Diocese's valuation based on the Independent Victims Compensation Program ("IVCP"). The Committee's preliminary objection asserts that the Diocese is attempting to settle these claims for "pennies on the dollar" based upon its unknown valuation of the claims. Presumably, on or about March 9, 2022, the Claro Group will provide its valuation of the claims. [ECF 1224 at ¶¶ 1, 2, 4, 5, 10, 13, 26, 42]. It is completely relevant to the analysis that this Court will have to perform under the Martin the source, background and information of the claims are provided by the very people who obtained the claims.

Indeed, on March 4, 2022, the Tort Committee took the deposition of Allen Wilen, CPA, the Diocese's financial adviser, who submitted a certification in support of the settlement motion regarding the valuation of the Survivor claims. [ECF 1087]. As part of that deposition, the Tort Committee took issue with the fact that the Diocese reduced certain claim values based on claims that: (i) do not allege any connection to the Diocese or the Parishes; (ii) claims against priests who have no other claims made against them and no evidence of misconduct has **ever** been reported against the priest; (iii) the claim is insufficiently detailed to determine who the alleged abuser is; or (iv) the victim of abuse was an adult at the time of the alleged abuse. In addition, the Tort Committee questioned Mr. Wilen regarding the 33 claims that were given no value. These claims include, but are not limited to, the following: (i) claims of abuse made against Boy Scouts of America leaders with no connection to the Diocese or a Parish; (ii) claims made against priests that were not part of the Diocese; (iii) previously settled claims; and (iv) claims with no details.

Thus, for the Tort Committee and Plaintiffs' Firms to now assert that information underlying the claims filed by the Plaintiffs' Firms is not discoverable is nonsense. These "underlying facts" are not subject to attorney client or work product privilege. See In re Grand Jury Proc. (Twist), 689 F.2d 1351, 1351 (11th Cir. 1982) (holding that a government subpoena requesting an attorney to produce documents that would reflect date, place and time of meetings with client are not encompassed within the privilege); Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981) (work product doctrine does not extend to the underlying facts relevant to the litigation). Indeed, these assertions of privilege shield only confidential communications, not

Honorable Jerrold N. Poslusny, Jr., U.S.B.J.
March 7, 2022
Page 4

facts. As the Ninth Circuit stated in Murdoch v. Castro, "[b]ecause the attorney-client privilege protects only a communication between an attorney and a client, not the facts that are communicated, a defendant would remain free to question the witness about the underlying facts." 609 F.3d 983, 995 (9th Cir. 2010); see also Mitchell Eng'g v. City & Cnty San Francisco, 2010 U.S. Dist. LEXIS 53958, at *8 (N.D. Cal. May 6, 2010) ("the facts [deponent] learned through his investigations are not protected by the work product privilege"); United Phosphorus, Ltd. v. Midland Fumigant, Inc., 164 F.R.D. 245, 249 (D. Kan. 1995) ("When a party employs counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested."). Here, by signing the proofs of claim on behalf of their clients, the Plaintiffs' Firms placed themselves in a position to testify regarding the underlying facts they received that entitle them to sign a proof of claim. The Diocese is entitled to this information. To the extent that the Plaintiffs' Firms communicated this information to the Tort Committee or any expert, the Diocese is entitled to that information as well.

In light of the fact that 170 of the 324 claims are claims that the Diocese had **absolutely no knowledge of** prior to their filing in the Chapter 11, substantial valuation issues exist. As this Court is aware, the Diocese actively (and proactively) settled claims and advertised the IVCP program even before the statute of limitations was opened. Indeed, the advertising program in advance of the IVCP was **widely** publicized in newspapers, radio, on websites, the *Catholic Star Herald*, and Parish pamphlets. For over 20 years, the Diocese has advertised its hotline for victims of sexual abuse and provided free therapy to those who requested it. Importantly, of those 170 completely new claims, 152 claims were signed by attorneys rather than the Survivor claimant, including some of the claims signed by the Plaintiffs' Firms. This information is directly relevant to the value of the claims and defenses to such claims. As a result, the Diocese is also entitled to information regarding the Plaintiffs' Firms advertising budgets, the method in which claims were solicited, and whether such claims were obtained through a claims aggregator (and, if so, the number of claims, the name of the claims aggregator, and other relevant information).

In the end, the Court will determine the weight to be given to the evidence adduced at the evidentiary hearing on the settlement motion. However, for the purposes of discovery, the Plaintiffs' Firms should not be able to blanketly close the door on obtaining basic information as to the nature, extent and validity of claims their firms filed – particularly where the claim is signed and attested to by an attorney. While the Diocese does not seek to object to particular claims at this time, it believes that to the extent the Court has to make a determination as to the reasonableness of the proposed $30 million and those amounts are questioned by the Tort Committee on the basis that the claims, in the aggregate, far exceed $30 million, it is completely relevant to the Court's consideration to know the process by which claims were solicited by the Plaintiffs' Firms and the underlying facts regarding the claims submitted to this Court under penalty of perjury by the Plaintiffs' Firms.

Honorable Jerrold N. Poslusny, Jr., U.S.B.J.
March 7, 2022
Page 5

### C. The Plaintiffs' Firms' Reliance on Shelton is Unavailing

The Diocese has already evidenced that the Plaintiffs' Firms have information relevant and probative to the value of the claims asserted in this case. In response, the Plaintiffs' Firms attempt to rely on the Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986) for the proposition that the Plaintiffs' Firms should not be subject to a deposition. This argument is unavailing, as the Plaintiffs' firms opened themselves up to depositions as a result of their own conduct in this case – i.e. signing 87 of the 324 non-duplicative claims in this case.[1]

The depositions sought by the Diocese relate to information only known to the Plaintiffs' Firms – in particular, the diligence done by such firms prior to signing a proof of claim and the marketing efforts taken to obtain such claims. Shelton does not protect counsel from these inquiries. To the contrary, this is an obligation solely borne by the attorney signing a proof of claim. In re Obasi, No. 10-10494 SHL, 2011 WL 6336153, at *1 (Bankr. S.D.N.Y. Dec. 19, 2011). In Obasi, the court "found that the conduct [at issue] runs afoul of Bankruptcy Rule 9011" because "[t]he person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court" and "is personally responsible for reviewing the document." 2011 WL 6336153, at *3, 4, 8; In re Taylor, 655 F.3d 274, 284 (3d Cir. 2011).[2] As the Third Circuit has explained, this duty "requires more than a rubber-stamping of the results of an automated process by a person who happens to be a lawyer." Taylor, 655 F.3d 274, 288 (3d Cir. 2011). Further, by its provisions, Bankruptcy Rule 9011 places "an affirmative duty on attorneys and litigants to make a reasonable investigation (under the circumstances) of the facts and the law before signing and submitting any petition, pleading, motion or other paper.'" 10 Collier on Bankruptcy ¶ 9011.04[2][a] at 9011–7. No other party can be deposed regarding these facts, which also relate directly to the value of a claim. Thus, Shelton does not apply.

Similarly, no other party can be deposed regarding the methods the Plaintiffs' Firms used to obtain such claims.

Accordingly, Plaintiffs' Firms' reliance on Shelton must be rejected.

### D. The Plaintiffs' Firms' and Tort Committee's Assertion of Privilege must be Rejected or Limited

As set forth above, the Plaintiffs' Firms and the Tort Committee have broadly rejected to produce **any** documents to the Diocese as a result of privilege. The Court should reject such an assertion of privilege. In this regard, it is the Objecting Parties' burden to prove the existence of privilege as to any documents that are withheld. In re FiberMark, Inc., 330 B.R. 480, 502 (Bankr. D. Vt. 2005) (citing In re Bonanno, 344 F.2d 830, 833 (2d Cir.1965)) ("The party asserting the

---

[1] More than a quarter of all the claims signed in this case were signed by the Anderson Firm and the Baldante Firm, alone.

[2] In Obasi, the Court determined that the actual attorney signing the claim must be responsible for this reasonable inquiry – it could not even be delegated to an associate working with the partner signing the form.

Honorable Jerrold N. Poslusny, Jr., U.S.B.J.
March 7, 2022
Page 6

privilege has the burden of affirmatively raising the privilege and has the burden of proof. That burden is not, of course, discharged by 'mere conclusory or *ipse dixit* assertions.'"). The Objecting Parties' blanket assertions, without any factual support, do not entitle the Plaintiffs' Firms to wholly ignore their obligations pursuant to the Bankruptcy Code and Bankruptcy Rules regarding discovery.

Moreover, with respect to communications between the Tort Committee and the Plaintiffs' Firms, it is axiomatic that the attorney-client and work product privilege only applies to communications relating to Survivors as a whole, and not as to communications about individual claimants or members of the Tort Committee. FiberMark, 330 B.R. at 502 (noting that privileges do "not protect work done by the Committee's counsel for the benefit of individual members of the Committee."). The Objecting Parties cannot merely rely on their blanket assertions of privilege. Indeed, the Tort Committee recognizes this and asserts in its Joinder that: "The [Tort] Committee is in the process of creating a document-by-document privilege log as to [Tort] Committee Materials responsive to the discovery served on it, which will encompass materials sought by the Subpoenas." [ECF 1179 at ¶11]. Despite this representation to the Court, it has failed to do so.

The Plaintiffs' Firms, on the other hand, have done even less to evidence that **all** the information they have is privileged. As the Motion readily admits, the Diocese has sought more information than just documents and communications sought between the Plaintiffs' Firms and the Tort Committee. To the extent that the Plaintiffs' Firms are going to rely on blanket assertions of privilege, the Plaintiffs' Firms should similarly have to provide a privilege log regarding such items.

Without any information put before this Court to evidence that the information is blanketly subject to an applicable privilege, the Court should not, and cannot, quash **any** aspect of the subpoenas issued to the Plaintiffs' Firms. Indeed, neither the Plaintiffs' Firms nor the Tort Committee have submitted any certification to the Court evidencing that **every single** communication and document is subject to privilege. The Court cannot simply rely on representations made in briefs (i.e. the Motion **and** the Joinder). There is absolutely no evidence before this Court that this information is privileged and the burden is on the Objecting Parties. In re Grand Jury Investigation, 974 F.2d 1068, 1070-1071 (9th Cir. 1992) ("The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications.").

Finally, assertions of privilege relating to deposition questions should be dealt with on a question-by-question basis. In this regard, Courts disfavor preemptively shutting down depositions because of hypothetical privilege concerns and instead address privilege on a question-by-question basis. See, e.g., Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co., 615 F.2d 595, 598 (3d Cir. 1980) (privilege may only be asserted question-by-question, and blanket privilege may not be asserted before hearing those questions); Robocast, Inc. v. Microsoft Corp., 2013 WL 1498666, at **1–2 (D. Del. 2013) (denying motion to quash deposition subpoena of prosecution counsel, rejecting the counsel's blanket assertion of privilege and instructing that

Honorable Jerrold N. Poslusny, Jr., U.S.B.J.
March 7, 2022
Page 7

privilege objections could be made on a question-by-question bases at the deposition); In re Commonwealth Fin. Corp., 288 F.Supp. 786 (E.D.Pa.1968), aff'd, 408 F.2d 640 (3d Cir. 1969) (affirming district court in holding that a witness in a bankruptcy proceeding could not assert a blanket fifth amendment privilege prior to hearing the questions); In re Grand Jury Matters, 751 F.2d 13, 17 (1st Cir. 1984) ("It is well established that blanket assertions of privilege . . . are extremely disfavored, and that persons claiming a privilege must establish the elements of privilege as to each record sought and each question asked so that . . . the court can rule with specificity.") (internal citations and quotations omitted).

   For the reasons set forth herein, the Motion should be denied. Thank you for the Court's time and consideration of this matter.

              Respectfully submitted,

              */s/ Richard D. Trenk*

              Richard D. Trenk

cc: All Notice Parties (via ECF)

4864-7136-6674, v. 1