| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption In Compliance With D.N.J. LBR 9004-1 | |
|---|---|
| **Squire Patton Boggs (US) LLP**<br>Mark D. Sheridan, Esq.<br>Mark C. Errico, Esq.<br>382 Springfield Ave., Suite 300<br>Summit, NJ 07401<br>Telephone: 973-848-5600<br>Email: mark.sheridan@squirepb.com<br>Email: mark.errico@squirepb.com<br><br>**O'Melveny & Myers LLP**<br>Tancred Schiavoni, Esq. (admitted *pro hac vice*)<br>Matthew L. Hinker, Esq. (admitted *pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Telephone: 212-326-2000<br>Email: tschiavoni@omm.com<br>Email: mhinker@omm.com<br><br>*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America* | |
| *In re*:<br><br>THE DIOCESE OF CAMDEN, NEW JERSEY,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-21257 (JNP) |

# JOINT MOTION TO COMPEL THE CLAIMANTS' ATTORNEYS TO SUBMIT THE DISCLOSURES REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019

## TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

- I. Out-of-State Attorneys ........ 3
  - A. AVA Law Group, Inc. ........ 5
  - B. Timothy Kosnoff, Esq. / Kosnoff Law PLLC ........ 7
  - C. Fasy Law ........ 8
- II. New Jersey Attorneys Who Have Appeared In This Matter ........ 9
  - A. Jeff Anderson & Associates, P.A. ........ 9
  - B. Levy, Baldante, Finney & Rubenstein, PC ........ 9

ARGUMENT ........ 10

- I. Rule 2019 requires any attorney who represents more than one client to supply, among other things, the identity of every client he or she represents. ........ 10
  - A. Rule 2019's requirements are both straightforward and mandatory. ........ 10
  - B. Rule 2019, which has an "extremely broad" scope, is a disclosure provision designed to ensure that all matters in a Chapter 11 reorganization process are transparent and subject to scrutiny. ........ 12
  - C. Rule 2019 requires detailed disclosures, particularly in mass tort cases. ........ 13
- II. As other courts have held, Rule 2019 mandates disclosure here. ........ 14
  - A. Claimants' Attorneys have the obligation to disclose the information mandated under Rule 2019 at this stage. ........ 14
  - B. Jeff Anderson and other lawyers representing multiple abuse claimants have been ordered to provide rule 2019 disclosures in other abuse bankruptcies. ........ 14
  - C. It is particularly important here to disclose the facts and circumstances of claimants' counsels' respective representations. ........ 15
- III. All attorneys representing multiple claimants must make disclosures as mandated by Rule 2019. ........ 16
- IV. New Jersey court rules and statutes prohibit the unauthorized practice of law, and Rule 2019. ........ 19
- V. This Court should order claimants' counsel to comply with Rule 2019 or, in the alternative, bar them from participating in the bankruptcy. ........ 21

WAIVER OF MEMORANDUM OF LAW ........ 24

CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants*,
321 B.R. 147 (D.N.J. 2005) .................... passim

*Cape May Cty. Bar Ass'n v. Ludlum*,
45 N.J. 121 (1965) .................... 20

*In re Archdiocese of Saint Paul and Minneapolis*,
No. 15-30125 (Feb. 23, 2017).................... 14, 15, 17, 18

*In re Baldwin United Corp.*,
52 B.R. 146 (Bankr. S.D. Ohio 1985).................... 23

*In re Boy Scouts of America and Delaware BSA, LLC*,
Case No. 20-10343 (Bankr. D. Del. Apr. 13, 2004) .................... 6, 7, 22

*In re CF Holdings Corp.*,
145 B.R. 124 (Bankr. D. Conn. 1992) .................... 13, 21

*In re Congoleum Corp.*,
No. 03-51524 (Bankr. D.N.J. Sept. 2, 2005) .................... 18, 23

*In re Elec. Theatre Rests. Corp.*,
57 B.R. 147 (Bankr. N.D. Ohio 1986).................... 12, 21

*In re Estate of Margow*,
77 N.J. 316 (1978) .................... 20

*In re Garden Ridge Corp.*,
No. 04-10324 (DDS), 2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005).................... 15

*In re Ionosphere Clubs, Inc.*,
101 B.R. 844 (Bankr. S.D.N.Y. 1989).................... 14

*In re Keene Corp.*,
205 B.R. 690 (Bankr. S.D.N.Y. 1997).................... 21

*In re Marriage of Kosnoff*,
No. 80922-9-I (Wash. Ct. App. Apr. 19, 2021).................... 8

*In re Mid-Valley, Inc.*,
Case No. 03-35592 (Bankr. W.D. Pa. Apr. 13, 2004) .................... 23

*In re N. Bay Gen. Hosp., Inc.*,
404 B.R. 443 (Bankr. S.D. Tex. 2009) .................... 12, 14

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Oklahoma P.A.C. First Ltd. P'ship*,
122 B.R. 387 (Bankr. D. Ariz. 1990) ............ 12, 21, 23

*In re Semel*,
411 F.2d 195 (3d Cir. 1969) ............ 13

*In re The Muralo Company Inc.*,
295 B.R. 512 (Bankr. D.N.J. 2003) ............ 12, 13

*In re Vestra Indus., Inc.*,
82 B.R. 21 (Bankr. D.S.C. 1987) ............ 21

*In the Matter of F&C Int'l, Inc.*,
1994 Bankr. LEXIS 274 (Bankr. S.D. Ohio Feb. 18, 1994) ............ 12

*Nantucket Investors II v. California Federal Bank (In re Palms Associates)*,
61 F.3d 197 (3d Cir. 1995) ............ 11

*Reid v. White Motor Corp.*,
886 F.2d 1462 (6th Cir. 1989) ............ 23, 24

*Stack v. P.G. Garage, Inc.*,
7 N.J. 118 (1951) ............ 20

**Statutes**

11 U.S.C. § 1103 ............ 15

NJ Rev Stat § 2C:21-22 ............ 19

**Other Authorities**

Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 Conn. L. Rev. 913 (1994) ............ 13

*UPL Opinion 40*, 176 N.J.L.J. 1195 (June 21, 2004) ............ 20

**Rules**

Fed. R. Bankr. 2019(c)(1) ............ 18

Fed. R. Bankr. 2019(c)(4) ............ 18

Fed. R. Bankr. P. 2019 ............ 10

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Fed. R. Bankr. P. 2019(c) .......... 11

Fed. R. Bankr. P. 2019(c)(4) .......... 11

Fed. R. Bankr. P. 2019(e)(2) .......... 23

Model R. Prof'l Conduct 1.2(a), 1.2 cmt. 3 .......... 17

Model R. Prof'l Conduct 1.7 .......... 17

Model R. Prof'l Conduct 1.7 cmt. 23 .......... 17

Model R. Prof'l Conduct 1.8(g) .......... 17

**Treatises**

9 Collier on Bankruptcy ¶ 2019.01 (16th ed. 2020) .......... 16

9 Norton Bankr. L. & Prac. 3d § 172:22 .......... 23

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, "LMI"), Granite State Insurance Company ("Granite State"), Lexington Insurance Company ("Lexington"), and Interstate Fire & Casualty Company ("Interstate", and collectively with Century, Granite State, Lexington, and LMI, the "Movants") jointly submit this motion (the "Motion") for entry of an Order, compelling the Claimants' Attorneys (defined below) to provide information required by Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019"); or in the alternative, barring the Claimants' Attorneys from participating in the bankruptcy for noncompliance with Rule 2019.

## PRELIMINARY STATEMENT[1]

Official committees, such as the Tort Claimants' Committee, exist to compel similarly situated claimants to negotiate as one and to impose on the committee and its counsel the fiduciary duty to treat all the constituents of the committee equally. In this Chapter 11 case, a number of Claimants' Attorneys attempt to participate on behalf of multiple claimants—indeed, these Claimants' Attorneys orchestrated the filing of numerous Proof of Claims on behalf of creditors, but have done so without adhering to the clear requirements of Rule 2019.

It is crucial for the integrity of the bankruptcy process that the Claimants' Attorneys provide complete and thorough disclosures under Rule 2019. Further, the disclosure of the Claimants' Attorneys' relevant financial arrangements is a mandatory requirement under Fed. R. Bankr. P. 2019(c), as is the disclosure of each contingent creditor on whose behalf they are authorized to act. This requirement addresses the need for policing creditor groups in chapter 11 cases. As courts in the District of New Jersey have held, Rule 2019 compels the disclosure of "fee

[1] Pursuant to D.N.J. 9013-1, no separate memorandum of law is necessary

sharing, cocounsel and referral relationships (and the potential conflicts of interest that may arise therefrom)." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147, 167 (D.N.J. 2005). Rule 2019 is part of the disclosure scheme of the Bankruptcy Code and is designed to foster the goal of transparency and reorganization plans that deal fairly with creditors.

As of the present date, there are thirty-three attorney groups (the "Claimants' Attorneys") who have filed proofs of claims on behalf of multiple creditors.[2] At least two of those law firms have also made filings in the present matter. *See infra* at 6. None of them have filed Rule 2019 disclosures, thus making it impossible to determine the full scope of who they purport to represent.

And a brief look into some of the attorneys representing the creditors' hammers home the vitality of Rule 2019. For example, five[3] of the proofs of claims filed list "Timothy Kosnoff, Esquire" as their attorney. But Mr. Kosnoff has himself alleged in court filings that he was "retired" from the practice of law. Mr. Kosnoff has also filed several claims in conjunction with AVA Law Group, an entity who, in turn, filed several claims in this litigation against "Scoutmasters": those claims were, in all likelihood, ones which should have been filed in the Boy Scouts of America bankruptcy litigation. *See infra* at 3. Currently, the Insurers have no information about the identity of the claims held by ***any of these*** entities, their retention

[2] The Claimants' Attorneys are: (i) Andreozzi + Foote; (ii) Andrews & Thornton; (iii) AVA Law Group; (iv) Carl D. Poplar PA; (v) Dalton & Associates, P.A./Connor Dalton P.A.; (vi) Danzinger & De Llano; (vii) Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C; (viii) Fasy Law; (ix) Hartstein Law Offices, LLC; (x) Herman Law; (xi) Hoffman DiMuzio; (xii) Horowitz Law; (xiii) Hurley McKenna & Mertz, P.C.; (xiv) James, Vernon & Weeks, P.A.; (xv) Janet, Janet & Suggs; (xvi) Jeff Anderson & Associates; (xvii) Ketterer Browne & Associates; (xviii) Kline & Specter; Laffey, Bucci & Kent; (xix) Law Offices of Mitchell Garabedian; (xx) Levy Baldante Finney & Rubenstein, P.C.; (xxi) Laffey, Bucci & Kent; (xxii) Levy Konigsberg LLP; (xxiii) Noaker Law Firm; (xxiv); Matthews & Associates; (xxv) McLaughlin & Lauricella, P.C.; (xxvi) Merson Law Office; (xxvii) Pfau Cochran Vertetis Amala PLLC; (xxviii) Pogust Millrood, LLC; (xxix) Reich & Binstock, LLP; (xxx) Slater Slater Schulman; (xxxi) Soloff & Zervanos; (xxxii) The Rothenberg Law Firm; (xxxiii) Williams Cedar.

[3] A sixth proof of claim lists Kosnoff Law, PLLC.

agreements, or fee-sharing, co-counsel or referral arrangements—all information that Rule 2019 mandates they provide.

## BACKGROUND

Among the thirty-three Claimants' Attorneys—all thirty-three of which have filed proofs of claims on behalf of multiple creditors—two groups deserve particular attention. The first are a set of out-of-state attorneys with connections to mass-marketing tort companies. The second are those attorneys who have participated in oral argument and/or the filing of briefs in this matter.

### I. Out-of-State Attorneys

A review of the claims show that more than 100 of the claims filed in this litigation are filed by firms with no presence in the state of New Jersey. The below table lists those law firms, along with the proof of claim numbers associated with those claims.

| Out-of-State Law Firms Which Have Filed Claims | | |
|---|---|---|
| **Plaintiff Attorney** | **Amount of Claims Filed** | **Proof of Claim Nos.** |
| Andrews & Thornton | 3 | 286, 321, 390 |
| AVA Law Group | 14 | 414, 416, 417, 418, 419, 423, 424, 425, 427, 430, 484, 485, 486, 487 |
| Danziger & De Llano, LLP | 3 | 79, 82, 86 |
| Fasy Law | 2 | 168, 169 |
| Herman Law | 8 | 467, 477, 479, 480, 481, 482, 493, 494 |
| Horowitz Law | 10 | 88, 110, 114, 120, 127, 138, 190, 192, 412, 540 |
| Hurley McKenna & Mertz, P.C. | 5 | 161, 162, 183, 212, 272 |
| James, Vernon & Weeks | 11 | 116, 117, 118, 119, 160, 173, 351, 391, 436, 492, 541 |
| Janet, Janet & Suggs | 4 | 261, 262, 468, 470 |
| Ketterer Browne & Associates | 10 | 99, 100, 101, 102, 103, 112, 132, 384, 398, 413 |

| Out-of-State Law Firms Which Have Filed Claims | | |
|---|---|---|
| **Plaintiff Attorney** | **Amount of Claims Filed** | **Proof of Claim Nos.** |
| Laffey, Bucci & Kent, LLP | 4 | 375, 483, 491, 495 |
| Law Offices of Mitchell Garabedian | 3 | 80, 121, 449 |
| Matthews & Associates | 16 | 497, 498, 499, 500, 501, 502, 503, 504, 507, 508, 509, 510, 511, 512, 513, 515 |
| Noaker Law Firm | 11 | 116, 117, 118, 119, 160, 173, 351, 391, 436, 492, 541 |
| Pfau Cochran Vertetis Amala PLLC | 6 | 163, 164, 165, 166, 426, 431 |
| Pogust Millrood, LLC | 2 | 375, 483 |
| Reich & Binstock, LLP | 4 | 394, 415, 428, 437 |
| Tim Kosnoff/Kosnoff PLLC | 14 | 414, 416, 417, 418, 419, 423, 424, 425, 427, 430, 484, 485, 486, 487 |
| Notes:<br>[1] Certain Proofs of Claim were filed by multiple attorneys/attorney firms, and therefore may be listed twice. | | |

Oftentimes, these firms have submitted proofs of claims where the attorneys themselves were the sole signatory. Overall, 152 claims were signed by a member of the law firm (including New Jersey firms)—below is a chart listing the out-of-state law firms which served as signatory on those claims.

| Out-of-State Law Firms Which Have Served As Signatory On Claims | |
|---|---|
| **Plaintiff Attorney** | **Amount of Claims Signed** |
| Andrews & Thornton | 3 |
| AVA Law Group | 1 |
| Fasy Law | 2 |
| Herman Law | 9 |
| Janet, Janet & Suggs | 4 |
| Ketterer Browne & Associates | 4 |
| Laffey, Bucci & Kent, LLP | 1 |
| Reich & Binstock, LLP | 4 |
| Tim Kosnoff/Kosnoff PLLC | 1 |
| Notes:<br>[1] Certain Proofs of Claim were filed by multiple attorneys/attorney firms, and therefore may be listed twice. | |

While the issues are not unique to any one individual firm and/or attorney, there are several firms that highlight the issues and potential conflicts which Rule 2019 is intended to address.

### A. AVA Law Group, Inc.

Fourteen claims filed in this case indicate that those claimants are represented by the AVA Law Group, Inc. in San Diego, California.[4] Of those, four appear to be erroneously filed claims against "Scoutmasters" or "Scout Leaders," presumably because they were intended to be filed in the bankruptcy litigation regarding the Boy Scouts of America.[5] *See In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (Bankr. D. Del. Apr. 13, 2004).

[4] *See* Proof of Claim Nos. 414, 416, 417, 418, 419, 423, 424, 425, 427, 430, 484, 485, 486, 487.

[5] *See* Proof of Claim Nos. 416, 419, 425, 484.

AVA Law Group, Inc. maintains its own website, which lists a single lawyer, Andrew Van Arsdale. Though this website states that "over the years, [Mr. Van Arsdale] has helped thousands of people who have been injured," he only received a law degree in 2018.[6] The only other listed employee is a paralegal whose responsibilities include "head[ing] communication between AVA Law Group and co-counsel firms."[7] The disclaimer goes on to disclose "[s]ervices may be performed by affiliated law firms of AVA Law Group, Inc. who will be jointly responsible for your case."[8] The address listed on the AVA Law Group website in California appears to be little more than a mail drop, where solo practitioners and small partnerships share a storefront office space.[9]

Mr. Van Arsdale is separately listed as an Owner and Operations Director at Reciprocity Industries, a company located in Montana that specializes in marketing tort claims.[10] Mr. Van Arsdale's bio for that company explains that his background is in advertising and intake for plaintiffs' law firms, where he worked for the last decade.[11] Reciprocity focuses on online and television advertising and arranges call-center services.[12] And a whistleblower who worked as an Intake Professional for Reciprocity shed a light on Reciprocity's practices, which leave great cause for concern.[13] For example:

---

6 Schiavoni Decl. Ex. 12 (AVA Law Group, Inc. homepage).

7 *Id.*

8 *Id.*

9 Schiavoni Decl. Ex. 7.

10 Schiavoni Decl. Ex. 8.

11 *Id.*

12 *Id.*

13 Schiavoni Decl. Ex. 15 (*In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343, (Bankr. D. Del. Apr. 13, 2004) (Dkt. 3857, Declaration of Veronica Stenulson)),

- Employees at Reciprocity were "told to change the details of a caller's story in order to make their claims more viable."[14]
- If a Claimant change their mind about pursuing a claim—which happened "more than [employees] thought they would—or were told they did not qualify, employees at Reciprocity were instructed "to leave the claim on file, but to inform he client that their claim had been canceled," even though they had not."[15]
- The whistleblower herself noted that, due to the incentives and pressure placed on her, she rejected *only ten prospective claimants* out of approximately 6,000.[16]

Finally, Mr. Van Arsdale is not licensed to practice law in New Jersey.

**B. Timothy Kosnoff, Esq. / Kosnoff Law PLLC**

Kosnoff Law, PLLC is listed as counsel, and Timothy Kosnoff, Esquire is listed as attorney for six proofs of claim in this matter. A search for Kosnoff Law only turns up Kosnoff.com, which indicates that Mr. Kosnoff no longer practices law.[17] Indeed, Mr. Kosnoff argued that he was no longer practicing law before Washington state court in recent years.[18] Mr. Kosnoff is described as having "transitioned" to being a consultant providing such services as "media commentator" and

---

[14] *Id.* ¶ 17.

[15] *Id.* ¶ 12, 13.

[16] *Id.* ¶ 7.

[17] Schiavoni Decl. Ex. 9 (Kosnoff.com homepage) ("Tim has transitioned to a new phase of his celebrated career. He is now available to serve as a consultant, expert witness, mediator, lecturer and media commentator."). Elsewhere on the same website, other attorneys at Kosnoff law and offices in Washington and Puerto Rico are referenced, but no address is listed for either of those offices and no other attorneys are listed on his website. *Id.* Ex. 10 (Kosnoff.com Firm Overview) ("The attorneys at Kosnoff Law are dedicated to assisting the survivors of sexual abuse. . . . From our offices in Seattle, Washington and now San Juan, Puerto Rico we have successfully represented clients throughout the United States, Canada and Latin America.").

[18] *See In re Marriage of Kosnoff*, No. 80922-9-I (Wash. Ct. App. Apr. 19, 2021) (Schiavoni Decl. Ex. 4) (court rejected Kosnoff's argument that he was not obligated to pay spousal support pursuant to a marital dissolution order where payments were contingent on his remaining a practicing lawyer).

consulting on mass tort advertising.[19] Mr. Kosnoff's Washington State Bar directory entry and website list the same Houston, Texas address for "Kosnoff Law PLLC."[20] However, Mr. Kosnoff is not licensed to practice law in Texas,[21] and the address listed for Kosnoff Law in Houston is the address of a mail drop box.[22] When Kosnoff was asked to explain his mailing situation, he had explained that he was living on a "55-foot sailing yacht," and "was a resident in Puerto Rico, living on my boat."

Mr. Kosnoff is not licensed to practice law in New Jersey.

### C. Fasy Law

Fasy Law appears to be a sole practitioners' office operating out of the Seattle area—nothing on the firm's website indicates that there are any other attorneys practicing in this case.[23] Fasy Law is the signatory on two proofs of claims filed in this matter. However, Mr. Fasy's LinkedIn profile appears to indicate that his primary current occupation is as the "Vice President, General Counsel" at Coffman Engineers in Seattle.[24] His prior occupations, however, indicate that he was a prior partner with Kosnoff Fasy PLLC until 2016, and a Senior Associate at Pfau Cochran

---

[19] Schiavoni Decl. Ex. 9 (Kosnoff.com homepage).

[20] *Id.* Ex. 11 (Timothy Kosnoff Washington State Bar profile).

[21] A search on the Texas Bar website (texasbar.com) returns no results for "Kosnoff", "Kosnoff Law" or "Kosnoff Law PLLC".

[22] Google Maps shows mail drop box center, US Global Mail, at 1321 Upland Drive. Schiavoni Decl. Ex. 14. The website for US Global Mail confirms that the company provides "an actual street address, not a PO Box" that will be:

> Your Name or Company
> 1321 Upland Dr.
> PMB [Personal Mail Box number]
> Houston, TX
> 77043

Schiavoni Decl. Ex. 13.

[23] *See* Schiavoni Decl. Ex. 5 (Fasy Law, PLLC homepage).

[24] *See* Schiavoni Decl. Ex. 6 (Daniel Fasy LinkedIn).

Vertetis Kosnoff prior to that.[25] As noted above, Mr. Kosnoff has filed claims in this matter, and Pfau Cochran Vertetis Amala PLLC has filed six additional claims against the Diocese of Camden.

Mr. Fasy is not licensed to practice law in New Jersey.

## II. New Jersey Attorneys Who Have Appeared In This Matter

### A. Jeff Anderson & Associates, P.A.

Jeff Anderson and his law firm represent at least five unsecured creditors at the time the Diocese filed the petition and multiple other claimants, including one pre-petition claimant whose civil case is currently stayed.[26] *See* ECF Nos. 1, 15. Jeff Anderson & Associates filed 67 claims in this case, and served as signatory on 24 of those claims.[27] The Anderson Firm filed a brief on the Court's docket on behalf of "Certain Abuse Survivor Claimants." *See* ECF No. 356. Mr. Anderson has also appeared at hearings and argued on behalf of all of his firms' clients, some of who serve as individual members of the Official Committee of Tort Claimant Creditors. *See* ECF No. 1173 at ¶ 5 (Anderson and Baldante Motion to Quash).

### B. Levy, Baldante, Finney & Rubenstein, PC

John Baldante and his law firm represent one of the nine members of the Official Committee of Tort Claimants and multiple other claimants, including sixteen pre-petition claimants whose civil cases are currently stayed. *See* ECF No. 15; *see also* ECF No. 1173 at ¶ 5 (Anderson and Baldante Motion to Quash). According to the Chapter 11 Petition, the Baldante

---

[25] *Id.*

[26] Jeff Anderson & Associates is based in Minneapolis, MN but following the enactment of S477 which reopened the statute of limitations in civil actions for certain sexual abuse claims, Jeff Anderson & Associates opened a small satellite office in Edison, NJ. From publicly available websites, it appears that office is staffed by one (1) attorney who was hired in April 2020.

[27] *See* Proof of Claim Nos. 220, 221, 222, 223, 225, 226, 228, 229, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 422, 435, 438, 441, 444, 445, 452, 454, 455, 456, 458, 459, 460, 461, 462, 463, 464, 471, 472, 473, 474, 475, 489, 490, 505, 516, 517, 518, 520.

Firm represented at least fifteen unsecured creditors at the time the Diocese filed the petition. *See* ECF No. 1. After the bankruptcy was filed, Levy, Baldante, Finney & Rubenstein, PC filed 67 claims in this case, and they served as signatory on nearly all (63) of those claims.[28] John Baldante appeared as a mediation party in this case, arguing on behalf of multiple clients. Similar to Mr. Anderson, Mr. Baldante has clients who serve as individual members of the Official Committee of Tort Claimant Creditors.

## ARGUMENT[29]

### I. Rule 2019 requires any attorney who represents more than one client to supply, among other things, the identity of every client he or she represents.

#### A. Rule 2019's requirements are both straightforward and mandatory.

The straightforward wording of Rule 2019[30] requires that:

> a verified statement setting forth the information specified in subdivision (c) of this rule ***shall*** be filed by ***every*** group or committee that consists of or represents . . . multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.

Rule 2019(c), in turn, provides:

> (c) Information required. The verified statement ***shall include***:
>
> (1) the pertinent facts and circumstances concerning:

[28] *See* Proof of Claim Nos. 133, 134, 135, 136, 137, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 157, 158, 159, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 214, 215, 216, 217, 218, 219, 224, 227, 230, 432, 433, 439, 440, 443, 446, 447, 448, 449, 450, 451, 453, 457, 469, 506.

[29] Unless otherwise indicated, all emphasis is added and internal quotation marks and citations are omitted.

[30] Rule 2019 was amended and reorganized in 2011. The pre-2011 version of 2019(a) stated, in pertinent part:

> (a) Data Required. In a . . . chapter 11 reorganization case . . . every entity . . . representing more than one creditor . . . ***shall file*** a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof . . . ; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity . . . ." Fed. R. Bankr. P. 2019 (pre-2011 amendment).

> (A) with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code . . . the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act;
>
> (B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged;
>
> (2) if not disclosed under subdivision (c)(1), with respect to an entity, and ***with respect to each member of a group or committee***:
>
> (A) ***name and address***;
>
> (B) the ***nature and amount of each disclosable economic interest***[31] held in relation to the debtor as of the date the entity was employed or the group or committee was formed;
>
> . . .
>
> (3) if not disclosed under subdivision (c)(1) or (c)(2), ***with respect to each creditor or equity security holder represented by an entity, group, or committee***, other than a committee appointed under § 1102 or § 1114 of the Code [11 USCS § 1102 or 1114]:
>
> (A) ***name and address***; and
>
> (B) the ***nature and amount of each disclosable economic interest*** held in relation to the debtor as of the date of the statement.

Fed. R. Bankr. P. 2019(c). The Rule further requires that the attorneys' statement shall include "a copy of the instrument" empowering him or her to act on behalf of the client. Fed. R. Bankr. P. 2019(c)(4).

The requirements of Rule 2019 are mandatory, as it uses the word "shall," rather than "may," to command compliance. *Nantucket Investors II v. California Federal Bank (In re Palms Associates)*, 61 F.3d 197, 208 (3d Cir. 1995) (use of the term "shall" imposes a requirement of

---

[31] Rule 2019 defines "disclosable economic interest" as any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest." Fed. R. Bankr. P. 2019(a)(1).

mandatory, as opposed to discretionary, compliance); *In re The Muralo Company Inc.*, 295 B.R. 512, 524 & n.10 (Bankr. D.N.J. 2003) (Rule 2019 "requires entities, *including counsel*, who would represent in a chapter 11 case more than one creditor, to file a verified statement listing those creditors" and "explaining the circumstances of their agency"); *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 453 (Bankr. S.D. Tex. 2009) ("Any entity seeking to represent more than one creditor in a Chapter 11 case must file an application that conforms with the requirements of Federal Rule of Bankruptcy Procedure 2019")

### B. Rule 2019, which has an "extremely broad" scope, is a disclosure provision designed to ensure that all matters in a Chapter 11 reorganization process are transparent and subject to scrutiny.

Courts have interpreted the scope of Rule 2019 to be "on its face . . . extremely broad." *In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990). In addition to ensuring that lawyers have authority to speak for certain claimants, Rule 2019 seeks to accomplish the following:

> ***Bankruptcy Rule 2019 is a disclosure provision***, which must necessarily be enforced as any other disclosure provision concerning attorneys or professionals, such as Bankruptcy Rules 2014 and 2016. Moreover, the ***Court should also play a role in ensuring that lawyers adhere to certain ethical standards. Bankruptcy Rule 2019 was designed for such a purpose. It is part of the Chapter 11 reorganization process that all matters should be done openly and subject to scrutiny***, whether it is the proposal of a plan of reorganization, representation of the debtor, or representation of numerous creditors—secured or unsecured.

*Oklahoma P.A.C.*, 122 B.R. at 392–93; *see also In the Matter of F&C Int'l, Inc.*, 1994 Bankr. LEXIS 274, *8 (Bankr. S.D. Ohio Feb. 18, 1994) (absent compliance with Rule 2019, there is a danger that "parties purporting to act on another's behalf may not be authorized to do so and may receive distributions to which they are not entitled"); *see also Elec. Theatre Rests. Corp.*, 57 B.R. 147, 148–49 (Bankr. N.D. Ohio 1986) (Rule 2019 requires that every person purporting to represent more than one creditor file a verified statement).

As one court put it, Rule 2019 "is designed to foster the goal of reorganization plans which deal fairly with creditors and ***which are arrived at openly***." *Muralo*, 295 B.R. at 524. Another court has similarly held that the "purpose of Rule 2019 is to further the Bankruptcy Code's goal of ***complete disclosure during the business reorganization process***" and to ensure that "entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent," are subject to the "control of the court." *In re CF Holdings Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992). Rule 2019 is the Bankruptcy Code's mechanism for keeping tabs on multiple representations of creditors and equity security holders and is the only current, specific means of keeping a check on creditors' attorneys' conflicts. *See* Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 Conn. L. Rev. 913, 939–40 (1994).

**C. Rule 2019 requires detailed disclosures, particularly in mass tort cases.**

Particularly in mass tort situations, courts applying Rule 2019, including controlling authority, have emphasized the need to avoid conflicts of interest and to protect the integrity of the bankruptcy process. *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147, 168 (D.N.J. 2005). The *Baron* court held that "in the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship." *Id.* at 168 (quoting *In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969)). Such information, it held, is "critical" to the administration of a bankruptcy. *Id.*

## II. As other courts have held, Rule 2019 mandates disclosure here.

### A. Claimants' Attorneys have the obligation to disclose the information mandated under Rule 2019 at this stage.

The requirements of Rule 2019 clearly are triggered by the decisions of the Claimants' Attorneys to file a proof of claim on behalf of multiple creditors not subject to the exceptions enumerated in Rule 2019. As courts have noted, "Bankruptcy Rule 2019 requires that an entity must file an instrument which empowers the entity to act on behalf of the creditors . . . absent such consent an agent may not legitimately represent the interests of the individuals." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 851-52 (Bankr. S.D.N.Y. 1989). And courts have been equally clear that these requirements apply when an attorney seeks to file a proof of claim on behalf of a creditor. *See In re N. Bay Gen. Hosp., Inc.*, 404 B.R. at 453 ("Bankruptcy Rule 2019(a) also requires that the entity provide "a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors"…[n]ormally, this includes an executed power of attorney authorizing counsel to file a proof of claim."); *see also In re Ionosphere Clubs, Inc.*, 101 B.R. 844 at 853. The situation is especially concerning where, as here, many of these attorneys have not only filed the proof of claim, but also served as the signatory on it.

### B. Jeff Anderson and other lawyers representing multiple abuse claimants have been ordered to provide rule 2019 disclosures in other abuse bankruptcies.

*In re Archdiocese of Saint Paul and Minneapolis*, a diocesan bankruptcy case also involving an attorney in this case—Jeff Anderson & Associates, P.A.—and claimants alleging abuse, is instructive. There, Judge Kressel held that firms representing multiple abuse claimants must comply with Rule 2019. Hr'g Tr. at 46:18–47:1, *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 23, 2017) [Dkt. 987] (Schiavoni Decl. Ex. 1). The Anderson Attorneys represented roughly 85 percent of the over 400 tort claimants in the case. *Id.* at 25:18–

23. Noting that counsel should have ***voluntarily*** made the 2019 disclosures, *id.* at 46:18–47:1, the court ordered the firm comply with Rule 2019 and to disclose:

> A complete copy of each form of retainer agreement, fee agreement, engagement agreement, referral agreement and all other applicable agreements authorizing the Anderson Firm to act on behalf of a creditor in this case or providing in any way for the payment of the Anderson Firm's fees and costs, including all amendments and modification to any such agreements.

*In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 27, 2017) [Dkt. 984] (Schiavoni Decl. Ex. 2). Judge Kressel noted that if the Anderson Attorneys perceived distrust or insult by being compelled to comply with the Rule, "it's a distrust by the Supreme Court who promulgated the rule, not by the parties here or me. ***The rule is the rule is the rule***." *Id.* Dkt. 987 at 47:6–10 (Schiavoni Decl. Ex. 1).

### C. It is particularly important here to disclose the facts and circumstances of claimants' counsels' respective representations.

Official committees, such as the Tort Claimants' committee appointed by the U.S. Trustee in this case, exist to compel similarly situated claimants to negotiate as one and to impose on the committee and its counsel the fiduciary duty to treat all the constituents of the committee equally. 11 U.S.C. § 1103; *In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005) ("[T]he members of an official committee owe a fiduciary duty to the committee's constituents . . . . The chief purpose of an official committee is to maximize distribution to this class."). But the counsel for these separate groups of unidentified claimants are also bound by the obligation to treat all claimants equally.

It is crucial for the integrity of these proceedings that the Claimants' Attorneys provide complete and fulsome disclosures under Rule 2019. Disclosing all relevant financial arrangements and all membership information is a mandatory requirement under Fed. R. Bankr. P. 2019(c). *See In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 27, 2017) [Dkt. 984]

(Schiavoni Decl. Ex. 2). This requirement addresses the greater "need for policing creditor groups and those who act on their behalves" in chapter 11 cases. 9 Collier on Bankruptcy ¶ 2019.01 (16th ed. 2020). Rule 2019 "is part of the disclosure scheme of the Bankruptcy Code and is designed to foster the goal of reorganization plans that deal fairly with creditors and that are arrived at openly," *id.*, and "subject to the scrutiny of the court." *Baron & Budd*, 321 B.R. at 165.

This importance is underscored where, as here, numerous counsel have ambiguous ties to the state of New Jersey and the litigation at hand. Some of the claims in this case appear to be aggregated from the wholly different Boy Scouts litigation. *See supra* at 4. Others have been brought by attorneys who have claimed that they no longer practice law. *See supra* at 5. Rule 2019 is designed to shed a light on any potential conflict these attorneys may (or may not have)—and that is why an Order requiring the Claimants' Attorneys to file such disclosures is particularly important.

## III. All attorneys representing multiple claimants must make disclosures as mandated by Rule 2019.

Without basic identifying information about the Claimants' Attorneys' claimants, there is no way to verify anything about their claims. Nor is there any way to assess potential conflicts among the claimants in this case and compliance with other applicable ethical rules.

In ordering the Anderson Attorneys, acting on behalf of a large majority of tort claimants in the Saint Paul and Minneapolis Archdiocese bankruptcy, to comply with Rule 2019, Judge Kressel stressed that the court and other parties in interest need to be provided information to assess potential conflicts of interest: "[W]e can understand that there are different interests or different motivations or just different things going on, and so we need to know that. That's something the entire body of people, the court and lawyers need to understand." Hr'g Tr. at 48:22–49:3, *In re*

*Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 23, 2017) [Dkt. 987] (Schiavoni Decl. Ex. 1).

Rule 2019 disclosures are particularly important here, where claimants are allegedly being represented as a collective. The court and parties in interest have a right to information that will allow them to assess these firms' compliance with ethical rules, including:

- Model Rule 1.2, which requires that an attorney "abide by a client's decisions" and consult with each individual client. While a client may give advance authorization to specific action by an attorney, the client must also be provided the opportunity to revoke such authority.[32]
- Model Rule 1.7, which bars an attorney from engaging in a concurrent conflict of interest absent informed consent from each client.[33] As the comments to Rule 1.7 explain, such a conflict may arise where there is an "incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question."[34]
- Model Rule 1.8(g), which requires that an attorney obtain informed consent in a signed writing from each claimant before entering into an aggregate settlement in compliance with Rule 1.8(g).[35]

The Claimants' Attorneys have not disclosed anything about the economic interests of the entities having an interest in the claims that purport to make up their constituency as is required under Rule 2019(c)(2), and likewise has not provided, nor even offered to make available, a copy

---

[32] Model R. Prof'l Conduct 1.2(a), 1.2 cmt. 3.

[33] Model R. Prof'l Conduct 1.7.

[34] Model R. Prof'l Conduct 1.7 cmt. 23.

[35] Model R. Prof'l Conduct 1.8(g). Comment 16 to Rule 1.8 explains:

> Differences in willingness to make or accept an offer of settlement are among the risks of common representation of multiple clients by a single lawyer. Under Rule 1.7, this is one of the risks that should be discussed before undertaking the representation, as part of the process of obtaining the clients' informed consent. In addition, Rule 1.2(a) protects each client's right to have the final say in deciding whether to accept or reject an offer of settlement and in deciding whether to enter a guilty or nolo contendere plea in a criminal case. The rule stated in this paragraph is a corollary of both these Rules and provides that, before any settlement offer or plea bargain is made or accepted on behalf of multiple clients, the lawyer must inform each of them about all the material terms of the settlement, including what the other clients will receive or pay if the settlement or plea offer is accepted.

of the instruments signed by individual claimants authorizing the retention of the Claimants' Attorneys and consenting to their payment. Fed. R. Bankr. 2019(c)(4).

Moreover, the Claimants' Attorneys provide no information regarding the "pertinent facts and circumstances" regarding "the formation of the group or committee, including the name of the entity at whose instance the group or committee was formed" or "the employment of the entity." Fed. R. Bankr. 2019(c)(1). To the extent that other entities assert interests in the claims of the claimants who allegedly are represented by the Claimants' Attorneys, information about the fee-sharing, co-counsel, or other arrangements among those entities, and the firms who represent the Coalition as a group should be disclosed. Fed. R. Bankr. 2019(c)(1), (4); *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 27, 2017) [Dkt. 984] (Schiavoni Decl. Ex. 2); *Baron & Budd*, 321 B.R. at 167. The Rule 2019 compliance orders issued by the bankruptcy court in *Congoleum*[36] (and affirmed by the District of New Jersey in *Baron & Budd*) and the bankruptcy court in *In re Archdiocese of Saint Paul and Minneapolis* are instructive regarding the scope of Rule 2019 and likewise provide models for the Order the Court should issue here.

In *In re Archdiocese of Saint Paul and Minneapolis*, Judge Kressel stressed that one of Rule 2019's purposes is to permit the court and parties to examine representative entities' economic interests in a case, as a means of assessing what each entity involved in a group has to gain from that involvement. Hr'g Tr. at 48:16–49:3, *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 23, 2017) [Dkt. 987] (Schiavoni Decl. Ex. 1). In that case, making this assessment was particularly important with regard to the Anderson Attorneys' firm

---

[36] Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other Relief, *In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J. Sept. 2, 2005) [Dkt. 1153].

that represented a numerical majority of claimants, and who held, in the words of Judge Kressel, "a bigger economic interest" than anyone else in the case. *Id.* at 36:8–12.

Likewise, courts in this circuit have determined that the requirement to provide "pertinent facts and circumstances" regarding "the employment of the entity" compels disclosure of any or all fee-sharing, co-counsel, and referral arrangements for this sort of ad hoc committee. *Baron & Budd*, 321 B.R. at 167. "The precise nature of these relationships falls well within the literal language of the Rule as well as the Judge's discretion to apply the rule in these circumstances." *Id.* Disclosure of these arrangements is necessary "to ensure that reorganization plans deal fairly with all creditors and are arrived at openly." *Id.* Comprehensive Rule 2019 disclosures allow the Court to analyze the totality of the circumstances in this chapter 11 case and "bring[] to bear the values of good faith and fairness in the reorganization process that pervade the bankruptcy code." *Id.*

**IV. New Jersey court rules and statutes prohibit the unauthorized practice of law, and Rule 2019.**

New Jersey court rules and statutes prohibit the unauthorized practice of law. State statutes subject anyone who engages in the unauthorized practice of law to both civil and criminal remedies.[37] The information that the out-of-state attorneys must provide under Rule 2019 is directly relevant to an assessment of whether these attorneys are in violation of these provisions—by example, if these firms are charging substantial fees (e.g. 30-40%) to these clients for the filing of the proof of claim, that would demonstrate that they were holding themselves as practicing law to these clients.

[37] *See* NJ Rev Stat § 2C:21-22 ("Unauthorized practice of law, penalties. a. A person is guilty of a crime of the fourth degree if the person knowingly engages in the unauthorized practice of law and: (1) Creates or reinforces a false impression that the person is licensed to engage in the practice of law; or (2) Derives a benefit; or (3) In fact causes injury to another.")

The practice of law is not only the representation of a party in court, but is also that conduct engaged in "'whenever and wherever legal knowledge, training, skill and ability are required.'" *Id.* at 13 (quoting *Stack v. P.G. Garage, Inc.*, 7 N.J. 118, 121 (1951)). The Appellate Division in *Karmin* found that Karmin prepared legal documents for plaintiff, which is clearly the practice of law. *Id.* at 13–14 (citing *Cape May Cty. Bar Ass'n v. Ludlum*, 45 N.J. 121, 124 (1965)). Karmin also provided legal advice to Baron about a dispute, which is likewise the practice of law. *Id.* at 14 (citing *In re Estate of Margow*, 77 N.J. 316, 328 (1978)).

The out-of-state claims aggregators that have flooded the Diocese with claims have engaged in conduct that is not limited simply to the ministerial completion of a form. In signing the proofs of claim under oath, they have attested to each of the claimants having a claim under New Jersey state law. While a non-lawyer may assist an individual in the typing, transcribing, or translation of forms, the rendering of any other assistance with the preparation, review, analysis, or completion of materials, constitutes the unauthorized practice of law and is prohibited. *UPL Opinion 40*, 176 N.J.L.J. 1195 (June 21, 2004). This rule applies equally to attorneys who "sign legal documents [and] counsel clients" even if those attorneys never appear in court. *In re Jackman*, 165 N.J. 580, 583 (2000). In addition, while companies with computer programs that create legal documents may sell legal forms without violating the rule against the unauthorized practice of law, no legal advice or consultation on what to say when filling out such forms is permitted under New Jersey law. Here, the out-of-state firms did not simply fill out forms on a claimant's behalf. The evidence was clear that they prepared legal proof of claim, gave legal advice and consultation, and provided other legal services in violation of the rules against the unauthorized practice of law.

## V. This Court should order claimants' counsel to comply with Rule 2019 or, in the alternative, bar them from participating in the bankruptcy.

Because Rule 2019 is both mandatory and integral to the progress of a fair and open bankruptcy proceeding, courts routinely and rigorously enforce compliance by imposing the penalties authorized under Rule 2019(e). *See*, *e.g*., *Oklahoma P.A.C.*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990) ("If there is a failure to comply with the disclosure provisions of Bankruptcy Rule 2019, the Court may, *inter alia*, refuse to permit the entity acting on behalf of the parties from being heard further in a Chapter 11 case."); *CF Holdings*, 145 B.R. at 127 (requiring supplemental filing); *In re Vestra Indus., Inc.*, 82 B.R. 21, 22 (Bankr. D.S.C. 1987) (disallowing claims filed *en masse* by union for failure to comply with Rule 2019 unless defects were cured within sixty days); *In re Elec. Theatre Rests. Corp.*, 57 B.R. at 149 (upholding a claim objection because the entity filing the claim had not shown that it was authorized to act on behalf of claimants); *In re Keene Corp.*, 205 B.R. 690, 704 (Bankr. S.D.N.Y. 1997) (sanctions appropriate in connection with a finding of failure to comply with Rule 2019).

Rule 2019(e) specifically provides that this Court may impose the following remedies for failure to supply the information required under the Rule:

> (1) On motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule.
>
> (2) If the court finds such a failure to comply, it may:
> (A) refuse to permit the entity, group, or committee to be heard or to intervene in the case;
> (B) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee; or
> (C) grant other appropriate relief.

For the claimants' counsel to comply with the unambiguous requirements of Rule 2019, the Court should order them to supply the following information:

- Under subsection (c)(3)(A) ("name and address" of "each creditor or security holder represented by an entity, group, or committee"), counsel must provide a list of any entities that are members of its organization that have a financial interest in claims against the Debtor estate and the identity of each of the contingent creditors on whose behalf Claimants' Attorneys are authorized to act.
- Under subsection (c)(3)(B) ("the nature and amount of each disclosable economic interest"), counsel must supply reasonably detailed information disclosing the financial interest that each of the entities that are members of its organization that have in claims against the Debtor estate and any fee splitting or sharing arrangements between them.
- Under subsection (c)(1) ("a recital of the pertinent facts and circumstances concerning . . . the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged"), counsel must provide information disclosing the entities or law firms with whom they are associated, including any evidence of informed consent by any affected claimant and any co-counsel, fee-sharing, or referral agreements, and the basis for counsel to have privity with the underlying claimants.
- Under subsection (c)(4) ("a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders"), counsel must supply the retention agreements, fee-sharing agreements arrangements and/or co-counsel agreements authorizing the Claimants' Attorneys to "act on behalf of creditors . . . ."

The lack of transparency regarding the scope, facts, and circumstances of multiple representations and how they affect this bankruptcy's plan formulation, claim classification, allowance and distribution, and claimant voting require this Court's intervention to preserve the integrity of a public and open bankruptcy process. And other courts in this Circuit have ordered this relief in circumstances where attorneys representing tort claimants failed to submit the required disclosures under Rule 2019. *See In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (Bankr. D. Del. Apr. 13, 2004), Dkt. No. 5902 (Schiavoni Decl. Ex. 3).

Alternatively, the Court should bar non-complying claimants' counsel from participating in the bankruptcy. The Court has the authority to bar claimants' counsel from participating in this bankruptcy (on behalf of any clients) unless they comply with their Rule 2019 obligations. *See*

Fed. R. Bankr. P. 2019(e)(2) (in response to a failure to comply with Rule 2019(b), Court may "refuse to permit the entity, group, or committee to be heard or to intervene in the case" and "grant other appropriate relief").

This relief is appropriate at this juncture, as courts regularly have held that the votes of any claimants affected by non-compliance with Rule 2019 will not be counted. *See In re Mid-Valley, Inc.*, Case No. 03-35592 (Bankr. W.D. Pa. Apr. 13, 2004), Hr'g Tr., Dkt. No. 1186 at 87–88 ("[I]f there isn't a 2019 statement of record, the votes will not be counted. . . . And by the time we get to the plan confirmation hearing, if they're not of record, their claims will not be counted."); *In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J. Dec. 30, 2004), Hr'g Tr., Dkt. No. 1861 at 37. The "[f]ailure to comply [with Rule 2019] may result in inability to be heard in the case, and invalidity of reorganization plan ballots or other documents filed on behalf of the creditors by the attorney, or other appropriate relief." Fed. R. Bankr. P. 2019(e)(2); 9 Norton Bankr. L. & Prac. 3d § 172:22; *Oklahoma P.A.C.*, 122 B.R. 387; *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989)).

For example, in *Reid*, the Sixth Circuit affirmed a bankruptcy court's refusal to allow a class proof of claim filed by an attorney who did not submit a Rule 2019 statement and thus failed to "elucidate his authority as agent" for the creditors whom he purportedly represented. *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989); *see also In re Baldwin United Corp.*, 52 B.R. 146, 148 (Bankr. S.D. Ohio 1985) (holding that failure to comply with Rule 2019 is cause for denial of class proof of claim). The Sixth Circuit rejected the non-complying attorney's argument that he was authorized as agent for the creditors to file a class proof of claim because he represented them in underlying state court litigation, noting that consent to one piece of litigation is "not tantamount to a blanket consent to any litigation the class counsel may wish to pursue." *Reid*, 886

F.2d at 1471–72. Claimants' Attorneys, then, must make it clear in ***this*** litigation the scope of their representation—they have failed to do so.

## WAIVER OF MEMORANDUM OF LAW

Because the legal points and authorities upon which this Motion relies are incorporated herein and do not raise any novel issues of law, the Movants respectfully request that the requirement of the service and filing of a separate memorandum of law pursuant to Local Rule 9013-1(a) be waived.

## CONCLUSION

This Court should enter an order, substantially in the form of the Proposed Order filed at this docket entry, compelling the Claimants' Attorneys to file Rule 2019 disclosures and to produce to movants and those joining this motion, the specific information enumerated in the Proposed Order pursuant to Rule 2019; or, in the alternative, the Court should bar the Claimants' Attorneys from participating in the bankruptcy for noncompliance with Rule 2019.

Dated: March 14, 2022

**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership

By: _/s/ Sommer L. Ross_______
Sommer L. Ross, Esq.
Duane Morris LLP
1940 Route 70 East
Suite 100
Cherry Hill, NJ 08003-2171
Telephone: 856.874.2400
E-mail: slross@duanemorris.com

And

Russell W. Rotten, Esq.
Admitted *Pro Hac Vice*
Jeff D. Kahane, Esq.
Admitted *Pro Hac Vice*
Andrew E. Mina, Esq.
Admitted *Pro Hac Vice*
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: (213) 689-7400
Facsimile: (213) 402-7079
E-mail: rwroten@duanemorris.com
E-mail: jkahane@duanemorris.com
E-mail: amina@duanemorris.com

and

**CLYDE & CO. US LLP**
Catalina J. Sugayan, Esq.
Admitted *Pro Hac Vice*
Alexandra Olkowski, Esq.
Admitted *Pro Hac Vice*
55 West Monroe Street, Suite 3000
Chicago, IL 60603
Telephone: (312) 635-7000
E-mail: catalina.sugayan@clydeco.us
E-mail: alexandra.olkowski@clydeco.us

*Counsel for United National Insurance Company*

**SQUIRE PATTON BOGGS (US) LLP**

By: /s/ Mark C. Errico______
Mark D. Sheridan, Esq.
Mark C. Errico, Esq.
382 Springfield Ave., Suite 300
Summit, NJ 07401
Telephone: (973) 848-5600

**O'MELVENY & MYERS LLP**
Tancred Schiavoni, Esq. (admitted *pro hac vice*)
Matthew Hinker, Esq. (admitted *pro hac vice*)
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

**RIVKIN RADLER**

By: /s/ Peter McNamara ___

Michael J. Jones
Peter McNamara (admitted *pro hac vice*)
Siobhain P. Minarovich
926 RXR Plaza
Uniondale, NY 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
michael.jones@rivkin.com
peter.mcnamara@rivkin.com
siobhain.minarovich@rivkin.com

*Counsel for Interstate Fire & Casualty Company*

**RIKER DANZIG SCHERER HYLAND & PERETTI LLP**

By: */s/ Joseph L. Schwartz* __

Joseph L. Schwartz
Michael J. Rossignol
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: (973) 538-08000
jschwartz@riker.com
mrossignol@riker.com

*Counsel for Granite State Insurance Company & Lexington Insurance Company*