UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY (CAMDEN)

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 20-21257-JNP |
| | ) | Chapter 11 |
| THE DIOCESE OF CAMDEN, NEW JERSEY, | ) | |
| Debtor. | ) | |
| THE DIOCESE OF CAMDEN, NEW JERSEY, | ) | Adversary No. 20-01544 |
| Plaintiff, | ) | |
| vs. | ) | |
| JOHN/JANE DOE, | ) | Camden, New Jersey |
| | ) | March 24, 2022 |
| Defendants. | ) | 3:08 p.m. |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JERROLD N. POSLUSNY, JR.
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor/Plaintiff: RICHARD D. TRENK, ESQUIRE
ROBERT S. ROGLIERI, ESQUIRE
TRENK, ISABEL, P.C.
290 W. Mt. Pleasant Ave.
Livingston, NJ 07039

For the Creditors Committee: JEFFREY PROL, ESQUIRE
MICHAEL KAPLAN, Esq.
LOWENSTEIN, SANDLER, LLP
One Lowenstein Drive
Roseland, NJ 07068

For the Trade Committee: JOHN S. MAIRO, ESQUIRE
PORZIO, BROMBERG & NEWMAN
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997

APPEARANCES (Continued):

| | |
|---|---|
| For Underwriters at Lloyd's London & Certain London Marketplace Cos.: | RUSSELL WEBB ROTEN, ESQUIRE<br>ANDREW MINA, ESQUIRE<br>DUANE, MORRIS, LLP<br>30 South 17th Street<br>Philadelphia, PA 19103-4196 |
| | CATALINA SUGAYAN, ESQUIRE<br>CLYDE AND COMPANY<br>55 West Monroe Street, Suite 3000<br>Chicago, IL 60603 |
| For Lexington Ins. Co. & Granite State Ins. Co.: | MICHAEL ROSIGNOL, ESQUIRE<br>TARA SCHELLHORN, ESQUIRE<br>JOSEPH SCHWARTZ, ESQUIRE<br>RIKER, DANZIG, SCHERER<br>HYLAND & PERRETTI, LLP<br>50 West State Street<br>Suite 1010<br>Trenton, NJ 08608-1220 |
| For Interstate Fire & Casualty Co.: | PETER P. McNAMARA, ESQUIRE<br>RIVKIN, RADLER, LLP<br>926 RXR Plaza<br>Uniondale, NY 11556-0926 |
| For Century Indemnity Company: | MATTHEW L. HINKER, ESQUIRE<br>O'MELVENY & MYERS, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036 |
| | MARK C. ERRICO, ESQUIRE<br>SQUIRE, PATTON, BOGGS<br>382 Springfield Ave, Suite 300<br>Summit, NJ 07901 |
| For National Catholic Risk Retention Group: | DAVID M. BANKER, ESQUIRE<br>MONTGOMERY, McCRACKEN,<br>WALKER & RHOADS, LLP<br>437 Madison Avenue<br>24th Floor<br>New York, NY 10022 |
| Audio Operator: | Joan Lieze |

Transcribed by: DIANA DOMAN TRANSCRIBING, LLC
P.O. Box 129
Gibbsboro, New Jersey 08026-0129
Phone: (856) 435-7172
Fax: (856) 435-7124
Email: dianadoman@comcast.net

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

# I N D E X


| ARGUMENT: | PAGE |
|---|---|
| By Mr. Kaplan | 8 |
| By Mr. Roten | 12 |
| By Mr. Hinker | 16 |
| By Mr. Trenk | 19 |
| By Mr. Schwartz | 21 |
| By Mr. Kaplan | 22 |
| By Mr. Roten | 26 |
| By Mr. Trenk | 26 |
| RULING: | |
| By the Court | 27 |

(Proceedings commenced at 3:08 p.m.)

THE COURT: Good afternoon, everyone. This is Judge Poslusny. This is a hearing on short-time in the Diocese of Camden case. We are on the record. This was brought to my attention yesterday morning related the issues on expert discovery, as I understand it.

The usual requirements of no outside recording of the hearing will be permitted. If you need a transcript, you have to order it through the clerk’s office. I have a Court Solutions list of parties that are registered for today’s participation, which I will consider the appearance sheet. However, I understand several of you are dialing in from a conference room.

So if there is anybody who has not signed up for Court Solutions who wants to put their name on the record, please do so.

MR. ROTEN: Your Honor, this is Russell Roten of Duane, Morris representing the London Market Insurers, and I just don’t know whether or not I’ve been signed up for an appearance through Court Solutions. There were a bunch of us here in depositions.

THE COURT: Right. I believe you did, sir, but whoever is in that conference room and wants to put your name on the record to be safe, why don’t you do that? Why don’t we go that method?

MR. TRENK: Okay, good afternoon, Your Honor. Richard Trenk and Robert Roglieri of Trenk, Isabel, Siddiqi and Shahdanian on behalf of the Diocese of Camden, New Jersey.

MR. MARIO: Good afternoon, Your Honor. John Mario, of Porzio, Bromberg and Newman on behalf of the Trade Committee.

MR. McNAMARA: Good afternoon, Your Honor. Peter McNamara of Rivkin, Radler representing Interstate Fire and Casualty Company.

MS. SUGAYAN: Your Honor, Cathy Sugayan from Clyde and Co., on behalf of LMI.

MR. HINKER: Matthew Hinker from O'Melveny and Myers on behalf of Century.

THE COURT: I get that one more time, sir? You broke up a little bit.

MR. HINKER: Matthew Hinker from O'Melveny and Myers on behalf of Century.

THE COURT: All right. Thank you.

MR. ERRICO: Good afternoon, Your Honor, Mark Errico of Squire, Patton, Boggs on behalf of Century.

MR. ROSIGNOL: Your Honor, Michael Rosignol and Tara Schellhorn from Riker, Danzig on behalf of Lexington Insurance Company and Granite State Insurance Company.

MR. BANKER: Good afternoon, Your Honor, David Banker, Montgomery, McCracken, on behalf of the National

Catholic Risk Retention Group.

MR. KAPLAN: Good afternoon, Your Honor, Michael Kaplan from Lowenstein, Sandler on behalf of the Tort Claimants' Committee.

THE COURT: All right, Mr. Kaplan, is that -- oh, I'm sorry, I thought maybe you might be -- Mr. Kaplan, is there anyone else in that conference room?

MR. KAPLAN: Your Honor, I'm joined by a couple of my associates, but for appearances sake, that's all. I believe Mr. Prol is on separately from us --

THE COURT: All right.

MR. KAPLAN: -- but probably in the same building for the record.

THE COURT: All right. We might have him listed, as well. All right. That's it?

MR. MINA: And, Your Honor, Andrew Mina of Duane, Morris on behalf of LMI.

THE COURT: Okay. Anyone else that needs to put their appearance on the record, if you are not on Court Solutions? All right.

Because several of you are sharing a line, it is especially important today that you announce your name and who you represent before you speak because it's going to be very hard to track it on Court Solutions, so please, keep that in mind.

All right. This was initiated by a letter from the Tort Committee related to reports on -- I'm sorry reports of Ms. Comiter or Comiter and McNally. So who from the Committee wants to provide me with a very short background?

MR. KAPLAN: Your Honor, Michael Kaplan from Lownenstein, Sandler on behalf of the Committee. Just for the record, Your Honor, it's Ms. Comiter's report and Mr. Hinton's report. Everyone in the room was hoping that you were just going to include Ms. McNally's report, but that's -- I'm sure you'll get that opportunity. Yes.

THE COURT: I'm sorry. I just read it in the letters. I was trying to find the names quickly. I do apologize.

MR. KAPLAN: No worries, sir. So just the brief background is this, Your Honor. As you know, you established the schedule for this matter on or about February 8th. The matter that we are litigating is the Debtor's 9019 motion. There is nothing to do with confirmation or any extraneous issue at this point.

You set the schedule, and, essentially, at the time, there was a valuation by the Debtor's financial advisor. It was contemplated that the Tort Committee would submit, at the time, the only affirmative expert report from Ms. McNally, and that responses to that report would be due seven days later on March 16th.

Earlier -- early on in the discovery period for this, the Debtor voluntarily disclosed the fact that they, in fact, had an affirmative expert report from Mr. Scarzella and agreed, in accordance with the spirt of Your Honor's order, to disclose their affirmative expert report on March 9th so that rebuttals to that report would be due on March 16th.

On or about March 3rd, sir, we came before you on a number of issues. The discovery issues related to the insurers and certain declarations they had filed. At the end of that hearing, in accordance with the transcript we gave you, we had made a request for additional time to respond to -- to submit Mr. Baker's report because of a delay in his retention.

You issued an oral ruling later that day, saying instead of giving -- that gave us two additional days to March 11th to file Mr. Baker's report. I have reviewed that transcript. We've submitted it. All the parties were shown it. There is no discussion of the Claro report. We can't come up -- you know, in the course of this, that's where the time frames are, you know, based on the discovery schedule, experts were supposed to be done on March 23rd.

We had worked cooperatively with all of the parties who disclosed that they had experts to schedule depositions, which is why we find ourselves all in a room today, which is why we'll all be together tomorrow. And we, in fact, were

able to voluntarily agree that we're going to finish one up on Thursday.

On March 16th, at about 11:55, the Debtor filed a rebuttal report from Mr. Scarzella which responded to Ms. McNally's valuation report from Claro. Two days later, after the close of business hours, we got the first report from FTI, Ms. Comiter, on behalf of LMI and Interstate, which in addition to filing a rebuttal to Ms. McNally and a rebuttal to Mr. Baker contained several pages of affirmative analysis of the insurance -- the insurer's analysis of the policies at issue.

Two hours later, we got a rebuttal report from Century. And basically, what that report says -- although that is a true rebuttal report to Ms. McNally, makes no mention of Mr. Baker, prior to, I think about 11:30 that morning when we got signed confidentiality orders, Century never mentioned to us -- I'm not sure if they did to other parties -- the fact that they had contemplated or possibly retained an expert.

And so what we're left with, sir, is a couple of issues which I can get to in a moment, but mainly is, we've got two reports that, in our view and in accordance with the spirit of what we were talking about, Your Honor, with your schedule -- again, I'm sure you're going to hear a lot about the specific language you used despite the discussion we were

having, the context and the haste in which we are moving in this process, in our view, unnecessarily, that they're timely because your initial order said March 16th for all the insurer's rebuttals, even though they are essentially a moving party with the Diocese. And they took it upon themselves without asking any clarification or otherwise to serve their reports on March 18th.

Now, in our view and what we'd ask you for is to exclude all of the Comiter report that is a rebuttal to McNally or contains affirmative analysis. We believe that the entirety of the Hinton report should be excluded because it is untimely. And in the alternative, what we are going to -- what we would need, sir, is more time, because we have tried over the last couple of days, while we're all together, to work out a schedule to make this happen. Century, their counsel, has been transparent and has been willing to work. We are at an impasse because Mr. Hinton is only available via Zoom on Friday or in person on Monday.

We don't believe that a Zoom deposition is appropriate here, at least because we don't have a protocol for remote depositions in this case, and every other proceeding has occurred in person. We're not going to agree to take a Zoom deposition when we have done everything else in person, including the hearings.

And so we've got one of two things. Either we think

you should enforce the schedule in the first instance. Or in the second, the entirety of the remaining schedule needs to be adjusted, because it's simply not fair for us to be ambushed with a report, expected to take the deposition in person on Monday, file trial briefs Wednesday, along with motions in limine and then come before Your Honor a week later. There's just not enough time.

And so that's our position. That's our synopsis, and I will now cede the floor to whoever wants to -- Mr. Roten has his hand raised.

MR. ROTEN: Thank you. Mr. Roten, I'm having a little trouble with my voice today. This is Russell Roten, Duane, Morris representing the London Market Insurers. Can you hear me okay, Your Honor?

THE COURT: Yes, it's a little muffled, but you can go ahead, sir. Hold on one second, let me make sure. Ms. Lieze, you're okay?

Yeah, we're okay, sir, go ahead.

MR. ROTEN: Your Honor, in the Court's scheduling order for discovery, the Court addressed affirmative reports and rebuttal reports for the Debtor and the Committee. The insurers were not required to prepare two reports. The insurers were required to provide only what the Court referred to as expert reports. That date was extended by the Court to March the 18th as per Mr. Baker's coming into the case, and

the Court gave everybody extra time. And the experts for LMI and Interstate met that deadline. We filed our report by the 18th. So it's Ms. Comiter of FTI.

Now, Your Honor, there is no ambiguity in the Court's order extending that deadline. There is no discussion of one deadline with respect to Claro's report and another deadline with respect to Baker's report. There is nothing in the order to indicate that the insurers were required to respond to Claro on the 16th and to Baker on the 18th in separate reports.

Your Honor, in fact, such an interpretation of the Court's order would be extreme and would require us to file two reports. So the report of Romy Comiter, our expert, was timely. It was on the 18th, as the Court ordered. There are no shenanigans here. Ms. Comiter is here. She will be deposed tomorrow. This issue should go away.

The second issue here, Your Honor, I think the Court probably will have very little trouble with, as well. The Committee complained that Ms. Comiter's report contained what they call an affirmative analysis, and they need the Court to strike that analysis. We'd note, again, that the Court ordered insurers only to provide a single report, not an affirmative and a rebuttal report.

Now, in the Committee's letter, Your Honor, notably, they cited no law in support of their position for striking

Ms. Comiter's report. And I'm sure Your Honor is well aware of the very, very difficult report space in striking expert reports. Ms. Comiter's report does, indeed, point out the flaws in the expert -- in the Committee's expert report. There is no question about that. She goes through each issue and points out what's wrong with the Committee's expert.

However, those -- the Committee's expert reports cannot be properly rebutted just by pointing out errors in the report. The Committee wants to limit us to say, oh, well, you can only say where she was wrong. Your Honor, it's necessary to show the Court a proper analysis to settlement in order to show how inadequate the reports of the Committee's experts are.

LMI and Interstate have a right, through their expert, to show the Court how this settlement could be analyzed, what are the proper tools, what factors the Court should consider and so forth. That's all part of rebuttal.

One of the most telling points of the Committee's letter, Your Honor, was that neither of their experts addressed coverage defenses. They point that out. They argue that since their experts didn't address coverage defenses, our expert can't address coverage defenses. However, that's completely wrong, Your Honor.

Coverage defenses are one of the key elements in understanding the settlement and in evaluating the settlement.

The coverage defenses mean the insurers do not have to pay claims that have been made against the Diocese. We have coverage defenses; we don't have to pay. They directly affect Martin factor number one, which is the probability of successful litigation, as well as factor three, the complexity of the extensive litigation. I won't go into detail on that, Your Honor, because it's so obvious that I don't want to waste time making an obvious point.

The illusion of that discussion by the Committee's expert is a fatal flaw in their objection to the settlement. They don't have any expert testimony on Martin factor one or Martin factor three. Ms. Comiter, on the other hand, discussed the defenses, coverage defenses in detail, which would be very, very helpful to the Court and which is absolutely necessary under the Martin case.

So as the Committee's expert did not discuss this key factor, they want to exclude Ms. Comiter's testimony. However, the discussion of coverage defenses and the other aspects of her report are all a part of her rebuttal to the inadequacies of the Committee report. What she says is what a settlement should be and explains why the expert for the Committee got it wrong. It's all part and parcel of the same explanation.

Ms. Comiter's entire report clearly rebuts the report of the Committee's experts and should be accepted by

the Court. Failure to do so will be highly prejudicial to the insurers in this case, Your Honor, and we respectfully request that the Court deny the excessive relief sought by the Committee here.

Thank you, Your Honor.

THE COURT: Well, as I understand it, Ms. Comiter is scheduled to be deposed tomorrow?

MR. ROTEN: Yes, sir, right in this room.

MR. TRENK: Right. Immediately after Your Honor finishes the hearing that's scheduled for 10:00 a.m.

MR. ROTEN: She's over from London, Your Honor. She's been here for two or three days, and she's ready to go tomorrow.

THE COURT: All right. All right. Who's next?

MR. HINKER: Good afternoon, Your Honor. Matthew Hinker from O'Melveny and Myers on behalf of Century. Your Honor, on March 18th, around 8:17 p.m., Century served an expert rebuttal report from Paul Hinton of the Brattle Group. That report rebuts the report that was submitted by Ms. McNally of the Claro Group, and the timing falls under the Court's ruling on March 3rd.

As we said in our letter, Mr. Hinton is available for deposition, and we understand that the TCC prefers that that deposition be conducted on Friday, March 25th. Unfortunately, Mr. Hinton is traveling on March 25th, but he

is available via Zoom. But we understand that the TCC's counsel, as Mr. Kaplan represented, objects to conducting Mr. Hinton's deposition via Zoom. We think given the reality of the last year, that is unfortunate. But if the TCC refuses to conduct Mr. Hinton's deposition via Zoom, he is available in person on Monday, March 28th.

We disagree with the characterizations set forth in the TCC's March 19th letter. Century did not sandbag the TCC. It complied with the Court's order, and in fact, Century didn't even contemplate submitting a rebuttal report until having an opportunity to review the Claro report on March 10th. And we didn't retain the expert until several days later.

But echoing some of the comments made by Mr. Roten in striking the Hinton report --

THE COURT: Did you tell the Committee you had retained an expert and planned to submit a report?

MR. HINKER: We did not, Your Honor. But striking the Hinton report would prejudice Century, and such relief is not warranted here. Century, as I stated, complied with the Court's order and with the Federal Rules of Civil Procedure. There is no basis to strike the Hinton report. Even assuming that the TCC is correct, which they aren't, that the Hinton report is late, the Federal Rules provide that a party may still use that information if the failure is substantially

justified or it's harmless.

Substantial justification is justification to a degree that could satisfy a reasonable person, so parties could differ as to whether the party was required to comply. That quote comes from Ellison v. Windt, 2001 Westlaw 118617, the Middle District of Florida, January 24th, 2001. Therefore, even if the TCC's interpretation of the ruling -- of Your Honor's rulings are correct, a reasonable person could differ as to the interpretation of that Court's ruling, and the disclosure of the Hinton report on March 18th is justified.

The failure to timely -- I'm sorry -- a failure to timely make a required disclosure is harmless when there is no prejudice to the party entitled to receive the disclosure. Simply stated, the TCC was not harmed. The Hinton report merely rebuts their expert, and Mr. Hinton is available for deposition.

THE COURT: But with the scheduling -- with the scheduling that's in effect right now, even pushing that deposition to the 28th, doesn't that -- does that prejudice or why does that not prejudice the Committee when the deadlines are already so tight?

MR. HINKER: Your Honor, just to be clear, Mr. Hinton is available for deposition before the close of expert discovery. We understand -- via Zoom -- as Mr. Kaplan is

shaking his head at me.

MR. KAPLAN: That's not true. The expert discovery deadline is tomorrow.

MR. HINKER: He was available for deposition Monday, Tuesday or Wednesday. We understand that the Committee prefers to take that on Friday and didn't want to dual tract depositions that were scheduled for Monday, Tuesday or Wednesday.

MR. TRENK: Your Honor, may I be heard on behalf of the Diocese?

THE COURT: Go ahead, Mr. Trenk.

MR. TRENK: So, on behalf of the Diocese, I think the solution is simple, there is nothing in the discovery protocol that requires people to identify whether they're going to put a rebuttal in or whatnot, and clearly, the transcript of the ruling said, "I will likewise extend the deadline for the Debtor and insurers to submit their expert reports and related documents to March 18th."

And, clearly, that's what occurred here. So the concept now that recognizing there is another expert that people were not aware of can be accommodated and should be accommodated by Zoom this Friday. These depositions have been surgical. They have literally taken four or five hours each. And the fact that a deposition has to be Zoom versus live is not a basis to not conduct, especially an expert, Your Honor.

And we're not talking about some fact witness where you want to see whether they squirm or not and how they react. These are all professionals. So whether they are live or by Zoom is not a decision the TCC should be dictating. It's got to be dictated by the nature of the schedule that the Court has ordered and we've already agreed to among ourselves, and we've worked together on these throughout.

So the concept, going back to Your Honor's ultimate question, if the dep is taken this Friday morning, which it can be taken by Zoom, then, to accommodate these -- we'll call it two days -- that, again, Your Honor determined to accommodate the TCC last week, then easily, the exhibits can be produced next Wednesday, the 30th, and then the trial briefs or whatnot, Your Honor can extend that two days until April 1st.

We can -- this works. We're all working diligently and in good faith, and not to hear the entire matter on the merits with everybody weighing in. Noone is going to be prejudiced by those two days. So it seems to me that's a workable solution to, we're going to take the FTI dep tomorrow. Everybody always knew we were. And the only new aspect to this is the Brattle dep that we take Friday morning by Zoom.

And then if we push everything else by two days, everything will be in the Court by next Friday, and then the

hearing will start on the sixth, as scheduled. So that's the Diocese's position that the two days is not going to upset, you know, the schedule that we have.

Thank you, Your Honor.

THE COURT: Thank you.

Before I circle back to Mr. Kaplan, is there anyone else that wants to be heard?

MR. SCHWARTZ: Yes, Your Honor, this is Joseph Schwartz, Riker, Danzig, Scherer, Hyland and Perretti, on behalf of Granite State Insurance Company and Lexington Insurance Company. Your Honor, my clients did not submit expert reports, but we are part of the insurance group that is, in part, relying on the expert that has been proffered by LMI and Interstate and also Century, and I concur with the arguments that were made by Mr. Roten, Mr. Hinker and also Mr. Trenk.

And I think, Your Honor, without being presumptuous, when Your Honor entered the oral ruling on March 3rd and extended the deadline for Mr. Baker to file his report until March 11th, the Court was trying to be fair by extending the deadline for the Debtor and the insurers to submit their expert reports to March 18th.

And, as Mr. Roten pointed out, there was no distinction between rebuttal reports and affirmative reports for insurers. And so, I think Your Honor was trying to be

fair, and basically play Solomon and give all parties a little bit of an extension of time. So with respect to the TCC's contention that the reports were submitted late because they were submitted on March 18th and submitted after business hours, we submit that those arguments are absolutely wrong.

I won't belabor the point, because I think the argument that I was planning to make if others didn't make were already made. Thank you, Your Honor.

THE COURT: All right. Thank you.

Anyone else? All right, Mr. Kaplan, you want to respond?

MR. KAPLAN: I would, Your Honor. Thank you. Michael Kaplan of Lowenstein, Sandler, for the Tort Committee. Your Honor, a couple of points. One, with all due respect to Mr. Trenk, his statements today aren't consistent with his actions. His actions were to file his rebuttal report to McNally on Wednesday night. And so, I submit that, faced with the possibility that the schedule be adjourned, we have a different argument.

That said, Your Honor, what you are hearing again from the insurers is, they should have special treatment. The insurers, Your Honor, are moving parties here for all intents and purposes. They are the beneficiaries of this settlement. And when we came before Your Honor and created this schedule, there was no mention of any other experts, and that's why Your

Honor created the schedule that you did.

And we have abided by it in good faith with the fact that it's an accelerated schedule. Now, you heard a lot of argument from Mr. Roten, very eloquent argument. But if Your Honor will recall, we've had several discovery disputes with the insurers. In fact, you'll hear a lot of argument about Your Honor's ruling that essentially is that the insurers's analysis doesn't matter. And I'm paraphrasing. You said it much more articulately, sir.

So, why do we have to hear from any of the insurers's experts in this particular case, with the exception of why they're responding to the TCC's expert, I submit, sir, it doesn't matter. And that's what you have in Ms. Comiter's report. There is not a special deadline for the insurers. They're the same as the TCC's. They're the same as the Debtor's. They're the same as the U.S. Trustee. There is one set of rules, and they don't want to play by them.

And so, it is that, sir. I fully recognize what the words of your ruling were. But we have tried to live by what has occurred. We participated in the hearing on March 3rd. We discussed with Mr. Baker. There was no mention of anything else. And there was never a disclosure at the outset, so how could Your Honor create two different deadlines?

Again, the insurers want to apply the rules when it's convenient, and when it's not, they don't. And that's

just not fair. And fairness dictates, that some solution here happens so that the TCC, the only party, along with the U.S. Trustee, objecting to this settlement, who is the only one vigorously defending it, is given a fair opportunity to oppose it on the merits.

It's about -- we agree. We'd like to have a hearing, sir, on just the Debtor's evidence -- on just the Debtor's evidence is what we'd like to have a hearing on. You won't have to hear -- you won't see one mention of the Debtor's evidence in these other reports. What you're going to hear is what the insurers's analysis is. But as you already ruled, sir, that doesn't matter.

So while I respect Mr. Roten trying to shift the burden onto us, it's just not the case, because the TCC has no burden. So, again, sir, we would submit that, at minimum, the schedule needs to be adjusted, but the fairer and correct thing to do would be to exclude these experts, because they were not timely.

THE COURT: Well, why is a Zoom deposition not acceptable to the Committee?

MR. KAPLAN: Two reasons, Your Honor. Number one, there is no protocol for Zoom depositions in this particular case. In every other case we've done Zoom depositions, you have a protocol about who can be in the room, where you ship -- who -- if you ship exhibits in advance, if you use screen

share or otherwise. And we’ve done every other --

MR. TRENK: We can work it out today.

MR. KAPLAN: Excuse me, Mr. Trenk, I’m speaking. Thank you.

We have not, sir, done any of that. We have produced our witnesses in person. We are doing this hearing in person. And so, every other activity has occurred in person. And to the extent, sir, we could have put our witnesses on Zoom, but they’re here, in person, and we just want the same treatment as everybody else. That’s all we’re asking for is the same treatment as everyone else.

And the fact that Century’s expert is on vacation is very nice, but that’s their expert. And if they’d like to use that person at the hearing, they should be produced, in time, here, in person, and if it’s going to be Monday, that’s fine. We will have an adjustment made. Someone else will have to cover it. I’m not available, so we can’t do it.

And the other problem is this, sir, is, we can’t just extend the schedule out two days until Friday, April 1st, because as Mr. Trenk and others know in this room, I’m not going to be available on March 31st or April 1st because I’m having surgery, which I scheduled around this case.

So it’s not going to be a possibility for us to just pump it out two days. They know that, and so, that’s why

that's just not fair. So, again, I've tried to work all week to try to take this issue off of Your Honor's plate and get it scheduled, that it's fair, but we can't have both the Debtor having their hearing when they want, and the insurers producing experts when they want. That's just not fair.

THE COURT: Does anyone else want to --

MR. ROTEN: Well, Your Honor, this is Mr. Roten, could I respond briefly to that?

THE COURT: Very briefly.

MR. ROTEN: Yes, Your Honor. We're not asking for special treatment. We're just following the literal wording of the order that the Court entered. That's all we're doing. We don't want any special treatment. We're a party in interest in this case. We have the right to be heard. Our expert has the right to be heard.

What mu good friend, Mr. Kaplan, is characterizing as affirmative evidence is not affirmative evidence. It's part of the rebuttal. And he will be able to ask all of the questions he wants to ask about that tomorrow afternoon. And Ms. Comiter will respond fully to his excellent inquiry.

THE COURT: Anybody else want to, briefly, be heard?

MR. TRENK: Yes, Your Honor, Richard Trenk. With regard to these protocols, we could work out these protocols in ten minutes. There's nothing in the Federal Rules that makes them super-protocols. And keep in mind, while we all

love live depositions, the reality, as I think Mr. Hinker said, is we've all learned to deal with Zoom depositions. And this is not like a credibility determination.

This is, as Mr. Roten just said, understanding the basis for opinions and decisions in this case. It sounds like coverage defenses and whatnot. So to suggest that Mr. Kaplan and his significant staff that is involved in this case cannot take a Zoom deposition on Friday to ask questions -- we're all working in a compressed manner, recognizing that this case is now 18 months old, and it's costing millions of dollars to get through.

So this should not be an avenue to delay the schedule because we do have the ability and the resources to take this one deposition and get it done in this time frame.

Thank you, Your Honor.

THE COURT: Anyone else? All right.

I'm not going to require -- first of all, I am not going to exclude any reports at this juncture. I see no basis for it, and to ask me to exclude an entire report or full sections of a report, basically, on one day's notice to the Court and without any real analysis on that or briefing on that, I'm not going to do that. So I am not going to exclude any of the reports.

I understand Ms. Comiter's deposition is going forward tomorrow at the conclusion of the hearing that we are

doing by Court Solutions.

With regard to the remaining potential deposition of Mr. Hinton, I am not going to require that it be done by Zoom. None of the other depositions, as I understand, have been done by Zoom, so I am not going to now change course and require a deposition to be done by Zoom without consent of the parties. So, understanding that he is not available on the 25th, his deposition will have to be on the 28th. That may require some fixing of the schedules.

And I am going to conclude with this, and I am not going to take any argument on this today. You can think about it overnight and tell me where you stand tomorrow. But I am considering tapping the brakes, and moving the hearing to April 13th and 14th, followed up with April 20th through the 22nd.

That would push some of those deadlines back. I am considering it. I will let the parties speak to that tomorrow morning during our hearing. That's my decision with regard to the depositions and the expert reports for today. Thank you, everyone. Have a good afternoon.

MR. KAPLAN: Thank you, Your Honor.

(Proceedings concluded at 3:42 p.m.)

* * *

**C E R T I F I C A T I O N**

I, Jacqueline Mullica, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter heard on March 24, 2022 from 3:08 p.m. to 3:42 p.m.

/s/Jacqueline M. Mullica     March 25, 2022

DIANA DOMAN TRANSCRIBING, LLC