**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THE DIOCESE OF CAMDEN, NEW JERSEY, | Case No. 20-21257 (JNP) |
| Debtor. | |

~~SEVENTH~~EIGHTH AMENDED PLAN OF REORGANIZATION

**TRENK ISABEL SIDDIQI**
  **& SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2350
Livingston, NJ 07039
Telephone:  (973) 533-1000
Email:  rtrenk@trenkisabel.law
Email:  rroglieri@trenkisabel.law

**LOWENSTEIN SANDLER LLP**
Jeffrey D. Prol, Esq.
Michael A. Kaplan, Esq.
Brent Weisenberg, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone:  (973) 597-2500
Email:  jprol@lowenstein.com
Email:  mkaplan@lowenstein.com
Email:  bweisenberg@lowenstein.com

*Counsel to The Diocese of Camden,*
*New Jersey*

*Counsel to the Official Committee*
*of Tort Claimant Creditors*

Dated:  ~~May 2~~June 1, 2022

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................. i

ARTICLE I. INTRODUCTION ....................................................................................1

ARTICLE II. INTERPRETATION OF TERMS AND DEFINITIONS ........................1

ARTICLE III. CLASSIFICATION OF CLAIMS ...........................................................14

ARTICLE IV. TREATMENT OF UNCLASSIFIED CLAIMS....................................15

ARTICLE V. TREATMENT OF CLASSIFIED CLAIMS............................................16

ARTICLE VI. ACCEPTANCE .......................................................................................22

ARTICLE VII. THE TRUST............................................................................................22

ARTICLE VIII. TRUST DISTRIBUTION PLAN AND RELATED PROVISIONS .................32

ARTICLE IX. SETTLING INSURERS ..........................................................................39

ARTICLE X. NON-SETTLING INSURERS ................................................................40

ARTICLE XI. EFFECT OF PLAN ON CLAIMS.........................................................43

ARTICLE XII. PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY....................50

ARTICLE XIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ..............................................................................................53

ARTICLE XIV. CONFIRMATION AND CONSUMMATION OF THIS PLAN......................53

ARTICLE XV. EFFECTS OF CONFIRMATION .........................................................56

ARTICLE XVI. RETENTION OF JURISDICTION........................................................58

ARTICLE XVII. BANKRUPTCY RULE 9019 REQUEST...........................................60

ARTICLE XVIII. INCORPORATION OF CHILD PROTECTION PROTOCOLS....................60

ARTICLE XIX. MISCELLANEOUS PROVISIONS.......................................................60

The Diocese of Camden, New Jersey (the "**Diocese**" or the "**Debtor**") and its Official Committee of Tort Claimant Creditors (the "**Tort Committee**," and together with the Debtor, the "**Plan Proponents**") jointly submit this ~~Seventh~~*Eighth Amended Plan of Reorganization* (this "**Plan**") pursuant to chapter 11 of the Bankruptcy Code.

## ARTICLE I.
## INTRODUCTION

The Diocese is the debtor-in-possession in the instant Chapter 11 Case. On October 1, 2020, the Diocese commenced a bankruptcy case by filing a voluntary chapter 11 petition under the Bankruptcy Code. This document is the Plan proposed by the Plan Proponents.

For a discussion of the Debtor's history, mission, risk factors associated with this Plan and for a summary and analysis of this Plan and related matters, reference is made to the Disclosure Statement (as defined herein). Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and any restrictions on modifications set forth herein, the Plan Proponents expressly reserve the right to alter, amend, or modify this Plan, one or more times before substantial consummation thereof.

The contents of this Plan should not be construed as legal, business, or tax advice. Each holder of a Claim should consult its own legal counsel and accountant as to legal, tax, and other matters concerning their Claim.

## ARTICLE II.
## INTERPRETATION OF TERMS AND DEFINITIONS

2.1.    **Interpretation.**

For purposes of this Plan:

2.1.1.    any term that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

2.1.2.    the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" or "includes, but is not limited to";

2.1.3.    the phrase "relating to" or "relates to" means "with regard to, with respect to, by reason of, on account of, based on, arising out of, relating to, or in any way connected with";

2.1.4.    whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

2.1.5.    the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

1

2.1.6.    unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

2.1.7.    any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

2.1.8.    any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented;

2.1.9.    unless otherwise specified, all references in this Plan to "Articles," "Sections," "Schedules" and "Exhibits" are references to Articles, Sections, Schedules, and Exhibits of or to this Plan;

2.1.10.    the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan;

2.1.11.    captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of this Plan or otherwise affect the interpretation of this Plan; and

2.1.12.    this Plan supersedes all prior drafts of this Plan, and all prior negotiations, agreements, and understandings with respect to this Plan, evidence of which shall not affect the interpretation of any provision of this Plan.

2.2.    **Definitions.**

Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Bankruptcy Rules.  For the purposes of this Plan, the following terms (which appear in this Plan in capitalized form) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.

2.2.1.    "**Abuse Claim**" means all Claims relating to, in whole or in part, directly or indirectly, Abuse committed by any Person before the Effective Date for which a Covered Party is allegedly responsible, including any such Claim asserted against any Covered Party in connection with the Chapter 11 Case.  Except as otherwise provided herein, the term "Abuse Claims" includes "Unknown Abuse Claims."  The term "Abuse Claim" does not include Contribution Claims, Medicare Claims or Claims against Persons who are not Covered Parties.

2.2.2.    "**Abuse Claims Reviewer**" means the Person appointed by the Tort Committee who will assess Class 5 and Class 6 Claims.

2.2.3.    "**Abuse**" means any actual, alleged or threatened sexual conduct, misbehavior, misconduct, abuse or molestation, any other sexually-related act, contact, or

2

interaction, indecent assault and/or battery, rape, indecent or lascivious behavior, undue familiarity, harassment, pedophilia, ephebophilia, or any other contacts, or interactions of a sexual nature between a minor and an adult, or an adult and a non-consenting adult, assault, battery, corporal punishment, any other act causing physical, psychological, mental or emotional abuse, humiliation, or intimidation, incest, or use of a child in a sexual performance.  Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the person.

2.2.4. "**Action**" means any lawsuit, proceeding, or other action in a court or any arbitration.

2.2.5. "**Additional Debtor Contributions Security Agreement**" has the meaning ascribed to such term in Section 7.2.2 of this Plan.

2.2.6. "**Additional Debtor Contributions**" has the meaning ascribed to such term in Section 7.2.2 of this Plan.

2.2.7. "**Administrative Expense Claim**" means any Claim constituting an actual, necessary cost or expense of administering the Chapter 11 Case under sections 503(b)(1) through (8) and 507(a)(2) of the Bankruptcy Code including, (a) any actual and necessary costs and expenses of preserving the Estate, (b) all compensation and reimbursement of expenses under sections 330 or 503 of the Bankruptcy Code, (c) any fees or charges assessed against the Estate under section 1930 of chapter 123 of title 28 of the United States Code, and (d) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

2.2.8. "**Affiliate**" means any past, present, or future Person that controls, is controlled by, or is under control with, another Person, including parents, subsidiaries, merged Persons, consolidated Persons, holding Persons, and acquired Persons, or any predecessor to such Person.

2.2.9. "**Agent**" means any past and present employee, officer, director, agent, shareholder, principal, teacher, staff, stockholder, member, partner, board member, trustee, administrator, priest, deacon, religious brother, religious sister, nun, clergy, Person bound by a monastic vow, volunteer, attorney, claim handling administrator, and representatives of a Person, in their capacity as such.  For the avoidance of doubt, when the term "Agent" is used in this Plan in the context of granting the Diocese or an Other Catholic Entity a release or discharge, the term "Agent" in that context shall not include:  (i) an individual who perpetrated an act of Abuse that forms the basis of an Abuse Claim; (ii) a religious order, other diocese or archdiocese (other than the Diocese); (iii) Non-Settling Insurers; and (iv) Joint Tortfeasors.

2.2.10. "**Alleged Insured**" has the meaning ascribed to such term in Section 9.3 of this Plan.

2.2.11. "**Allowed**" means, with reference to any Claim, proof of which was timely and properly filed or, if no Proof of Claim was filed, which has been or hereafter is listed by the Debtor in the Schedules, as liquidated in amount and not disputed or contingent and, in each case, as to which:  (A) no objection to allowance has been interposed within the applicable period

3

fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (B) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.  Notwithstanding the foregoing, pursuant to the Trust Distribution Procedures, the Trust Administrator shall have the authority to deem any untimely Class 5 Claim Allowed even if such Claim was not filed by the Bar Date.

2.2.12.    "**Avoidance Actions**" means any and all rights to recover or avoid transfers or Liens under Chapter 5 of the Bankruptcy Code or otherwise, including sections 506(d), 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions; subject, however, to any releases thereof provided in this Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court.

2.2.13.    "**Bankruptcy Code**" means title 11 of the United States Code.

2.2.14.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey or the District Court for the District of New Jersey, as applicable.

2.2.15.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075.

2.2.16.    "**Bar Date**" means June 30, 2021 at 11:59 p.m. as set forth in the Bankruptcy Court's *Order Granting the Diocese's Motion for Entry of an Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF 409].

2.2.17.    "**Bishop**" means The Most Reverend Dennis J. Sullivan, D.D., or any successor bishop of the Diocese.

2.2.18.    "**Business Day**" means any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey or the United States of America are authorized by law to close.

2.2.19.    "**Cash**" means legal tender of the United States of America and equivalents thereof.

2.2.20.    "**Catholic Ministry Entities**" means, collectively, the past and present nonprofit corporations that work to carry out various ministries of the Catholic Church within the territory of the Diocese, including, but not limited to: (i) those entities listed on Exhibit 2.2.20; and (ii) those entities listed in Article V.B.d of the Disclosure Statement.  Nothing in the foregoing is intended to suggest that such Persons are an Agent of the Debtor or subject to its control.

2.2.21.    "**Channeled Claim(s)**" means the Claims channeled to the Trust by the Channeling Injunction, including all (a) Abuse Claims and Indirect Claims, except for any portion of such Claims that are Non-Settling Insurer Policy Claims; (b) Contribution Claims; (c) Medicare

4

Claims; and (d) Extra-Contractual Claims relating to the Claims listed in subsections (a)–(c) of above, and for which the Trust assumes liability, pursuant to this Plan, *provided, however*, that "Channeled Claims" shall not include any Claim against:  (i) an individual who perpetrated an act of Abuse that forms the basis of an Abuse Claim; (ii) a religious order, other diocese or archdiocese (other than the Diocese); (iii) Non-Settling Insurers; and (iv) Joint Tortfeasors.

      2.2.22.     "**Channeling Injunction**" means the injunction contained in Section 11.2 of this Plan.

      2.2.23.     "**Chapter 11 Case**" means the case under Chapter 11 of the Bankruptcy Code in which the Diocese is the Debtor.

      2.2.24.     "**Child Protection Protocols**" means the document entitled "*Child Protection Protocols*" to be filed as a supplement and be deemed Exhibit 2.2.24.

      2.2.25.     "**Claim**" means (a) a claim as that term is defined in § 101(5) of the Bankruptcy Code; or (b) any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, Cause of Action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorneys' fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, Proof of Claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or (to the extent it arises prior to the Effective Date) future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.  A Person who holds a Claim is a "**Claimant**."

      2.2.26.     "**Class 5 Claim**" means an Abuse Claim.

      2.2.27.     "**Class 6 Claim**" means an Unknown Abuse Claim.

      2.2.28.     "**Class**" means a grouping of substantially similar Claims for common treatment thereof pursuant to the terms of this Plan.

      2.2.29.     "**CMS**" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any other Agent or successor Person responsible for

monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

2.2.30. "**Confirmation Hearing**" means a hearing conducted by the Bankruptcy Court for the purpose of considering Confirmation.

2.2.31. "**Confirmation Order**" shall mean an Order of the Bankruptcy Court confirming this Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.  The form and substance of the Confirmation Order shall be mutually acceptable to the Plan Proponents, the Other Catholic Entities, and, if one or more Insurance Settlement Agreements are approved prior to Confirmation, the Settling Insurers under such Insurance Settlement Agreements.

2.2.32. "**Confirmation**" means the entry of an Order by the Bankruptcy Court approving this Plan in accordance with the provisions of the Bankruptcy Code.

2.2.33. "**Contribution Claims**" means all Claims, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, by an Insurer against any Settling Insurer for the payment of money where such Insurer contends that it has paid more than its equitable or proportionate share of an Abuse Claim against a Covered Party.

2.2.34. "**Coverage Claims**" means all Claims against a Non-Settling Insurer under or relating to the policies issued by such Non-Settling Insurer.

2.2.35. "**Covered Parties**" means (i) the Debtor and Reorganized Debtor, as applicable; (ii) the parties listed on Exhibits 2.2.20, 2.2.72, 2.2.83 and 2.2.100 of this Plan; (iii) each of the foregoing Persons' respective past, present, and future Affiliates, related companies, divisions, and acquired companies; (iv) each of the foregoing Persons' respective predecessors, successors and assigns; and (v) solely to the extent of and in their capacity as such, any and all of the foregoing Persons' respective Agents.  Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Debtor or subject to its control.  For the avoidance of doubt, "Covered Parties" does not include:  (i) an individual who perpetrated an act of Abuse that forms the basis of an Abuse Claim; (ii) a religious order, other diocese or archdiocese (other than the Diocese); (iii) Non-Settling Insurers; and (iv) Joint Tortfeasors.

2.2.36. "**Covered Party Insurance Policy**" means any known or unknown contract, binder, certificate, or policy of insurance, in effect on or before the Effective Date, which actually, allegedly, or potentially insures any Covered Party, or any of their predecessors in interest, successors, or assigns, with respect to any Abuse Claim, *provided, however*, that if a contract, binder, certificate, or policy of insurance was not issued or subscribed on behalf of or allegedly issued to or subscribed on behalf of a Covered Party, but insures or covers both a Covered Party and any other Person, such contract, binder, certificate or policy of insurance, as applicable, is a "Covered Party Insurance Policy" to the extent it insures or covers the Debtor or any Covered Party, but not to the extent it insures or covers any other Person.

2.2.37. "**Creditor**" means any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code.  This includes all Persons holding Claims

6

against the Debtor.

2.2.38.    "**Debtor Cash Contribution**" has the meaning ascribed to such term in Section 7.2.2 of this Plan.

2.2.39.    "**Debtor**" means the Diocese.

2.2.40.    "**Defense Costs**" has the meaning ascribed to such term in Section 7.14 of this Plan.

2.2.41.    "**Diocese**" means The Diocese of Camden, New Jersey, which is the diocesan not for profit religious corporation formed pursuant to New Jersey Statutes Annotated Title 16 that is the public juridic person of the Roman Catholic Diocese of Camden, as now constituted or as it may have been constituted, and the Estate (pursuant to section 541 of the Bankruptcy Code). "**Diocesan**" is the adjectival form of Diocese.

2.2.42.    "**Disbursing Agent**" has the meaning ascribed to such term in Section 12.1. of this Plan.

2.2.43.    "**Disclosure Statement**" means the ~~Seventh~~Eighth Amended Disclosure Statement filed by the Debtor as required pursuant to section 1125, *et seq.* of the Bankruptcy Code as approved by the Bankruptcy Court.

2.2.44.    "**DOC Trusts**" means Diocese of Camden Trusts, Inc.

2.2.45.    "**DOCT Cash Contribution**" has the meaning ascribed to such term in Section 7.2.2 of this Plan.

2.2.46.    "**DOCT Loan**" has the meaning ascribed to such term in Section 7.2.2 of this Plan.

2.2.47.    "**Effective Date**" means the date on which all of the conditions to Confirmation and conditions to the Effective Date have been satisfied or waived in accordance with the requirements of Article 14 of this Plan.

2.2.48.    "**Estate**" means the estate of the Debtor created upon the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

2.2.49.    "**Exculpated Party**" or "**Exculpated Parties**" means collectively, (i) the Debtor, the Estate, the Tort Committee and the Trade Committee; (ii) their respective Agents, attorneys, experts, financial advisors, members of subcommittees of the board of trustees, and members of consultative bodies and councils, including with respect to their service or participation in an outside board on which they serve at the request of the Debtor or the Bishop, in their capacity as such; and (iii) professionals of a Person identified in the preceding clauses (i) through (ii).

2.2.50.    "**Executory Contract**" means any contract or unexpired lease entered into before the Petition Date between the Debtor and any other Person or Persons, pursuant to

7

which parties to both sides of the contract or lease have remaining material duties such that the breach by one party would excuse the performance by the other parties thereto.

2.2.51.    "**Expedited Distribution Election**" has the meaning ascribed to such term in Section 8.4. of this Plan.

2.2.52.    "**Expedited Distribution**" has the meaning ascribed to such term in Section 8.4. of this Plan.

2.2.53.    "**Extra-Contractual Claim(s)**" means any Claim against any Settling Insurer seeking any type of relief other than coverage or benefits under the Covered Party Insurance Policies, including, but not limited to, Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs or any other type of Claim with respect to (i) any Covered Party Insurance Policy; (ii) any Claim allegedly or actually covered under a Covered Party Insurance Policy; or (iii) the conduct of a Settling Insurer with respect to (i) or (ii). Extra-Contractual Claims include all Claims relating to the Settling Insurers' handling of any Coverage Claim under the Covered Party Insurance Policies and conduct in engaging in settlement negotiations related to any Coverage Claim.

2.2.54.    "**Fee Claim**" means a Claim under sections 328, 330(a), 331, 363 or 503 of the Bankruptcy Code for professional compensation.

2.2.55.    "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

2.2.56.    "**Final Order**" means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending and in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest Bankruptcy Court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.  If any appeal of the Confirmation Order becomes equitably moot due to Substantial Consummation, the Confirmation Order shall be considered a Final Order as of the date that the order determining such appeal to be moot has become a Final Order.

2.2.57.    "**General Unsecured Claim**" means any Claim against the Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as applicable, to have arisen before the Petition Date and that is not:  (i) an Administrative Expense Claim, (ii) a Priority Tax Claim, (iii) a Non-Tax Priority Claim, (iv) a Secured Claim, (v) a Pension Claim; (vi) an Abuse Claim; (vii) an Unknown Abuse Claim or (viii) a Non-Abuse Litigation Claim.

2.2.58.    "**Holder**" means the beneficial holder of any Claim.

8

2.2.59.    "**Impaired**" means a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

2.2.60.    "**Indirect Claims**" means all Claims by a Joint Tortfeasor asserted against a Covered Party or a Settling Insurer for contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, reimbursement, or any other indirect or derivative recovery, on account of, or with respect to, any Covered Party's actual or alleged liability, for any Claim relating to Abuse that is not an Abuse Claim.

2.2.61.    "**Initial Debtor Contribution**" has the meaning ascribed to such term in Section 7.2.2. of this Plan.

2.2.62.    "**Insurance Assignment**" means the assignment of the Transferred Insurance Interests to the Trust.

2.2.63.    "**Insurance Coverage Adversary Proceeding**" means the adversary proceeding captioned *The Diocese of Camden, New Jersey v. INA, et al.*, Adv. Pro. No. 20-1573 (JNP) (Dist. of N.J. Bankr.).

2.2.64.    "**Insurance Settlement Agreement(s)**" means a settlement agreement among (i) any or all of the Covered Parties, (ii) the Tort Committee and (iii) the Settling Insurers which shall be filed as Plan Supplements if such agreements are fully executed prior to Confirmation and which shall be attached to the Confirmation Order if they are approved by the Bankruptcy Court.

2.2.65.    "**Insurance Settlement Approval Order**" means an order of the Bankruptcy Court approving one or more Insurance Settlement Agreements.  The "Insurance Settlement Approval Order" may be the Confirmation Order if it approves an Insurance Settlement Agreement.

2.2.66.    "**Insurer**" means a Person (including all of its Affiliates, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in a Covered Party Insurance Policy.

2.2.67.    "**Interests**" means all Claims, including any "interests" as that term is used in section 363 of the Bankruptcy Code, and other rights of any nature, whether at law or in equity, including all interests or other rights under New Jersey law or any other applicable law.

2.2.68.    "**Joint Tortfeasor**" means any Person, who is not a Covered Party, and is alleged to be a joint tortfeasor with any Covered Party in connection with the Abuse relating to an Abuse Claim.  Any Person alleged to be a Joint Tortfeasor shall not be liable for any Covered Party's share of causal liability or fault or have any Claim against the Covered Parties and all such Claims are treated as Indirect Claims under this Plan.

2.2.69.    "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

9

2.2.70.    "**Medicare Claims**" means any and all Claims by CMS against the Trust, any Settling Insurer, or any Covered Party, under MMSEA and under MSP, that relate to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants who recover or receive any distribution from the Trust and Claims by CMS relating to reporting obligations.

2.2.71.    "**Medicare Secondary Payor Act**" or "**MSP**" means 42 U.S.C. § 1395y *et seq.*, or any other similar statute or regulation, and any related rules, regulations or guidance issued in connection therewith or amendments thereto.

2.2.72.    "**Missions**" means, collectively, all past and present missions located within the territory of the Diocese, including, but not limited to, those listed on Exhibit 2.2.72. Nothing in the foregoing is intended to suggest that such Persons are Agents of the Debtor or subject to its control.

2.2.73.    "**MMSEA**" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173), which imposes reporting obligations on those Persons with payment obligations under the MSP.

2.2.74.    "**Non-Abuse Litigation Claims**" means Claims arising out of litigation pending against the Debtor prior to the Petition Date asserting causes of action unrelated to Abuse.

2.2.75.    "**Non-Settling Insurer Policy Claim**" means any Claim for which insurance coverage is provided or allegedly provided by a Non-Settling Insurer Policy.

2.2.76.    "**Non-Settling Insurer Policy**" means any Insurance Policy any Non-Settling Insurer issued, subscribed any interest in, or has underwritten any risk in.

2.2.77.    "**Non-Settling Insurer**" means any Insurer that is not a Settling Insurer by the Effective Date.

2.2.78.    "**OCE Cash Contribution**" has the meaning ascribed to such term in Section 7.2.2 of this Plan.

2.2.79.    "**Other Catholic Entities Insurance Assignment Agreement**" means that certain agreement to be attached to the Confirmation Order under which the Other Catholic Entities assign the proceeds of Non-Settling Insurer Policies and all Claims for such proceeds and all Claims against the Non-Settling Insurers concerning or arising from the Non-Settling Insurer Policies to the Trust as of the Effective Date. The Other Catholic Entities Insurance Assignment Agreement shall provide that (i) the Other Catholic Entities make no representation or warranty about their ability to assign the Non-Settling Insurer Policies to the Trust and (ii) any post-Effective Date Claims arising under or related to the Other Catholic Entities Insurance Assignment Agreement shall be the responsibility of the Trust at its sole cost and expense.

2.2.80.    "**Other Catholic Entities**" means all of the entities listed on Exhibits 2.2.20, 2.2.72, 2.2.83 and 2.2.100 of this Plan, including, but not limited to:  (i) the Parishes; (ii) the Missions; (iii) the Schools; and (iv) the Catholic Ministry Entities.  Nothing in the foregoing is intended to suggest that such Persons are Agents of the Debtor or subject to its control.

10

2.2.81.    "**Other Insured Entity**" or "**Other Insured Entities**" means those Persons that are, or allegedly are, insured or covered, under a Covered Party Insurance Policy, but do not include the Debtor, or the Other Catholic Entities.  A Person is an "Other Insured Entity" only to the extent it is insured under a Settling Insurer Policy.  An individual who perpetrated an act of Abuse that forms the basis of an Abuse Claim is not an Other Insured Entity.  No religious order, diocese or archdiocese (other than the Diocese) is an Other Insured Entity.

2.2.82.    "**Parish Cash Contribution**" has the meaning ascribed to such term in Section 7.2.2 of this Plan

2.2.83.    "**Parishes**" means, collectively, all past and present parishes within Diocesan territory, including, but not limited to: (i) any parishes located within the territory of the Diocese and incorporated under N.J.S.A. 16:15-1 to 16:15-8 and (ii) the entities listed on Exhibit 2.2.83 to this Plan.  Nothing in the foregoing is intended to suggest that such Persons are Agents of the Debtor or subject to its control.

2.2.84.    "**Pensions**" means the (i) Pension Plan for Priests of the Diocese of Camden; (ii) Pension Plan for Certain Lay Employees of the Diocese of Camden and (iii) Post-Retirement Benefits Plan for Priests of the Diocese of Camden.

2.2.85.    "**Person**" means an individual or entity, a corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated organization or association, federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof; and any other individual or entity within the definitions of (i) "person" in section 101(41) of the Bankruptcy Code or (ii) "entity" in section 101(15) of the Bankruptcy Code.

2.2.86.    "**Petition Date**" means October 1, 2020, the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

2.2.87.    "**Plan Documents**" means, collectively, (a) this Plan, (b) the Plan Supplement(s), (c) the Disclosure Statement, (d) the Trust Documents, (e) the Trust Distribution Plan, (f) all of the exhibits and schedules attached to any of the foregoing and (g) any other document or instrument necessary to implement this Plan.

2.2.88.    "**Plan Proponents**" means the Debtor and the Tort Committee, together.

2.2.89.    "**Plan Supplement(s)**" means any supplements to this Plan containing exhibits and schedules to this Plan, which will be filed in accordance with the terms of this Plan.

2.2.90.    "**Plan**" means this ~~Seventh~~Eighth Amended Plan of Reorganization, as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

2.2.91.    "**PNC Bank**" means PNC Bank, National Association.

11

2.2.92.    "**Priority Non-Tax Claim**" means a Claim entitled to priority under sections 507(a)(2), (3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

2.2.93.    "**Priority Tax Claim**" means any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

2.2.94.    "**Proof of Claim**" means a proof of Claim filed pursuant to Bankruptcy Code section 501 and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

2.2.95.    "**Reduction Amount**" has the meaning ascribed to such term in Section 9.3 of this Plan.

2.2.96.    "**Released Party**" means collectively and in each case in their capacity as such: (i) the Debtor and Reorganized Debtor; and (ii) all Persons listed on Exhibits 2.2.20, 2.2.72, 2.2.83 and 2.2.100 of this Plan as may be amended prior to Confirmation; and (iii) except as otherwise provided for by this Plan, with respect to each of the foregoing Persons in clauses (i) through (ii), such Persons' successors and assigns, Affiliates, and its and their current and former officers, directors, trustees, principals, shareholders and their Affiliates, and Agents, in their capacities of such.

2.2.97.    "**Releasing Party**" means collectively and in each case in their capacity as such:  (i)  the Debtor and the Debtor's Estate; (ii) all Persons listed on Exhibits 2.2.72, 2.2.72, 2.2.83 and 2.2.100 of this Plan as may be amended prior to Confirmation and (iii) with respect to each of the foregoing Persons, such Persons' and the Debtor's Affiliates successors and assigns, and its and their current and former Agents, and such Persons' respective heirs, executors, estates, servants and nominees; *provided, however*, that the Debtor is not releasing Claims against the Other Catholic Entities related to loans made by the Debtor to an Other Catholic Entity or accounts receivable from an Other Catholic Entity.

2.2.98.    "**Reorganized Debtor**" means the Diocese as it exists on and after the Effective Date.

2.2.99.    "**Schedules**" means the schedules, statements, and lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been amended or supplemented from time to time.

2.2.100.    "**Schools**" means, collectively, all past and present Catholic schools which are or were owned and/or operated by parishes located within the territory of the Diocese, or whose corporate member is or was the Diocese or the Bishop of Camden, or whose corporate trustees were or are, *ex officio*, pastors of parishes within the Diocese including, but not limited to: (i) the schools listed on Exhibit 2.2.100; and (ii) 22 schools owned and operated by certain Parishes; *provided, however*, Bishop Eustace Preparatory School in Pennsauken, New Jersey, St. Augustine Preparatory School in Richland, New Jersey, and Our Lady of Mercy Academy in Newfield, New Jersey are not "Schools" included in this definition.  Nothing in the foregoing is intended to suggest that such Persons are Agents of the Debtor or subject to its control.

12

2.2.101.    "**Secured Claim**" means a Claim (i) that is secured by a Lien on property in which the Estate has an Interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtor; (ii) to the extent of the value of the Holder's Interest in the Estate's Interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtor or (B) if disputed by the Debtor, such dispute is settled by written agreement between the Debtor and the holder of such Claim or determined, resolved, or adjudicated by Final Order.

2.2.102.    "**Settling Insurers**" means the Persons to be listed on an exhibit to be attached to the Confirmation Order whose Insurance Settlement Agreements are approved by an Insurance Settlement Approval Order and such orders become Final Orders prior to the Effective Date.

2.2.103.    "**Substantial Consummation**" means the substantial consummation of a chapter 11 plan as defined in section 1101(2) of the Bankruptcy Code.

2.2.104.    "**Tax Code**" means the Internal Revenue Code of 1986, as amended.

2.2.105.    "**Tort Committee**" means the Official Committee of Tort Claimant Creditors of The Diocese of Camden, New Jersey, appointed by the U.S. Trustee in the Chapter 11 Case.

2.2.106.    "**Trade Committee**" means the Official Committee of Unsecured Trade Creditors appointed by the U.S. Trustee in the Chapter 11 Case.

2.2.107.    "**Transferred Insurance Interests**" means the following rights and interests of the Covered Parties in Non-Settling Insurer Policies in respect of actual or potential coverage for any Abuse Claim or Unknown Abuse Claim:  (a) the proceeds of such Non-Settling Insurer Policies and all Claims for such proceeds; and (b) all Coverage Claims against the Non-Settling Insurers, including, but not limited to, all Claims based on, or related to, the Non-Settling Insurers' conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim.

2.2.108.    "**Treasury Regulations**" has the meaning ascribed to such term in Section 7.1. of this Plan.

2.2.109.    "**Trust Administrator**" shall mean the Person appointed by the Tort Committee as the Trust Administrator of the Trust in accordance with the terms of this Plan, the Confirmation Order, and the Trust Agreement, or any successor appointed in accordance with such terms thereafter.

2.2.110.    "**Trust Advisory Committee**" means the committee established pursuant to this Plan and the Trust Agreement and having the powers, duties and obligations set forth in this Plan and the Trust Agreement.

2.2.111.    "**Trust Agreement**" means "The Diocese of Camden Plan Trust

13

Agreement" establishing the Trust as may be amended, attached to this Plan as <u>Exhibit 2.2.111</u>.

        2.2.112.   "**Trust Assets**" means the Cash and other assets to be transferred to the Trust under this Plan.

        2.2.113.   "**Trust Distribution Plan**" means the Trust Distribution Plan attached to this Plan as <u>Exhibit 2.2.113</u>.

        2.2.114.   "**Trust Distribution Procedures**" means the procedures set forth in the Trust Distribution Plan to be implemented by the Trust Administrator pursuant to the terms and conditions of this Plan and the Trust Agreement to resolve, liquidate, and pay (if entitled to payment) Class 5 and Class 6 Claims as and to the extent set forth in such procedures.

        2.2.115.   "**Trust Documents**" means the Trust Agreement, together with such additional documents as may be executed in connection with the Trust Agreement.

        2.2.116.   "**Trust**" means the trust created for the benefit of Holders of Class 5 and 6 Claims in accordance with this Plan, the Confirmation Order and the Trust Agreement.

        2.2.117.   "**U.S. Trustee Fees**" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the Bankruptcy Code and any interest thereupon.

        2.2.118.   "**U.S. Trustee**" means the Office of the United States Trustee for Region 3, which includes the District of New Jersey.

        2.2.119.   "**Unknown Abuse Claim**" means (a) any Abuse Claim that was neither filed, nor deemed filed by the Bar Date, or otherwise allowed by the Bankruptcy Court prior to the Effective Date; and (b) is held by (i) a Person who at the time of the Bar Date was under a disability recognized by any applicable law suspending the running of the limitation period, if any; or (ii) an individual who has an Abuse Claim that was barred by the statute of limitations as of the Effective Date but is no longer barred by the applicable statute of limitations for any reason after the Effective Date, including the enactment of legislation that revises previously time-barred Abuse Claims.

        2.2.120.   "**Unknown Abuse Claims Reserve**" means $500,000.

        2.2.121.   "**Unknown Claims Representative**" means Judge Michael R. Hogan as provided by the *Order Authorizing the Appointment of Judge Michael R. Hogan as Unknown Claims Representative* [ECF 1237].

        2.2.122.   "**Unknown Claims Reserve Establishment Period**" has the meaning ascribed to such term in Section 7.3 of this Plan.

**ARTICLE III.**
**CLASSIFICATION OF CLAIMS**

    3.1.   **Classification**.  All Claims, as defined herein and in section 101(5) of the Bankruptcy Code, except the Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, and

14

Priority Tax Claims, are placed into the Classes set forth below.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims, as described below, are not classified in this Plan, and the treatment of such Claims is set forth in Article III below.  A Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Classes to the extent that any portion of such Claim falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, discharged, released or otherwise settled prior to the Effective Date.

     3.2.    **Unclassified Claims**.  The following are the unclassified Claims: Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims.  Unclassified Claims are not Impaired by this Plan.  Each Holder of an unclassified Claim is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote to accept or reject this Plan.

     3.3.    **Classified Claims**.  As set forth in the table below, Class 1 is Unimpaired under this Plan, and, pursuant to section 1126(f) of the Bankruptcy Code, is conclusively presumed to have accepted this Plan.  Classes 7A and 7B are fully Impaired and are not receiving any Distributions under this Plan and, pursuant to section 1126(g) of the Bankruptcy Code, are conclusively presumed to have rejected this Plan.  Classes 2, 3, 4, 5, 6 and 8 are Impaired under this Plan and are entitled to vote on this Plan.

| Class | Claims & Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | PNC Bank Claim | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Pension Claims | Impaired | Entitled to Vote |
| 5 | Abuse Claims Other Than Unknown Abuse Claims | Impaired | Entitled to Vote |
| 6 | Unknown Abuse Claims | Impaired | Entitled to Vote |
| 7A | Abuse Related Contingent Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7B | Abuse Related Contingent Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Non-Abuse Litigation Claims | Impaired | Entitled to Vote |

## ARTICLE IV.
## TREATMENT OF UNCLASSIFIED CLAIMS

     4.1.    **Administrative Expenses Claims**.  Administrative Expense Claims are Claims for costs or expenses of administering the Debtor's Chapter 11 Case, which are Allowed under Bankruptcy Code section 503(b) or otherwise.  The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date, unless a particular Claimant agrees to different treatment.  The Debtor or Reorganized Debtor, as appropriate, shall pay each Holder of an Allowed Administrative Expense Claim in full, in Cash, on the later of (i) fifteen (15) days after the Effective Date; or (ii) fifteen (15) days after the date on which such Claim becomes an Allowed

4896-0343-6067, v. 1

Administrative Expense Claim.  Notwithstanding anything in this Plan to the contrary, the Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the Holder of an Allowed Administrative Expense Claim and Debtor/Reorganized Debtor.

4.2.  **Priority Tax Claims**.  The Reorganized Debtor shall pay any Allowed Priority Tax Claims, in full, in Cash, without interest, as soon as practicable after the later of (i) fifteen (15) days after the Effective Date, (ii) fifteen (15) days after the date on which such Claim becomes an Allowed Priority Tax Claim, (iii) at the option of the Debtor prior to the Effective Date in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, in Cash, in an aggregate amount of such Allowed Priority Tax Claim payable in regular quarterly installments over a period of not more than five (5) years from the Petition Date, or (iv) such other treatment agreed to by the Debtor and the Holder of such Allowed Priority Tax Claim; *provided, however*, that the Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with any Priority Tax Claim.  Any demand for any such penalty will be deemed disallowed by Confirmation of this Plan.  The Debtor is unaware of any Priority Tax Claims.

4.3.  **U.S. Trustee Fees**.  ~~All outstanding U.S. Trustee Fees that the Debtor has not paid as of the Effective Date shall be paid by the Reorganized Debtor no later than fifteen (15) days after the Effective Date or when such U.S. Trustee Fees come due in the ordinary course~~All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtor on the Effective Date.  After the Effective Date, the Reorganized Debtor shall pay any and all U.S. Trustee when due and payable.  The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Reorganized Debtor shall File with the Bankruptcy Court quarterly reports when they become due using UST Form 11-PCR.  The Debtor and the Reorganized Debtor shall remain obligated to pay U.S. Trustee Fees to the United States Trustee until the earliest of the Chapter 11 Case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The United States Trustee shall not be required to File any Administrative Expense Claim in the Chapter 11 Case and shall not be treated as providing any release under this Plan.

4.4.  **Fee Claims**.  All Persons seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 45 days after the Effective Date and (ii) shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (a) on the date upon which the Order relating to any such Allowed Fee Claim is entered, or (b) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor or Reorganized Debtor, as applicable.  The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after Confirmation in the ordinary course and without the need for Bankruptcy Court approval.

## ARTICLE V.
## TREATMENT OF CLASSIFIED CLAIMS

5.1.  **Class 1 (Priority Non-Tax Claims)**.  Certain priority non-tax Claims that are referred to in Bankruptcy Code sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority

16

treatment.  These Claims are to be treated as follows:

(a)  **Classification**.  Class 1 consists of Priority Non-Tax Claims.

(b)  **Impairment and Voting**.  Class 1 is Unimpaired.  Holders of Allowed Class 1 Priority Non-Tax Claims are deemed to have accepted this Plan and, thus, are not entitled to vote to accept or reject this Plan.

(c)  **Treatment**.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim and the Debtor shall have agreed in writing to a different treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash, without interest, in an amount equal to such Allowed Priority Non-Tax Claim as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date when such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

5.2.  **Class 2 (PNC Bank Claim).**

(a)  **Classification**.  PNC Bank is an unsecured creditor of the Diocese but is secured, *inter alia*, by a Pledge Agreement and Guaranty by DOC Trusts. Accordingly, PNC Bank is entitled to separate treatment under ~~this~~the Plan. PNC Bank's Claim is approximately $22.8 million.

(b)  **Impairment and Voting**.  Class 2 is Impaired and the Holder of the Class 2 Claim is entitled to vote to accept or reject ~~this~~the Plan.

(c)  **Treatment**.  On the Effective Date, the Diocese and DOC Trusts shall ~~assume and reaffirm all~~execute and deliver to PNC Bank amended and restated loan documents with PNC Bank and all such loan documents and provisions shall remain in full force and effect until all obligations of the Debtor have been indefeasibly paid in full ~~conditioned on the~~and which shall include the material following terms:

1.  Confirmation of ~~this~~the Plan no later than June 30, 2022;

2.  The Diocese shall continue to make interest only payments through the date of Confirmation;

3.  5-year term of repayment as follows:  (i) first two years interest only payments; (ii) following three years with payments based on an amortization of 15 years until ~~May 31, 2027~~[two-years from the Effective Date] and (iii) a balloon payment of the balance of the loan on ~~May 31, 2027;~~[five-years from the Effective Date];

4.  The Diocese maintains the right to repay the balance of the loan at any time without penalty or premium;

17

> **Formatted:** List Paragraph, Indent: Left: 2", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.5" + Indent at:  0.75", Tab stops: 2", List tab

5. Interest rate at BSBY plus 100 (1%) basis points; and

6. The Diocese (including its pension funds) and Other Catholic Entities shall keep total assets under management (AUM) at PNC ~~Bank~~ at no less than $250 million. If ~~assets under management fall~~AUM falls below that level, the interest rate increases to BSBY plus 400 basis points (4%).

**5.3.    Class 3 (General Unsecured Claims).**

(a)    **Classification**.    General Unsecured Claims are unsecured Claims not entitled to priority under Bankruptcy Code section 507(a), which are not Abuse Claims, Unknown Abuse Claims or Non-Abuse Litigation Claims. The unsecured Creditors include trade Creditors and total approximately $1,500,000.

(b)    **Impairment and Voting**.    Class 3 is Impaired, and each holder of a Class 3 Claim is entitled to vote to accept or reject ~~this~~the Plan.

(c)    **Treatment**. The Diocese shall pay Allowed Class 3 Claims a 75% dividend ~~over~~within 5-years~~,~~, payable as follows:

- A 15% payment shall be made upon the later of: (i) 60 days of the Effective Date; or (ii) 15 days of the determination of a Claim being an Allowed Claim, as applicable;
- On the first anniversary of the Effective Date, a 15% payment shall be made;
- On the second anniversary of the Effective Date, a 15% payment shall be made;
- On the third anniversary of the Effective Date, a 15% payment shall be made;
- On the fourth anniversary of the Effective Date, a final 15% payment shall be made.

Notwithstanding the above, Allowed Class 3 Claimants shall have the option to ~~forego the 75% payment within 5-years and instead~~ elect to receive a payment of 50% of their ~~claim within~~ Allowed Claim in full satisfaction of their Allowed Claim upon the later of: (i) 60 days after the Effective Date ~~in full satisfaction of their respective Claims~~; or (ii) 5 business days after the Claim is deemed Allowed, as applicable. Such election may be made through the Ballot or otherwise in writing to Debtor's counsel within 20 days of Confirmation.

~~(c)~~

**5.4.    Class 4 (Pension Claims).**

(a)    **Classification.**  Pension Claims are unsecured Claims that are based on the Debtor's underfunded Pensions. The Debtor estimates that these claims are

18

approximately $45,439,291.

    (b)    **Impairment and Voting**.  Class 4 is Impaired and the fiduciary charged with administering each of the Pensions is entitled to vote to accept or reject this Plan.

    (c)    **Treatment**.  The Reorganized Debtor shall pay into the Pensions their *pro rata* share of a maximum of a $40 million distribution paid in equal annual installments over 20 years.  Payments may be made quarterly.

5.5.    **<u>Class 5 (Abuse Claims Other Than Unknown Abuse Claims).</u>**

    (a)    **Classification.**  A Class 5 Claim means an Abuse Claim other than an Unknown Abuse Claim.

    (b)    **Impairment and Voting.**  Class 5 is Impaired and each holder of a Class 5 Claim is entitled to vote to accept or reject this Plan.

    (c)    **Treatment.**  This Plan creates a Trust to fund payments to Class 5 Claimants entitled to such payments under this Plan, the Trust Agreement and the Trust Distribution Plan.  Class 5 Claimants shall receive their allocable share of Trust Assets at the time and in the manner set forth in the Trust Distribution Plan.  It is intended that any payment on an Abuse Claim will constitute payment for damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Tax Code.

The settlement set forth in the *Order Approving Settlement of Controversy by and Among the Diocese and the RH Claimants Pursuant to Fed. R. Bankr. P. 9019(A)* entered on October 15, 2021 has expired by the terms of such order and is null and void.  The claimants set forth therein shall be treated as Class 5 Claimants in accordance with this Plan.

4896-0343-6067, v. 1

5.6.   **Class 6 (Unknown Abuse Claims).**

(a)   **Classification**. A Class 6 Claim means an Unknown Abuse Claim.

(b)   **Impairment and Voting.** Class 6 is Impaired and the Unknown Claims Representative shall submit a single ballot on behalf of Class 6 Claimants.

(c)   **Treatment.** Class 6 Claimants shall receive their allocable share of the Unknown Abuse Claims Reserve at the time and in the manner set forth in the Trust Distribution Plan. It is intended that any payment on an Abuse Claim will constitute payment for damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Tax Code.

5.7.   **Class 7A (Abuse Related Contingent Claims).**

(a)   **Classification**. A Class 7A Claim means any Claim for contribution, indemnity or reimbursement arising out of or related to the Diocese's liability to pay or defend any Class 5 Claim.

(b)   **Impairment and Voting**. Class 7A is Impaired. Class 7A is not receiving a distribution under this Plan, provided that the Other Catholic Entities receive the benefits of the Channeling Injunction, and, therefore, is deemed to reject this Plan.

(c)   **Treatment**. Class 7A Claims shall be disallowed and extinguished as a result of the terms of this Plan by the waiver of such claims by the Other Catholic Entities in exchange for the release and Channeling Injunction provided in this Plan and Trust Distribution Procedures. Class 7A Claims will receive no distribution under this Plan.

5.8.   **Class 7B (Abuse Related Contingent Claims).**

(a)   **Classification**. A Class 7B Claim means any Claim for contribution, indemnity or reimbursement arising out of or related to the Diocese's liability to pay or defend any Class 6 Claim.

(b)   **Impairment and Voting**. Class 7B is Impaired by this Plan. Class 7B is not receiving a distribution under this Plan provided that the Other Catholic Entities receive the benefits of the Channeling Injunction and, therefore, is deemed to reject this Plan.

(c)   **Treatment**. Class 7B Claims shall be disallowed and extinguished as a result of the terms of this Plan by the waiver of such claims by the Other Catholic Entities in exchange for the release and Channeling Injunction provided in this Plan and Trust Distribution Procedures. Class 7B Claims will receive no distribution under this Plan.

4896-0343-6067, v. 1

5.9.   **Class 8 (Non-Abuse Litigation Claims).**

    (a)   **Classification**.  Non-Abuse Litigation Claims are litigation Claims against the Diocese that are not Abuse Claims.

    (b)   **Impairment and Voting**.  Class 8 is Impaired and each holder of a Class 8 Claim is entitled to vote to accept or reject this Plan.

    (c)   **Treatment**.  Allowed Class 8 Claims shall be paid a *pro rata* portion of a $100,000 distribution.  The Diocese shall contribute $50,000 to be designated for Class 8 Claims.  Catholic Charities, Diocese of Camden, Inc. shall transfer $50,000 to the Diocese to be designated for Class 8 Claimants within two (2) business days after the Confirmation Order has become a Non-Appealable Order in exchange for a release of all Class 8 Claims against it.  This contribution amount is contingent upon the receipt by Catholic Charities of releases from third party claims.

4896-0343-6067, v. 1

## ARTICLE VI.
## ACCEPTANCE

6.1.    **Acceptance or Rejection of Plan**.  Each impaired class of Creditors with Claims against the Debtor's Estate shall be entitled to vote separately to accept or reject this Plan.  A Class of Creditors shall have accepted this Plan if this Plan is accepted by at least two-thirds in the aggregate dollar amount, and more than one-half in number of holders, of the allowed Claims of such class that have accepted or rejected this Plan.

6.2.    **Cramdown**.    To the extent necessary, the Plan Proponents shall request Confirmation of this Plan under section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to modify, amend, or withdraw this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

6.3.    **Modification of Treatment of Claims**.  The Debtor reserves the right to modify the treatment of any Allowed Claim (other than a Class 5 or Class 6 Claim) in any manner adverse only to the Holder of such Claim at any time after the Effective Date upon the consent of the Holder of the Claim whose Allowed Claim is being adversely affected, or as allowed by Bankruptcy Court Order, through the Effective Date.

## ARTICLE VII.
## THE TRUST

7.1.    **Establishment of Trust.**

Effective as of the date the Confirmation Order is entered, the Trust shall be established in accordance with the Trust Documents for the purposes of assuming liability of Covered Parties and Settling Insurers for Channeled Claims and receiving, liquidating and distributing Trust Assets in accordance with this Plan and the Trust Distribution Plan.

As of the Effective Date, the liability of Covered Parties and Settling Insurers for all Channeled Claims shall be assumed fully by the Trust, without further act, deed or Bankruptcy Court order, and, pursuant to the Channeling Injunction provided for herein, the liability of Covered Parties and Settling Insurers for all Channeled Claims shall be satisfied solely from Trust Assets.

The Trust is intended to qualify as a "qualified settlement fund" pursuant to section 468B of the Tax Code and the regulations promulgated thereunder (the "**Treasury Regulations**").  The Debtor is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1).  The Trust Administrator shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).  The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

7.2.    **Funding of Trust,**

Notwithstanding anything to the contrary in this Section, the Disclosure Statement or Plan, the Diocese and Other Catholic Entities **shall not** use "Restricted Funds" for any payments they make under the Plan, including, but not limited to, the payments to be made to the Trust.

22

7.2.1.    **Contributions to the Trust**.

The Trust shall be funded with: (i) $87.5 million by the Debtor and the Other Catholic Entities; (ii) any proceeds held by the Debtor or the Reorganized Debtor on account of Insurance Settlement Agreements as set forth in this Section 7.2; and (iii) the Transferred Insurance Interests.

7.2.2.    **Debtor Cash Contribution and OCE Cash Contributions.**

On the Effective Date, the Debtor shall transfer $29.75 million in good funds to the Trust using wiring instructions provided by the Trust Administrator (the "**Initial Debtor Contribution**").  The Initial Debtor Contribution will be primarily comprised of funds from the following sources: (i) $14.75 million in non-restricted cash accounts held by the Diocese; and (ii) $15 million in the form of a loan of non-restricted cash from DOC Trusts (the "**DOCT Loan**").

The Trust shall also be funded by the Debtor as set forth below (collectively, the "**Additional Debtor Contributions**" and together with the Initial Debtor Contribution, the "**Debtor Cash Contribution**"):

(a)    No later than one year after the Effective Date, the Debtor shall transfer $10 million in good funds to the Trust using wiring instructions provided by the Trust Administrator.

(b)    No later than two years after the Effective Date, the Debtor shall transfer an additional $10 million in good funds to the Trust using wiring instructions provided by the Trust Administrator.

(c)    No later than three years after the Effective Date, the Debtor shall transfer an additional $10 million in good funds to the Trust using wiring instructions provided by the Trust Administrator.

(d)    No later than four years after the Effective Date, the Debtor shall transfer an additional $7.5 million in good funds to the Trust using wiring instructions provided by the Trust Administrator.

To secure the Additional Debtor Contributions, the Diocese shall grant the Trust a Lien and security interest on certain bank accounts, investment accounts and receivables to set forth in a Security Agreement to be executed and delivered on the Effective Date (such agreement being the "**Additional Debtor Contributions Security Agreement**").  The holders of any interest, whether such interest be equitable or legal in nature, in the funds identified in the Additional Debtor Contributions Security Agreement, including the Diocese and Other Catholic Entities, hereby consent to the granting of such Lien and security interests as provided for therein to secure the Additional Debtor Contributions and the Diocese is deemed to have all requisite authority to enter into the Additional Debtor Contributions Security Agreement upon entry of the Confirmation Order.

On the Effective Date, the Parishes, Schools and Missions shall transfer $10 million in good funds to the Diocese, which shall be transferred by the Diocese together with the Initial Debtor Contribution to the Trust on the Effective Date using wiring instructions provided by the

23

4896-0343-6067, v. 1

Trust Administrator (the "**Parish Cash Contribution**").  On the Effective Date, DOC Trusts shall transfer $10 million in good funds to the Diocese, which shall be transferred by the Diocese together with the Initial Debtor Contribution to the Trust on the Effective Date using wiring instructions provided by the Trust Administrator (the "**DOCT Cash Contribution**").  On the Effective Date, the Catholic Ministry Entities other than DOC Trusts shall transfer $250,000 in good funds to the Diocese, which shall be transferred by the Diocese together with the Initial Debtor Contribution to the Trust on the Effective Date using wiring instructions provided by the Trust Administrator (the "**Catholic Ministry Cash Contribution**," and collectively with the Parish Cash Contribution and DOCT Cash Contribution, the "**OCE Cash Contributions**").  In addition to the OCE Cash Contributions, in consideration for the Channeling Injunction and the release provided for herein, the Other Catholic Entities shall: (i) waive all Claims against the Diocese and its Estate asserted in the Chapter 11 Case, including any rights to distributions under their Class 7A and 7B Claims; (ii) be deemed to have consented to the Diocese entering into the Additional Debtor Contributions Security Agreement to secure the Additional Debtor Contributions upon entry of the Confirmation Order; and (iii) consent to the transfer of the Transferred Insurance Interests to the Trust.

As additional consideration for the Channeling Injunction and release provided herein, DOC Trusts shall provide the DOCT Loan.

The Debtor Cash Contribution and the OCE Cash Contributions are being made in respect of the uninsured exposure of the Debtor and the Other Catholic Entities for Abuse Claims, including, but not limited to, years in which no Non-Settling Insurer Policies are available and, to the extent required under applicable law, when a self-insured retention or deductible must be satisfied to access coverage under Non-Settling Insurer Policies.  The Debtor Cash Contribution and the OCE Cash Contributions are not, and shall not be construed as, a discharge and/or release of any Abuse Claim covered or alleged to be covered under Non-Settling Insurer Policies. Notwithstanding the forgoing, the Debtor and the Other Catholic Entities shall have no further financial obligations under this Plan or the Plan Documents other than the obligations required to be paid to the Trust in Section 7.2.2 of this Plan

24

7.2.3.    **Additional Trust Assets:  the Transferred Insurance Interests.**

In addition to the Debtor Cash Contribution and the OCE Cash Contributions being paid to the Trust, the Transferred Insurance Interests of the Diocese are automatically and without further act or deed assigned and transferred to the Trust on the Effective Date.  In addition, the Interests of the other Covered Parties in the Transferred Insurance Interests are automatically and without further act or deed assigned and transferred to the Trust on the Effective Date.  The foregoing assignment and transfer shall not be construed as an assignment and transfer of the Non-Settling Insurer Policies but rather constitute an assignment of the right to receive insurance proceeds available under the Non-Settling Insurer Policies.

7.3.    **Unknown Claims Reserve**.

For a period of seven years after the Effective Date (the "**Unknown Claims Reserve Establishment Period**"), the Trust Administrator shall be obligated to maintain the Unknown Abuse Claim Reserve for the benefit of Unknown Abuse Claimants.  The Unknown Abuse Claims Reserve shall be administered as provided in the Trust Agreement and Trust Distribution Plan.  At the expiration of the Unknown Claims Reserve Establishment Period, neither the Debtor, Reorganized Debtor, Trust, nor any other Covered Party or Settling Insurer shall have any liability for Unknown Abuse Claims.

7.4.    **Vesting.**

On the Effective Date, all Trust Assets shall vest in the Trust, and the Diocese and other Covered Parties shall be deemed for all purposes to have transferred all of their respective Interests in the Trust Assets to the Trust.  On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor, any other Covered Party, and Settling Insurers, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust.  Upon the transfer of control of Trust Assets in accordance with this paragraph, the Diocese, the other Covered Parties and the Settling Insurers shall have no further interest in or with respect to the Trust Assets except as otherwise explicitly provided in this Plan.

7.5.    **Appointment of the Trust Administrator.**

The ~~initial~~Initial Trust Administrator will be identified in a Plan Supplement, which shall be filed ~~no later than 10 days~~ on or before 21 days prior to the deadline ~~established by the Bankruptcy Court to~~ to object to confirmation of this Plan, unless otherwise ordered by the Court.  The Trust Administrator shall commence serving as the Trust Administrator as of the date set forth in the Trust Agreement and be permitted to act in accordance with the terms of the Trust Agreement from such date, as authorized jointly by the Plan Proponents.  Such actions may include opening bank accounts and taking all further actions necessary to establish the Trust prior to the Effective Date in accordance with his or her duties under the Trust Agreement, for which the Trust Administrator shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and this Plan.

7.6.    **Rights and Responsibilities of the Trust Administrator.**

The Trust Administrator shall be deemed the Estate's representative  in accordance with

25

section 1123 of the Bankruptcy Code and shall have all the rights, powers, authority, responsibilities, and benefits specified in this Plan and the Trust Agreement, including (to the extent necessary to enforce those rights, powers, authority, responsibilities, and benefits only) the powers of a trustee under sections 704, 108 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004 (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting Claims, defenses, offsets and privileges). If there is any inconsistency or ambiguity between this Plan and Confirmation Order, on the one hand, and the Trust Agreement, on the other hand, with respect to the Trust Administrator's authority to act, the provisions of this Plan and Confirmation Order shall control. Among other things, as more fully set forth in the Trust Agreement, the Trust Administrator: (1) shall liquidate and convert to Cash the Trust Assets, make timely distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors and other agents on behalf of the Trust to carry out the obligations of the Trust Administrator hereunder and under the Trust Agreement, with payment to such professionals to be made solely from Trust Assets; (4) pursue Coverage Claims against any Non-Settling Insurers in respect of the Transferred Insurance Interests; (5) defend and indemnify the Covered Parties against Abuse Claims as provided in the Trust Distribution Plan; (6) may take any action required to enforce the Insurance Settlement Agreements and (7) shall have all rights and powers vested in the Trust Administrator provided for in the Trust Distribution Plan.

Notwithstanding the foregoing, the Diocese, the Reorganized Debtor, and the Trust acting for itself and on behalf of the Estate, shall be deemed to have waived, effective upon the Effective Date:

(a)     Any and all Claims under sections 547, 548, 549, and 550 of the Bankruptcy Code for the recovery of any sums paid to any Person who provided goods and services to the Diocese in the ordinary course of business, including Creditors in Class 3, prior to the Effective Date.

(b)     Any and all Claims: (i) seeking the substantive consolidation of the Diocese and any other Person or an order deeming any such Person and the Diocese to be an "alter-ego" of the other or any other similar Claim; (ii) to avoid, set aside or recover any payment or other transfer made to any Person under sections 547, 548, 549, and 550 of the Bankruptcy Code; and (iii) any proceeding to avoid or set aside any interest of a Person in property under section 544 of the Bankruptcy Code.

7.7.    **Appointment of Trust Advisory Committee.**

On the Effective Date, the Trust Advisory Committee shall be established pursuant to the terms of the Trust Agreement. The Trust Advisory Committee shall have the functions, duties and rights provided in the Trust Agreement. Upon termination of the Trust, or as otherwise provided in the Trust Agreement, the Trust Advisory Committee shall be deemed dissolved and discharged of and from all further authority, duties, responsibilities, and obligations with respect to or in connection with the Trust and the Chapter 11 Case.

Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Trust Advisory Committee, the members of the Trust Advisory Committee shall serve without compensation.  Reasonable expenses incurred by members of the Trust Advisory Committee may be solely paid by the Trust without need for approval of the Bankruptcy Court.  For the avoidance of doubt, the Diocese and Other Catholic Entities shall not be responsible for any fees, costs, and/or expenses associated with the Trust Advisory Committee.

7.8. **Transferred Insurance Interests.**

7.8.1. **Assignment of Insurance Interests**.

7.8.1.1. Effective as of the Effective Date, the Transferred Insurance Interests are assigned and transferred to the Trust.

(a) The Trust shall be entitled to (i) all recoveries on account of Transferred Insurance Interests as set forth in this Plan, the Trust Distribution Plan and the Confirmation Order and to (ii) assert and/or assign to any Abuse Claimant all Claims that currently exist or may arise in the future against Non-Settling Insurers.

(b) The Trust shall also have the right to pursue Claims against Non-Settling Insurers to determine Coverage Claims and other Claims relating to the Covered Parties' liability for Abuse Claims or the Non-Settling Insurers' obligations in respect of such Claims as set forth in the Trust Distribution Plan.  The foregoing transfer shall not be construed to entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers.

(c) The Trust may act in its own name, or in the name of any Abuse Claimant or Covered Party, to enforce any right, title, or interest of any Covered Party in the Transferred Insurance Interests.

(d) No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact the Debtor is in bankruptcy or by any distribution from the Trust to an Abuse Claimant.

(e) The Insurance Assignment shall not affect any Non-Settling Insurer's duty to defend, but to the extent that a failure to defend or a separate agreement between a Covered Party and any Non-Settling Insurer gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Trust shall be entitled to the benefit of such monetary obligation or policy proceeds.

(f) Any recovery by the Trust on Coverage Claims relating to the Covered Parties' liability for Abuse Claims shall become a Trust Asset and shall be distributed as provided in this Plan, the Trust Agreement and the Trust Distribution Plan.

27

(g)     The Trust's recourse to the Covered Parties shall be limited to the Transferred Insurance Interests and any other rights or interests expressly granted to the Trust under this Plan.

(h)     The Trust shall have no liability for Non-Abuse Litigation Claims and holders of Non-Abuse Litigation Claims shall have no recourse to the Trust with respect to such Claims.

7.8.1.2.     The Trust shall have full access to coverage under the Non-Settling Insurer Policies to the greatest extent permitted by applicable non-bankruptcy law, in the same manner and to the same extent as the Covered Parties prior to the confirmation of this Plan and the Insurance Assignment.  The Non-Settling Insurers shall retain any and all coverage defenses, except any defense regarding or arising from the Insurance Assignment, but confirmation or effectuation of this Plan shall not trigger any coverage defense, or give rise to any additional coverage defense, that did not exist prior to the Debtor's filing for bankruptcy or Plan Confirmation, and no coverage defenses are created by the Debtor's bankruptcy or the negotiation, solicitation, or confirmation of this Plan, or the terms thereof, including any treatment of, or protections afforded to, any Covered Party or Settling Insurer under this Plan.

7.8.1.3.     The Insurance Assignment does not affect any Covered Party's or any Non-Settling Insurer's right to contest any Covered Party's liability or the amount of damages in respect of any Abuse Claims.

7.8.2.     **Determination of Validity of Insurance Assignment.**

7.8.2.1.     The Bankruptcy Court shall determine at the Confirmation Hearing (a) whether the Insurance Assignment is valid and (b) whether Insurance Assignment or the discharge and injunctions set forth in this Plan, void, defeat, or impair the insurance coverage under the Non-Settling Insurer Policies.  If any Person fails to timely file an objection to the proposed Insurance Assignment or other Plan terms related to the Non-Settling Insurer Policies, that Person shall be deemed to have irrevocably consented to the Insurance Assignment and such Plan terms and will be forever barred from asserting that the Insurance Assignment or other Plan terms affect the ability of the Trust or Abuse Claimants to pursue the Non-Settling Insurers, or any of them, for Coverage Claims.

7.8.2.2.     If the Bankruptcy Court enters a Final Order determining that the Insurance Assignment is valid, following the Effective Date, the Trust shall assume responsibility for, and be bound by, only such obligations of the Covered Parties under the Non-Settling Insurer Policies as are necessary to enforce the Transferred Insurance Interests.

7.8.2.3.     If the Bankruptcy Court does not enter a Final Order approving the Insurance Assignment, then the Insurance Assignment shall not occur and, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Trust Administrator shall be appointed as the representative of the Estate for the purpose of retaining and enforcing all of the Debtor's and the Estate's Interests and Claims against the Non-Settling Insurers with respect to Abuse Claims. Any recoveries on such Interests and Claims by the Trust Administrator will be paid to the Trust. The determination of whether the appointment of the Trust Administrator as the Debtor's and the

28

Estate's representative provided for in this Section is valid shall be made by the Bankruptcy Court at the Confirmation Hearing. If any Person fails to timely file an objection to the proposed appointment, that Person shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Trust Administrator to pursue any Non-Settling Insurers for insurance coverage. If the Bankruptcy Court determines that the appointment is valid, then, following the Effective Date, the Trust Administrator shall assume responsibility for, and be bound by, only such obligations of the Covered Parties under the Non-Settling Insurer Policies as are necessary to act as the representative of the Debtor and the Estate for the purpose of retaining and enforcing their Interests and Claims, if any, against the Non-Settling Insurers; *provided, however*, the Trust Administrator's appointment shall not relieve the Covered Parties from any obligation that such entities may have under the Non-Settling Insurer Policies. Nothing contained in this Section shall affect the rights and remedies of a Person who is not a Covered Party but is an insured or additional insured with the Debtor or is asserting rights under a Non-Settling Insurer Policy.

        7.8.2.4.    If a Final Order is entered holding that (a) the Insurance Assignment or (b) the appointment of the Trust Administrator as the Debtor's and the Estate's representative are invalid then the assignment and/or appointment, as the case may be, will be deemed not to have been made, and each of the Covered Parties will retain their Interests under each Non-Settling Insurer Policy and:

(a)      at the request of the Trust, the Covered Parties will assert their Interests and Claims against a Non-Settling Insurer, including by filing an Action for recovery of policy proceeds;

(b)      the Covered Parties will select and retain counsel to pursue their Interests and Claims against Non-Settling Insurers, subject to the Trust Administrator's approval, which approval shall not be unreasonably withheld;

(c)      the Trust shall pay the reasonable attorneys' fees, costs and expenses that are incurred by the Covered Parties in pursuing their Interests and Claims against Non-Settling Insurers;

(d)      the Trust shall, in addition to reasonable attorneys' fees, costs and expenses provided for in this Section, reimburse Covered Parties for any reasonable out of pocket costs and expenses incurred as a direct consequence of pursuing their Interests and Claims against Non-Settling Insurers; *provided, however* no compensation shall be paid to any Covered Party for any time any of its employees expended; and

(e)      upon receipt by a Covered Party, all recoveries received from Non-Settling Insurers shall be remitted to the Trust as soon as practicable.

    7.9.    **Investment Powers; Permitted Cash Expenditures.**

        All funds held by the Trust shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust

29

Agreement.  The Trust Administrator may expend the Cash of the Trust.

7.10.   **Registry of Beneficial Interests.**

To evidence the beneficial interest in the Trust of each holder of such an interest, the Trust Administrator shall maintain a registry of beneficiaries as provided for in the Trust Agreement.

7.11.   **Non-Transferability of Interests.**

Any transfer of an interest in the Trust shall not be effective until and unless the Trust Administrator receives written notice of such transfer.

7.12.   **Tax Matters.**

The Trust shall not be deemed to be the same legal entity as the Diocese but only the assignee of certain assets of the Diocese and a representative of the Estate for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code.  The Trust Administrator shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Tax Code, the Treasury Regulations, and New Jersey law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any.

7.13.   **Termination.**

The Trust shall terminate after (i) its liquidation, administration, and distribution of the Trust Assets and (ii) its full performance of all other duties and functions set forth in this Plan, the Trust Agreement and the Trust Distribution Procedures.

7.14.   **Liability; Indemnification.**

7.14.1.   **No Liability for Reorganized Debtor or Trust Administrator**.

Neither (i) the Reorganized Debtor nor its Agents or (ii) the Trust Administrator nor its Agents, nor their respective employees, shall be liable for the acts or omissions of any other Agents of such Trust Administrator, except that the Trust Administrator shall be liable for its specific acts or omissions resulting from such Trust Administrator's gross negligence, fraud, or breach of the fiduciary duty of loyalty.  The Trust Administrator may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its Agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, the Trust Administrator shall not be under any obligation to consult with its Agents, and its determination not to do so shall not result in the imposition of liability on the Trust Administrator unless such determination is based on the Trust Administrator's recklessness, gross negligence, willful misconduct or fraud.

7.14.2.   **No Recourse Against Trust Administrator**.

No recourse shall ever be had, directly or indirectly, against the Trust Administrator personally, or against any Agent retained in accordance with the terms of the Trust Agreement or

4896-0343-6067, v. 1

this Plan by the Trust Administrator, by legal or equitable proceedings or by virtue of any statute or otherwise, or upon any promise, contract, instrument, undertaking, obligation, covenant or Trust Agreement whatsoever executed by the Trust Administrator in implementation of the Trust Agreement or this Plan, or by reason of the creation of any indebtedness by the Trust Administrator under this Plan for any purpose authorized by the Trust Agreement or this Plan, it being expressly understood and agreed that all such Claims shall be enforceable only against and be satisfied only out of the Trust Assets.  Notwithstanding the foregoing, the Trust Administrator may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Trust Administrator.  The Trust shall not be covered by a bond.

The Confirmation Order shall provide that, absent permission of the Bankruptcy Court, no Cause of Action may be commenced in any forum, other than the Bankruptcy Court, against the Trust Administrator in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trust Administrator.

### 7.14.3.    **Indemnification by Trust**.

The Trust shall defend, indemnify, and hold harmless the Trust Administrator and its Agents to the fullest extent permitted under the laws of New Jersey in the performance of their duties under this Plan and under the Trust Agreement.

If the Debtor or the Other Catholic Entities are named as a defendant in an Action by an Abuse Claimant which is enjoined by the terms of this Plan and channeled to the Trust by the Channeling Injunction, the Debtor or the Other Catholic Entities shall tender the defense of such Action to the Trust and the Trust shall be responsible for all actions required to defend the Debtor or the Other Catholic Entities in such Action.

The Trust will fund all reasonable and necessary out of pocket attorneys' fees, costs and other expenses of the Debtor and the Other Catholic Entities in connection with their participation in the Trust Distribution Procedures ("**Defense Costs**"); *provided, however,* that if a Non-Settling Insurer defends the Debtor or the Other Catholic Entities in connection with their participation in the Trust Distribution Procedures, the Trust shall be relieved of its obligation to pay any Defense Costs; *provided, further, however,* that if a Non-Settling Insurer has a duty to defend, or has a duty to reimburse the defense costs of, the Debtor or the Other Catholic Entities but fails to honor that obligation, the Trust will advance or reimburse the Debtor or the Other Catholic Entities for reasonable and necessary Defense Costs.  The Debtor and the Other Catholic Entities' selection of legal counsel shall be consistent with the Debtor and the Other Catholic Entities' historical retention and use of such counsel, who shall exercise his or her professional judgment in accordance with the Rules of Professional Conduct and any other relevant rules governing the duties and obligations of attorneys to their clients.  For the purposes of clarify and avoidance of doubt:  (i) the Debtor and the Other Catholic Entities shall be made whole from the Trust for any actually expended or incurred Defense Costs for their participation in the Trust Distribution Procedures and (ii) any Defense Costs previously paid by the Trust to the Debtor and the Other Catholic Entities shall be reimbursed to the Trust upon the Non-Settling Insurer's satisfaction of any such amounts.

### ARTICLE VIII.
### TRUST DISTRIBUTION PLAN AND RELATED PROVISIONS

### 8.1.    **Distributions and Payments from the Trust.**

The following distributions and payments will be made solely from the Trust.

(a)    **Distributions**.  Distributions on Class 5 and 6 Claims in accordance with this Plan, the Trust Agreement, and the Trust Distribution Plan.

(b)    **Abuse Claims Reviewer Fees**.  Fees payable to the Abuse Claims Reviewer for review of Class 5 and Class 6 Claims.

(c)    **Trust Administrative Fees**.  All fees, costs, and expenses of administering the Trust as provided in this Plan and the Trust Agreement, including:  (i) as reasonably necessary to meet current liabilities and to maintain the value of the respective Assets of the Trust; (ii) to pay reasonable administrative

32

expenses (including any taxes imposed on the Trust and any professional fees); and (iii) to satisfy other liabilities incurred by the Trust in accordance with this Plan or the Trust Agreement.

(d)    **Indemnity**.  The Trust's obligations, if any, to defend, indemnify, or hold harmless any Person expressly set out in this Plan.

8.2.    **Trust Distribution Procedures.**

Each Abuse Claim will be assessed by the Abuse Claims Reviewer in accordance with the Trust Distribution Plan.  For the avoidance of doubt, under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a determination regarding a Trust distribution thereon have any effect on the rights of a Non-Settling Insurer.

As more fully set forth in the Trust Distribution Procedures, the Covered Parties will have an obligation to respond to reasonable requests for factual information in their possession, custody or control, including, but not limited to, providing documents (subject to all applicable privileges) and reasonable access to witnesses within the Covered Parties' control in connection with any inquiries it may have in connection with the Trust Distribution Plan.

8.3.    **Expedited Distributions.**

An Abuse Claimant who meets the following criteria may elect to resolve his or her Abuse Claim for an expedited distribution of $2,500.00 (the "**Expedited Distribution**"):  (i) the Abuse Claimant properly and substantially completed and Filed a Proof of Claim; (ii) the Abuse Claimant has personally signed his or her Proof of Claim attesting to the truth of its contents under penalty of perjury, or supplements his or her Proof of Claim to so provide such verification and (iii) the Abuse Claimant elects to resolve his or her Abuse Claim for the Expedited Distribution in accordance with the Ballot (the "**Expedited Distribution Election**").  Abuse Claimants who make the Expedited Distribution Election will not be eligible to receive any further distribution on account of their Abuse Claim.

Abuse Claimants who are eligible for and select the Expedited Distribution Election will not have to comply with the Trust Distribution Procedures to receive payment of the Expedited Distribution from the Trust; *provided, however*, that Abuse Claimants who are eligible for and select the Expedited Distribution Election will be entitled to receive their Expedited Distribution only upon executing and delivering to the Trust Administrator the release in the form to be provided in a Plan Supplement.

An Abuse Claimant who does not make the Expedited Distribution Election in accordance with the deadlines and procedures established herein may not later elect to receive the Expedited Distribution.

Abuse Claimants that make the Expedited Distribution Election will not be eligible to receive any further distribution on account of their Abuse Claim pursuant to the Trust Distribution Procedures.

33

8.4.     **Distributions to Abuse Claimants Who Do Not Elect the Expedited Distribution.**

An Abuse Claimant whom the Abuse Claims Reviewer determines to be entitled to a distribution in accordance with the Trust Distribution Plan will receive a distribution from the Trust in the amount(s) and at the time(s) provided for in the Trust Distribution Plan; *provided, however,* that the Unknown Abuse Claims Reserve Fund established and maintained by the Trust shall be the sole source of payment to Class 6 Claimants on account of Class 6 Claims.

8.5.     **Dismissal of Pending Litigation.**

Within 21 days after the Effective Date, all Channeled Claims asserted by an Abuse Claimant in any lawsuit against any Covered Party currently pending in any state or federal or territorial court whether in the United States of America or in any other country or jurisdiction shall be dismissed without prejudice.  Such Abuse Claims shall be released and dismissed with prejudice in accordance with the terms of this Plan and the Trust Distribution Procedures.  Such dismissals are not, and shall not be construed as, a discharge and/or release of any Abuse Claims that are subject to coverage under Non-Settling Insurer Policies.

8.6.     **Objections and Litigation After the Effective Date.**

As of the Effective Date, the Trust Administrator, through the Abuse Claims Reviewer, shall have the exclusive right to object to Channeled Claims; *provided, however,* that the Diocese, the Reorganized Debtor, other Covered Parties and Non-Settling Insurers shall have the right to participate in such objections as provided in the Trust Distribution Procedures.

8.7.     **Legal Effect of Estimation of Claims and Distributions Under Trust Distribution Plan.**

The Abuse Claims Reviewer's determinations are for estimation purposes only and shall not be a finding or fixing of the fact or liability or the amount payable for any Abuse Claim with any binding legal effect, other than for distribution purposes by the Trust pursuant to the Trust Distribution Plan.  The determination of qualification, estimation of Claims, and payment of Trust distributions is not an admission of liability by any Covered Party or the Trust with respect to any Abuse Claims and has no *res judicata* or collateral estoppel effect on any Covered Party, the Trust, any Non-Settling Insurer or Settling Insurer.  Trust distributions do not release the Debtor nor are Trust Distributions an accord or novation of the Debtor's liability on account of the Abuse Claims.  The Trust's act of making a distribution is immaterial to, and shall not be construed as, a determination or admission of any Covered Party's liability for, or damages with respect to, any Abuse Claim.  The determination of qualification, estimation of Claims, and payment of distributions is not a settlement, release, accord, or novation of any Abuse Claims and cannot be used by any Joint Tortfeasor as a defense to any alleged joint liability.  The determination of qualification, estimation of claims, and payment of partial distributions does not impair an Abuse Claimant's rights to obtain a judgment, including a judgment based on joint and several liability, against a Covered Party or any Non-Settling Insurer, for purposes of establishing the Covered Party's liability on the Abuse Claim, but any such judgment awarded to an Abuse Claimant will be reduced by the amount of Trust distributions already paid by the Trust to such Abuse Claimant

34

on his or her Abuse Claim(s).

Abuse Claimants expressly reserve their rights against Non-Covered Parties, including, but not limited to, Joint Tortfeasors, co-defendants with the Diocese or an Other Catholic Entity in their state or federal court lawsuits, and Religious Institutes of Men or Woman, who will remain severally liable on any Claims for Abuse. Any Person alleged to be a Joint Tortfeasor shall not be liable for any Covered Party's share of causal liability or fault.

Distribution from the Trust does not preclude Claims or recoveries by Abuse Claimants against Persons who are not Covered Parties or Settling Insurers for the liability of such Persons not attributable to the causal fault or share of liability of Covered Parties, including, but not limited to, Non-Settling Insurers.

8.8.    **Release of Abuse Claim Required for a Distribution.**

No Abuse Claimant may receive a distribution under this Plan on its Allowed Claim until such Abuse Claimant has executed a release agreement in favor of the Diocese, the Reorganized Debtor, the other Covered Parties and any Settling Insurers in a form agreeable to the Plan Proponents, the other Covered Parties and any Settling Insurers; provided, that nothing herein requires any Class 5 and 6 Claimant to release any Claim(s) that is not a Channeled Claim but such release will expressly reserve an Abuse Claimant's rights against other Persons (other than a Covered Party), including Joint Tortfeasors, who will remain severally liable on any Claims for Abuse. Any Person (other than a Covered Party) that is, or was alleged to be a Joint Tortfeasor with any of the Covered Parties in connection with the Abuse that forms the basis of an Abuse Claim shall not be liable for any Covered Party's share of causal liability or fault.

Notwithstanding the forgoing or anything herein to the contrary, Abuse Claims will not be released or enjoined against the Covered Parties for any Abuse that may be covered under Non-Settling Insurer Policies until such claims are settled with the Covered Parties and their Non-Settling Insurers, or are fully adjudicated, resolved, and subject to Final Order.

35

8.9.    **Claim Withdrawal.**

An Abuse Claimant may withdraw his or her Abuse Claim at any time on written notice to the Trust Administrator.  If withdrawn, (a) the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and such Abuse Claimant shall still be subject to the Channeling Injunction and the Supplemental Settling Insurer Injunction, as provided by this Plan; and (b) any reserve maintained by the Trust on account of such Abuse Claim shall revert to the Trust as a Trust Asset for distribution in accordance with this Plan and Trust Distribution Plan.

8.10.    **Medicare Procedures.**

With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims and to perform the following duties:

8.10.1.    It is the position of the Debtor that none of the Diocese, the Other Catholic Entities, the Trust, or the Settling Insurers will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA.  Prior to making any payments to any claimants, the Trust shall seek a statement or ruling from the United States Department of Health and Human Services that none of the Trust, the Diocese, the Other Catholic Entities, or Settling Insurers has any reporting obligations under MMSEA with respect to payments to the Trust by the Diocese, the Other Catholic Entities, or Settling Insurers or payments by the Trust to Claimants.  Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a final non-appealable decision from the United States Court of Appeals for the Third Circuit or the United States Supreme Court), or written confirmation from the United States Department of Health and Human Services that none of the Diocese, the Other Catholic Entities, or the Settling Insurers has any reporting obligations under MMSEA with respect to any settlements, payments, or other awards made by the Trust or with respect to the contributions the Diocese, the Other Catholic Entities, and the Settling Insurers have made or will make to the Trust, the Trust shall, at its sole expense, in connection with the implementation of this Plan, act as a reporting agent for the Diocese, the Other Catholic Entities, and Settling Insurers, and shall timely submit all reports that would be required to be made by the Diocese or the Other Catholic Entities or Settling Insurer under MMSEA on account of any Claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust, including reports that would be required if the payments to the Trust by the Diocese or the Other Catholic Entities or Settling Insurer were determined to be made pursuant to "applicable plans" for purposes of MMSEA, or by the Diocese or the Other Catholic Entities or Settling Insurer were otherwise found to have MMSEA reporting requirements.  The Trust, in its role as reporting agent for the Diocese, the Other Catholic Entities, and Settling Insurers, shall follow all applicable guidance published by CMS to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

8.10.2.    If the Trust is required to act as a reporting agent for the Diocese or the Other Catholic Entities or Settling Insurer, the Trust shall provide a written certification to the Diocese and the Other Catholic Entities and Settling Insurers within twenty-one (21) days following the end of each calendar quarter, confirming that all reports to CMS have been submitted in a timely fashion, and identifying (a) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance; and (b) any

36

payments to Medicare Beneficiaries that the Trust did not report to CMS.

8.10.3.    With respect to any reports rejected or otherwise identified as noncompliant by CMS, the Trust shall, upon request by the Diocese or any of the Other Catholic Entities or Settling Insurers, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports; *provided, however*, that the Trust may redact from such copies any information deemed confidential by the Trust Administrator.  With respect to any such reports, the Trust shall reasonably undertake to remedy any issues of noncompliance identified by CMS, resubmit such reports to CMS, and, upon request by the Diocese or the Other Catholic Entities or Settling Insurers, provide each of the Diocese or the Other Catholic Entities and Settling Insurers copies of such resubmissions; *provided, however*, that the Trust may redact any information deemed confidential by the Trust Administrator.  If the Trust is unable to remedy its noncompliance, the provisions of Section 8.10.7 shall apply.

8.10.4.    If the Trust is required to act as a reporting agent for the Diocese or the Other Catholic Entities or Settling Insurers pursuant to the provisions of Section 8.10.1, with respect to each Channeled Claim of a Medicare Beneficiary paid by the Trust and not disclosed to CMS, the Trust shall, upon request by the Diocese or the Other Catholic Entities or Settling Insurer, promptly provide the last four digits of the claimant's Social Security number, the year of the claimant's birth and any other information in the possession or control of the Trust that may be necessary in the reasonable judgment of the Diocese or the Other Catholic Entities or Settling Insurer to satisfy their obligations, if any, under MMSEA, as well as the basis for the Trust's failure to report the payment.  In the event the Diocese or the Other Catholic Entities or Settling Insurer informs the Trust that it disagrees with the Trust's decision not to report a Claim paid by the Trust, the Trust shall promptly report the payment to CMS.  All documentation relied upon by the Trust in making a determination that a payment did not have to be reported to CMS shall be maintained for a minimum of six (6) years following such determination.

8.10.5.    If the Trust is required to act as a reporting agent for the Diocese or any Other Catholic Entity or any Settling Insurer pursuant to the provisions of Section 8.10.1 hereof, the Trust shall make the reports and provide the certifications required by Section 8.10 until such time as such of the Diocese or the Other Catholic Entities or Settling Insurer determines, in its reasonable judgment, that it has no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Trust or contributions to the Trust.  Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced due to the satisfaction of one or more of the conditions set forth in Section 8.10.1, and if the Diocese or the Other Catholic Entities or Settling Insurer reasonably determines, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Trust shall promptly perform its obligations under Section 8.10.

8.10.6.    Section 8.10 of this Plan is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission, that the Diocese, the Other Catholic Entities, and/or Settling Insurers have made payments pursuant to "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any acts undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

8.10.7.    If CMS concludes that reporting done by the Trust in accordance with Section 8.10 of this Plan is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Trust, the Diocese or the Other Catholic Entities or Settling Insurer a concern with respect to the sufficiency or timeliness of such reporting, or there appears to the Diocese or the Other Catholic Entities or Settling Insurer a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received pursuant to Section 8.10 of this Plan, or other credible information, then each of the Diocese or the Other Catholic Entities and Settling Insurer shall have the right to submit its own reports to CMS under MMSEA, and the Trust shall provide to any Entity that elects to file its own reports such information in its possession or control as the electing party may reasonably require in order to comply with MMSEA, including the full reports filed by the Trust pursuant to Section 8.10 of this Plan, without any redactions.  The Diocese, the Other Catholic Entities, and Settling Insurers shall keep any information they receive from the Trust pursuant to this Section 8.10 of this Plan confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

8.10.8.    Notwithstanding any other provisions hereof, the Trust shall not be required to report as required by this Section 8.10 until the Person on whose behalf the Trust is required to report shall have provided its Medicare Reporting Number, if one exists.  Moreover, the Trust shall have no indemnification obligation under this Section 8.10 to such Person for any penalty, interest, or sanction with respect to a Claim that may arise on account of such Person's failure timely to provide its Medicare Reporting Number, if one exists, to the Trust in response to a timely request by the Trust for such Medicare Reporting Number.  However, nothing relieves the Trust from its reporting obligations with respect to each Person who provides the Trust with its Medicare Reporting Number.  The Trust shall indemnify each of the Diocese or the Other Catholic Entities and Settling Insurer for any failure to report payments to Medicare eligible Abuse Claimants on behalf of Persons who have timely supplied Medicare Reporting Numbers, if any exists.

8.10.9.    Prior to remittance of funds to any Channeled Claimant or counsel therefor, the Trust Administrator shall obtain in respect of any Channeled Claim a certification from the Claimant that said Claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under MSP relating to such Channeled Claim.  If the Trust receives no such certification, the Trust may withhold payment from any Claimant the funds sufficient to assure that all obligations owing or potentially owing under MSP relating to such Abuse Claim are paid to CMS.  The Trust shall provide a quarterly certification of its compliance with this Section 8.10.9 to each of the Diocese or the Other Catholic Entities and Settling Insurer, and permit reasonable audits by such Persons, no more often than annually, to confirm the Trust's compliance with this Section 8.10.9.  For the avoidance of doubt, the Trust shall be obligated to comply with the requirements of this Section 8.10.9 regardless of whether the Diocese or the Other Catholic Entities or Settling Insurer elects to file its own reports under MMSEA pursuant to Section 8.10.7.

8.10.10.    Compliance with the provisions of this Section 8.10 of this Plan shall be a material obligation of the Trust under this Plan, in favor of the Diocese, the Other Catholic Entities, and Settling Insurers under this Plan.

4896-0343-6067, v. 1

8.10.11.    The Trust shall defend, indemnify, and hold harmless the Diocese, the Other Catholic Entities, and Settling Insurers from any Medicare Claims reporting and payment obligations relating to its payment of Channeled Claims, including any obligations owing or potentially owing under MMSEA or MSP, and any Claims related to the Trust's obligations under Section 8.4.

8.10.12.    The Social Security Administration may change (or may have already changed) its processes and/or procedures in a manner that is inconsistent with the foregoing.  The Trust Administrator shall make best efforts to comply meaningfully with the foregoing while adhering to the Social Security Administration's most recent processes, procedures, and requirements.

8.11.    **Medicare Claims Indemnity.**

The Trust shall defend, indemnify, and hold harmless the Covered Parties and the Settling Insurers from any Medicare Claims and any Claims related to the Trust's obligations under this Plan.

## ARTICLE IX.
## SETTLING INSURERS

9.1.    **Settling Insurers.**

If, prior to ~~the~~ Confirmation ~~Date~~, an Insurer enters into an Insurance Settlement Agreement with the Debtor, who shall be required to obtain the written consent of the Tort Committee before entering into and executing such agreement, under which the Insurer would become a Settling Insurer under this Plan upon entry of the Confirmation Order, the Plan Proponents shall file a Plan Supplement providing for any provisions required by the proposed Settling Insurer, and agreed to by the Plan Proponents, to be made a part of this Plan.  Any such provisions set forth in the Plan Supplement shall be included in this Section as part of the Plan attached to the Confirmation Order.

Any Insurer that becomes a Settling Insurer prior to the Effective Date shall receive the treatment as may be provided in any Insurer Settlement Agreement approved by a Final Order.

9.2.    **Contribution Claims.**

Each Settling Insurer agrees that it will not pursue any contribution claim that it might have against any other Insurer (a) whose Contribution Claim against Settling Insurers is satisfied and extinguished entirely; or (b) that does not make a Contribution Claim against the Settling Insurers, or any of them.  If, in the future, a Non-Settling Insurer releases its Contribution Claims, if any such exist, that it may have against the Settling Insurers, then such released Settling Insurer shall release its Contribution Claims against such releasing Insurer.

If any Insurer asserts a Claim directly against the Trust arising from or concerning the Settling Insurer Policies, any Contribution Claim of the Settling Insurers shall be transferred to the Trust, and the Trust shall be authorized to assert the Contribution Claims of such Settling Insurer against such other Insurer.

39

9.3.    **Judgment Reduction.**

In any Action, including the Insurance Coverage Adversary Proceeding, involving the Diocese, an Other Catholic Entity, the Reorganized Debtor, or the Trust (collectively, "**Alleged Insured**") or an Abuse Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert any Contribution Claim against a Settling Insurer, then any judgment or award obtained by such Alleged Insured or Abuse Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such settling entity is liable to pay such Non-Settling Insurer as a result of its Contribution Claim, so that the Contribution Claim is thereby satisfied and extinguished entirely ("**Reduction Amount**").  In any Action involving an Alleged Insured or Abuse Claimant against a Non-Settling Insurer, where such a Settling Insurer is not a party, such Alleged Insured or Abuse Claimant shall obtain a finding from that court or arbitrator(s), as applicable, of the Reduction Amount before entry of judgment against such Non-Settling Insurer.  In the event that such a reduction is not made as described above, then any Contribution Claim by any Non-Settling Insurer against any Settling Insurer Entity shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Contribution Claim is filed.  The Settling Insurers shall be required to cooperate in good faith with the Diocese and/or the Trust to take commercially reasonable steps to defend against any Contribution Claim.

If an Alleged Insured or Abuse Claimant and a Non-Settling Insurer enter into an agreement settling one or more Claims relating to Abuse, such agreement shall include a provision whereby such Non-Settling Insurer releases Contribution Claims against the Settling Insurers.

### ARTICLE X.
### NON-SETTLING INSURERS

10.1.    **Preservation of Rights and Obligations.**

10.1.1.    If an Abuse Claim is liquidated through the Initial Review Determination (as defined in the Trust Distribution Plan), the Verdict Value Assessment Determination (as defined in the Trust Distribution Plan) or in any state or federal court as may be permitted by this Plan or Trust Distribution Plan, then the Covered Parties, the Trust, and each Non-Settling Insurer shall retain any and all legal and factual defenses that may exist in respect to such Abuse Claim and, except as set forth in this Section, all coverage defenses.  The rights, duties, and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Abuse Claims are not affected in any way by:  (a) the discharge in bankruptcy of the Debtor; (b) any Trust distribution or (c) the Insurance Assignment.  Non-Settling Insurers retain any defenses that they would be able to raise if the Claim for coverage for an Abuse Claim were brought by any Covered Party, except any defense arising from the Insurance Assignment.

10.1.2.    The rights and obligations of the Covered Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Initial Review Determination and shall be treated as if the Initial Review Determination had never occurred.  Each Non-Settling Insurer shall be entitled to all rights as are provided under the terms of its Non-Settling Insurer Policies as if the Initial Review Determination had never occurred.

40

10.1.3.     Nothing in this Plan, Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim.  All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

10.2.    **Estimations/Assessments of Abuse Claims Are Not Binding.**

Estimations of Abuse Claims for purposes of determination, qualification, assignment of points, and payment of Trust distributions:

(a)     shall not (i) constitute an admission of liability by any Person with respect to such Abuse Claims; (ii) have any *res judicata* or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Abuse Claims; (iv) be used by any third-party as a defense to any alleged joint liability; or (v) otherwise prejudice any rights of the Trust, Covered Parties, Settling Insurers, Non-Settling Insurers, or Abuse Claimants in all other contexts or forums;

(b)     shall be without prejudice to any and all rights of the Trust, the Non-Settling Insurers, and Abuse Claimants in all other contexts and forums; and

(c)     shall not be deemed to be a determination of liability of any Covered Party or a determination of whether, or the extent to which, such Abuse Claim is covered under any Non-Settling Insurer Policy.

The fact that a Claim has been estimated for distribution purposes has no *res judicata* or collateral estoppel effect and is not a binding determination on any issue.  Assessments by the Abuse Claims Reviewer under the Trust Distribution Plan shall have no effect upon any "no action" provisions contained in any Non-Settling Insurer Policy to the extent any such provision remains enforceable by a Non-Settling Insurer under applicable law.  The liability of the Covered Parties and the amount owed by the Covered Parties, and any Non-Settling Insurer on any Abuse Claim, shall be determined by: (y) the amount of any court judgment obtained by, or on behalf of, the Abuse Claimant; or (z) through either (1) a settlement agreement pursuant to which such Non-Settling Insurer has consented; or (2) if such Non-Settling Insurer has not consented, a settlement agreement which does not breach any duty of the Trust, Trust Administrator, or any Covered Party to the Non-Settling Insurer under the respective Non-Settling Insurer Policy or applicable law.

10.3.    **The Debtor's and Other Catholic Entities' Obligations Survive the Insurance Assignment.**

Notwithstanding the Insurance Assignment, the Debtor, the Reorganized Debtor and the Other Catholic Entities shall not be relieved of their duties or obligations under any Non-Settling Insurer Policies (except as to the contrary in any subsequent Insurance Settlement Agreement) and shall continue to perform such duties as required by such Non-Settling Insurer Policies and applicable law.  If the Trust asserts any Claim that the Debtor, the Reorganized Debtor or the Other Catholic Entities has breached such duties or obligations under the Non-Settling Insurer Policies

41

resulting in a loss of coverage, it shall give such party notice and an opportunity to cure any alleged breach, and in any event, the Debtor, the Reorganized Debtor or the Other Catholic Entities shall not be liable for any alleged breach resulting in a loss of coverage except to the extent that (a) the breach relates to post-Effective Date conduct of the Debtor, the Reorganized Debtor or the Other Catholic Entities and (b) the Debtor, the Reorganized Debtor or the Other Catholic Entities willfully or intentionally fails to comply with its continuing obligations under the Non-Settling Insurer Policies.  In addition, any such Claim will not be automatically allowed; the Debtor, the Reorganized Debtor or the Other Catholic Entities will have the right to defend against such claim.

10.4.    **Trust Powers With Respect to Abuse Claims and Non-Settling Insurers.**

10.4.1.    Solely as set forth in the Trust Distribution Procedures in the Trust Distribution Plan, any Abuse Claimant or the Trust, as applicable, may enter into a settlement of an Abuse Claim allowed by applicable non-bankruptcy law, and may enter into an arrangement with the Abuse Claimant's counsel providing such counsel will receive reasonable compensation from any recovery from a Non-Settling Insurer.

10.4.2.    The Trust Administrator may use the Trust assets to prosecute litigation against the Non-Settling Insurers.

10.4.3.    If the Trust successfully resolves a Coverage Claim or otherwise receives a recovery of insurance proceeds relating to any Abuse Claim from a Non-Settling Insurer, such proceeds shall become Trust Assets available to pay, and shall increase the amount available to pay, Abuse Claims, pursuant to the Trust Distribution Plan.

10.4.4.    Upon the due execution and delivery of an Insurance Settlement Agreement, entry of the Insurance Settlement Agreement Approval Order and the payment to the Trust of the settlement amount due thereunder, a Non-Settling Insurer shall become a Settling Insurer protected by the Channeling Injunction and Supplemental Settling Insurer Injunction and become entitled to benefit from all releases executed by Claimants and the other rights and protections of a Settling Insurer under this Plan, the Trust Documents, and the Insurance Settlement Approval Orders.

10.4.5.    With respect to any Stipulation of Judgment entered pursuant to the Trust Distribution Plan, the Trust will pursue the full amount of any such Stipulation of Judgment against the relevant Non-Settling Insurer on behalf of the Abuse Claimant and the Abuse Claimant shall be deemed to have assigned the full amount of such Stipulation of Judgment to the Trust.

10.5.    **Insurance Coverage Adversary Proceeding.**

As of the Effective Date, the Trust shall be substituted as the named plaintiff in the Insurance Coverage Adversary Proceeding and have all rights of the Diocese and the Other Catholic Entities to pursue recoveries against any Non-Settling Insurers.

4896-0343-6067, v. 1

## ARTICLE XI.
## EFFECT OF PLAN ON CLAIMS

11.1.  **General Injunction.**

**EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, THE CONFIRMATION ORDER WILL PROVIDE THAT ALL PERSONS AND ENTITIES WHO HELD, HOLD, OR MAY HOLD CLAIMS AGAINST THE DEBTOR ARE PERMANENTLY ENJOINED, ON AND AFTER ~~THE~~ CONFIRMATION ~~DATE~~, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE TRUST DISTRIBUTION PROCEDURES DISCUSSED IN THIS PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM.**

11.2.  **Channeling Injunction.**

(a)  **IN CONSIDERATION OF THE UNDERTAKINGS UNDER THIS PLAN BY THE COVERED PARTIES AND SETTLING INSURERS (IF ANY), THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS AMONG THE COVERED PARTIES AND THE SETTLING INSURERS AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:**

i.  **ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, RESOLVED AND PAID IN THE AMOUNTS AS PROVIDED BY THE TRUST DISTRIBUTION PLAN AND PROCEDURES ESTABLISHED UNDER THIS PLAN AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS; AND**

ii.  **ALL PERSONS WHO HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT**

43

4896-0343-6067, v. 1

**ANY CHANNELED CLAIMS ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIM AGAINST THE COVERED PARTIES AND THE SETTLING INSURERS, INCLUDING:**

1. **COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS OR AGAINST THE PROPERTY OF ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS;**

2. **ENFORCING, ATTACHING, COLLECTING OR RECOVERING, BY ANY MANNER OR MEANS, FROM ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS OR THE PROPERTY OF ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS;**

3. **CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS OR THE PROPERTY OF THE COVERED PARTIES OR THE SETTLING INSURERS;**

4. **ASSERTING, IMPLEMENTING OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

   a. **ANY OBLIGATION DUE ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS;**

   b. **ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS; OR**

   c. **THE PROPERTY OF ANY OF THE COVERED**

44

**PARTIES OR THE SETTLING INSURERS.**

5.   **TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN OR THE TRUST DISTRIBUTION PLAN; AND**

6.   **ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE TO ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS.**

(b)   **THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THIS PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION SHALL INURE TO THE BENEFIT OF THE COVERED PARTIES AND THE SETTLING INSURERS. IN ANY ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION AGAINST A CLAIMANT WHEREBY IT IS HELD BY A FINAL ORDER THAT THAT THE CLAIMANT WILLFULLY VIOLATED THE TERMS HEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE CLAIMANT, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

(c)   **FOR THE AVOIDANCE OF DOUBT, THE CHANNELING INJUNCTION WILL NOT BE FOR THE BENEFIT OF ANY NON-SETTLING INSURER, EXCEPT TO THE EXTENT NON-SETTLING INSURER BECOME A SETTLING INSURER.**

11.3.   **Supplemental Settling Insurer Injunction.**

PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE, AND IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING INSURERS PURSUANT TO THE INSURANCE SETTLEMENT AGREEMENTS, INCLUDING ANY SETTLING INSURERS' PURCHASE OF THE APPLICABLE SETTLING INSURER POLICIES FREE AND CLEAR OF ALL CLAIMS AND INTERESTS PURSUANT TO SECTION 363(F) OF THE BANKRUPTCY CODE, ANY AND ALL PERSONS WHO HAVE HELD, NOW HOLD, OR WHO MAY IN THE FUTURE HOLD ANY CLAIMS OR INTERESTS (INCLUDING ALL DEBT HOLDERS, ALL PERSONS HOLDING A CLAIM, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, NON-SETTLING

45

4896-0343-6067, v. 1

INSURERS, PERPETRATORS AND ALL OTHERS HOLDING INTERESTS OF ANY KIND OR NATURE WHATSOEVER, INCLUDING THOSE CLAIMS RELEASED OR TO BE RELEASED PURSUANT TO AN INSURANCE SETTLEMENT AGREEMENT) AGAINST ANY OF THE COVERED PARTIES OR THE SETTLING INSURERS, WHICH, DIRECTLY OR INDIRECTLY, ARISE FROM, RELATE TO, OR ARE IN CONNECTION WITH ANY ABUSE CLAIMS THAT ARE COVERED OR ALLEGED TO BE COVERED UNDER THE SETTLING INSURER POLICIES, OR ANY CONTRIBUTION CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, TO ASSERT, ENFORCE OR ATTEMPT TO ASSERT OR ENFORCE ANY SUCH CLAIM OR INTEREST AGAINST THE SETTLING INSURERS OR THE SETTLING INSURER POLICIES INCLUDING:

(a) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING, WHETHER LEGAL, EQUITABLE OR OTHERWISE, AGAINST THE SETTLING INSURERS OR THE PROPERTY OF THE SETTLING INSURERS;

(b) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO DO ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE SETTLING INSURERS OR THE PROPERTY OF THE SETTLING INSURERS;

(c) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO DO ANY OF THE PRECEDING, ANY LIEN OF ANY KIND AGAINST THE SETTLING INSURERS OR THE PROPERTY OF THE SETTLING INSURERS;

(d) ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE TO THE SETTLING INSURERS OR THE PROPERTY OF THE SETTLING INSURERS; AND

(e) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN.

THIS SUPPLEMENTAL SETTLING INSURER INJUNCTION WILL BE EFFECTIVE WITH RESPECT TO A SETTLING INSURER ONLY AS OF THE DATE THAT THE TRUST RECEIVES THE SETTLEMENT AMOUNT AS DEFINED IN THE INSURANCE SETTLEMENT AGREEMENT FOR SUCH SETTLING INSURER. THE FOREGOING INJUNCTIVE PROVISIONS ARE AN INTEGRAL PART OF THIS PLAN AND ARE ESSENTIAL TO ITS IMPLEMENTATION.

FOR THE AVOIDANCE OF DOUBT, THE SUPPLEMENTAL SETTLING

46

INSURER INJUNCTION WILL NOT BE FOR THE BENEFIT OF THE NON-SETTLING INSURERS, EXCEPT TO THE EXTENT A NON-SETTLING INSURER BECOMES A SETTLING INSURER.

11.4. **Release by Debtor.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASED PARTIES AND THE SETTLING INSURERS ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTOR, ITS ESTATE AND ANY PERSON SEEKING TO EXERCISE THE RIGHTS OF THE DEBTOR OR ITS ESTATE AND ITS PROPERTY (AND EACH SUCH RELEASED PARTY SHALL BE DEEMED RELEASED BY THE DEBTOR AND ITS ESTATE AND ITS RESPECTIVE PROPERTY) FROM ANY AND ALL CLAIMS RELATING TO THE DEBTOR, ITS ESTATE OR ITS AFFILIATES, THE CONDUCT OF THE DEBTOR'S BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR, ITS ESTATE OR ITS AFFILIATES, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; *PROVIDED* THAT, TO THE EXTENT THAT A CLAIM IS DETERMINED BY A FINAL ORDER TO HAVE RESULTED FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT OF A RELEASED PARTY, SUCH CLAIM SHALL NOT BE SO RELEASED AGAINST SUCH RELEASED PARTY; *PROVIDED FURTHER* THAT, THE FOREGOING "DEBTOR RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OF THE DEBTOR OR ITS CHAPTER 11 ESTATE AGAINST A RELEASED PARTY (OR OF A RELEASED PARTY AGAINST THE DEBTOR AND ITS CHAPTER 11 ESTATE) ARISING UNDER ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTOR THAT IS ENTERED INTO OR ASSUMED PURSUANT TO THIS PLAN.

THE DEBTOR SHALL RELEASE ALL OF SETTLING INSURERS RESPECTIVE CURRENT AND FORMER OFFICERS, DIRECTORS, PRINCIPALS, STOCKHOLDERS (AND ANY FUND MANAGERS, FIDUCIARIES OR OTHER AGENTS OF STOCKHOLDERS WITH ANY INVOLVEMENT WITH THE DEBTOR), MEMBERS, PARTNERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND

47

ADVISORS AND OTHER PROFESSIONALS, SOLELY TO THE EXTENT SUCH PERSONS AND ENTITIES ACTED ON THE BEHALF OF THE RELEASED PARTIES IN CONNECTION WITH THE MATTERS AS TO WHICH EXCULPATION OR RELEASES ARE PROVIDED IN THIS PLAN.

11.5. **Release by Holders of Claims.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASING PARTIES SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THE SETTLING INSURERS AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DEBTOR, ITS ESTATE OR ITS AFFILIATES, THE CONDUCT OF THE DEBTOR'S BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; *PROVIDED* THAT, TO THE EXTENT THAT A CLAIM IS DETERMINED BY A FINAL ORDER TO HAVE RESULTED FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT OF A RELEASED PARTY, SUCH CLAIM SHALL NOT BE SO RELEASED AGAINST SUCH RELEASED PARTY.

HOLDERS OF CLAIMS SHALL RELEASE ALL OF SETTLING INSURERS RESPECTIVE CURRENT AND FORMER OFFICERS, DIRECTORS, PRINCIPALS, STOCKHOLDERS (AND ANY FUND MANAGERS, FIDUCIARIES OR OTHER AGENTS OF STOCKHOLDERS WITH ANY INVOLVEMENT WITH THE DEBTOR), MEMBERS, PARTNERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS AND OTHER PROFESSIONALS, SOLELY TO THE EXTENT SUCH PERSONS AND ENTITIES ACTED ON THE BEHALF OF THE RELEASED PARTIES IN CONNECTION WITH THE MATTERS AS TO WHICH EXCULPATION OR RELEASES ARE PROVIDED IN THIS PLAN.

11.6. **Exculpation; Limitation of Liability.**

FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR, AND EACH EXCULPATED PARTY SHALL BE RELEASED FROM, ANY CLAIM TO ANY OTHER

48

4896-0343-6067, v. 1

**EXCULPATED PARTY, TO ANY HOLDER OF A CLAIM, OR TO ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION THAT OCCURRED DURING AND IN CONNECTION WITH THIS CHAPTER 11 CASE OR IN CONNECTION WITH THE PREPARATION AND FILING OF THIS CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, THE CONSUMMATION OF THIS PLAN, AND THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A BANKRUPTCY COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE TORT COMMITTEE AND THE TRADE COMMITTEE AND THE DIOCESE AND THEIR RESPECTIVE OFFICERS, BOARD AND RESPECTIVE COMMITTEE MEMBERS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(E) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.**

4896-0343-6067, v. 1

11.7.    **Vesting of Assets in Reorganized Debtor**.  Except as otherwise provided in the Plan Documents or the Trust Documents Plan, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to this Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens expressly preserved and continued under this Plan).  On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its businesses and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Without limiting any of the foregoing, the Reorganized Debtor may pay the charges incurred on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

11.8.    **Causes of Action**.  Except as set forth otherwise herein, the Reorganized Debtor, on behalf of and for the benefit of the Debtor's estate, shall be vested with and shall retain and may enforce any and all Claims of any kind or nature whatsoever held by, through or on behalf of the Debtor and/or its Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date whether or not such Claims and Interests are specifically identified in the Disclosure Statement accompanying this Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

11.9.    **Dismissal of Adversary Proceedings and Appeal**.  On the Effective Date, the Tort Committee shall dismiss with prejudice all adversary proceedings filed by the Tort Committee in the Debtor's Chapter 11 Case, including, but not limited to, Adv. Pro Nos. 21-01393 (JNP), 21-01394 (JNP), and 21-01493 (JNP).  In addition, on the Effective Date, the Tort Committee shall dismiss the appeal of the *Order Denying Motion for Derivative Standing*, pending at Civil Action No. 22-cv-02047-NLH, with prejudice.  For the avoidance of doubt, this Section 11.9 does not pertain to the Insurance Coverage Adversary Proceeding.

## ARTICLE XII.
## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

The following provisions of this Plan shall not apply to the distributions to be made to Class 5 and Class 6 Claims under the Trust.

12.1.    **Disbursing Agent**.  The Reorganized Debtor shall be the "**Disbursing Agent**" for all payments to be made under this Plan except for payments made to Class 5 and Class 6 Claims under the Trust.  With respect to the Trust, the Trust Administrator shall be responsible for all distributions made under the Trust.

12.2.    **Manner of Payment**.  Any payment of Cash under this Plan may be made either by check drawn or by wire transfer from a domestic bank, at the option of the Disbursing Agent.

12.3.    **Payments and Distributions on Disputed Claims**.  As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Disputed Claim Reserve established under Section 12.4 of this Plan.  No distribution shall be made on a Claim where only a portion of such Claim is disputed until such dispute is resolved by settlement or Final Order.

50

12.4.  **Disputed Claim Reserve**.  To the extent that the Disbursing Agent makes a distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the Disbursing Agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such Holders of Disputed Claims in such Class would be entitled to receive under this Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

12.5.  **Transmittal of Distributions to Parties Entitled Thereto**.  All distributions by check shall be deemed made at the time such check is deposited in the United States mail, postage prepaid.  Any distributions by wire transfer shall be deemed made as of the date of the wire transfer is made.  Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or provided in this Plan, any distribution required under this Plan on account of an Allowed Claim, shall be mailed to (i) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (ii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Claim to receive distributions, (iii) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.  The Holder of a Claim shall be required to promptly notify the Reorganized Debtor and the Bankruptcy Court of any change in its mailing address.

12.6.  **Distribution of Unclaimed Property**.  Except as otherwise provided in this Plan, any distribution under this Plan which is unclaimed after three (3) months following any Distribution Date shall be forfeited, and such distribution, together with any interest earned thereon, and shall return to and revest in the Reorganized Debtor.

12.7.  **Saturday, Sunday or Legal Holiday**.  If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day but shall be deemed to have been completed as of the required date.

12.8.  **Setoffs and Recoupment**.  Subject to the terms of this Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Debtor or Reorganized Debtor, as appropriate, may but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan, any Claims of any nature whatsoever the Debtor may have against the Holder of such Claim.

12.9.  **Fractional Cents and De Minimis Distributions**.  Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).  Any distribution of less than $25.00 will be considered *de minimis,* and Holders of Allowed Claims that are entitled to an interim or final distribution of less than $25.00 will not receive any distribution.  Such funds will remain with and revest in the Reorganized Debtor.

12.10.  **Prepayment**.  Except as otherwise provided herein or the Confirmation Order, the Disbursing Agent shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

51

12.11. **Allowance and Disallowance of Claims.**

    (a)    **Allowance of Claims**.  Except as expressly provided in this Plan, no Claims shall be deemed Allowed by virtue of this Plan or the Confirmation Order unless and until such Claim is deemed Allowed under the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim.  Notwithstanding the foregoing, any Claim included in the Debtor's Schedules that is not listed as contingent, unliquidated, and/or disputed shall be an Allowed Claim.  Any Proof of Claim Filed in an unliquidated amount shall be deemed Allowed in the amount listed in the Debtor's Schedules as liquidated, not contingent and not disputed.  The Allowance and disallowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code.

    (b)    **Disallowance of Claims**.  Except as expressly provided in this Plan, all Claims held by Persons against whom the Debtor or Reorganized Debtor, as appropriate, have filed or commenced or may in the future file or commence a Claim under sections 542, 543, 544, 547, 548, 549, 550, 551, 553 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code.  The Holders of any and all Claims filed with the Bankruptcy Court after the Bar Date shall be deemed disallowed without further action by the Debtor or Reorganized Debtor and without any further notice to or action, order, or approval of the Bankruptcy Court.  The Holders of any and all Claims Filed with the Bankruptcy Court after the relevant Bar Date shall not be entitled to a distribution, unless otherwise allowed by Final Order of the Bankruptcy Court.

12.12. **Resolution of Disputed Administrative Expense Claims and Disputed Claims.**

    (a)    **Prosecution of Objections to Claims**.  Except as otherwise set forth herein, prior to the Effective Date, the Debtor shall have standing and the right to commence and pursue objections to Claims, and the Reorganized Debtor shall have such standing after the Effective Date.  All objections to Claims shall be Filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.  Any objection to a Class 3 Claim must be made pursuant to D.N.J. LBR 3007-1(b), such that it must be filed by the later of: (1) 60 days after the entry of the order confirming this Plan; or (2) 60 days after the claim is filed or amended. If no objection is filed pursuant to D.N.J. LBR 3007-1, a Class 3 Claim shall be deemed an Allowed Claim.  The Diocese reserves the right to seek an extension of such date in accordance with D.N.J. LBR 3007-1(c), *provided, however*, that such right shall be limited to two (2) extensions of ninety (90) days from the date provided for in D.N.J. LBR 3007-1(b).

    (b)    **Objections to Claims**.  An objection to the allowance of a Claim shall be in writing and shall be Filed with the Bankruptcy Court by the Debtor or Reorganized Debtor, as applicable.  Except as expressly set forth herein,

52

nothing herein, in the Confirmation Order or in any Order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, including any Avoidance Action, right of setoff or recoupment or other legal or equitable defense which the Debtor had immediately prior to the commencement of the Chapter 11 Case against or with respect to any Claim.  Except as set forth herein, upon Confirmation, the Debtor or Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, rights of setoff and recoupment and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Chapter 11 Case against or with respect to any Claim.

## ARTICLE XIII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

13.1.  **Executory Contracts and Unexpired Leases**.  On the Effective Date, all Executory Contracts and unexpired leases not rejected on or before the Confirmation Date will be deemed assumed.  The Confirmation Order shall constitute an order approving such assumption as of the Effective Date.  No cure payments or adequate assurance of future performance shall be due.

13.2.  **Bar to Rejection Damages**.  All Proofs of Claim for Claims arising from a rejection of a Executory Contract or unexpired leases must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection; (ii) the date set forth in D.N.J. LBR 3003-1(b) or (ii) thirty (30) days after the Confirmation Date.  Any Proofs of Claim that are not filed timely shall be barred forever from assertion.

## ARTICLE XIV.
## CONFIRMATION AND CONSUMMATION OF THIS PLAN

14.1.  **Conditions Precedent to Confirmation.**

Confirmation of this Plan shall not occur unless all of the following conditions precedent have been satisfied:

    (a)  the Plan Documents shall be in form and substance acceptable to the Debtor, the Other Catholic Entities, the Tort Committee and any Settling Insurers; and

    (b)  the Confirmation Order is in form and substance acceptable to the Debtor, the Other Catholic Entities, the Tort Committee and any Settling Insurers and in all events provides for the following:

        (i)  confirmation of this Plan;

        (ii)  specifically, and individually, ordering all Persons, as set forth in this Plan, to act or refrain from acting as specified in this Plan;

53

(iii)    incorporating the terms and provisions of an Insurance Settlement Approval Order (if any) as though fully set forth therein;

(iv)    ordering the Trust Administrator to perform the obligations, if any, imposed upon the Trust Administrator by this Plan;

(v)    approving and implementing the Channeling Injunction and Supplemental Settling Insurer Injunction;

(vi)    discharging the Other Catholic Entities from all Claims, except as otherwise provided for in this Plan;

(vii)    ordering all Channeled Claimants with pending state court Actions against any Covered Party to dismiss Channeled Claims and assert them against the Trust for resolution pursuant to the Trust Agreement; and,

(viii)    incorporating the following factual findings and legal conclusions:

1.    The release granted to the Other Catholic Entities is fair and necessary to the Debtor's reorganization.

2.    There is a sufficient identity of interest between the Debtor and the Other Catholic Entities such that a suit against the Other Catholic Entities is, in essence, a suit against the Debtor or will deplete assets of the Estate.

3.    The DOCT Loan, the cash contribution by the Other Catholic Entities, waiver of claims by the Other Catholic Entities and grant of the Lien on assets of the Parishes provides significant and critical funding for this Plan constituting a substantial contribution to the success of this Plan.

4.    The Other Catholic Entities would not make a substantial contribution unless they obtained the benefits of the Channeling Injunction.

5.    The release granted to the Other Catholic Entities is necessary to the Debtor's reorganization and without it there is little likelihood of reorganization.

14.2.   **Conditions Precedent to the Effective Date.**

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied:

(a)    the Bankruptcy Court shall have entered the Confirmation Order in form

54

and substance satisfactory to the Debtor, the Tort Committee and any
Settling Insurers;

(b)    the Confirmation Order shall be a Final Order and no stay of the
Confirmation Order shall then be in effect;

(c)    the Trust Administrator and the Debtor shall have executed the Trust
Agreement and the Debtor shall have delivered to the Trust Administrator
the Trust Agreement;

(d)    the Debtor shall have executed and delivered to the Trust Administrator the
Additional Debtor Contributions Security Agreement;

(e)    the Other Catholic Entities shall have executed and delivered to the Trust
Administrator the Other Catholic Entities Insurance Assignment
Agreement;

(f)    the payments required to be made by or on the Effective Date under this
Plan shall have been received in good funds by the Trust, including, but not
limited to, the Initial Debtor Contribution, the OCE Cash Contribution and
all proceeds held by the Debtor or the Reorganized Debtor on account of
Insurance Settlement Agreements; and

(g)    this Plan has not been materially amended, altered, or modified as
confirmed by the Confirmation Order, unless such material amendment,
alteration, or modification has been made with consent of the Plan
Proponents.

14.3.    **Notice of Effective Date.**

The Debtor shall file and serve on all Holders of Claims a Notice of Effective Date with
the Bankruptcy Court within three (3) days after the occurrence of the Effective Date.  Such notice
will include all relevant deadlines put into effect by the occurrence of the Effective Date.

4896-0343-6067, v. 1

14.4.    **Waiver of Conditions Precedent to the Effective Date.**

Each of the conditions precedent to the occurrence of the Effective Date set forth in Section 14 may only be waived in whole or in part by the Plan Proponents and any Settling Insurer without notice to or leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

14.5.    **Effect of Non-Occurrence of Conditions.**

If Substantial Consummation of this Plan does not occur, this Plan will be null and void in all respects and nothing contained in this Plan or the Disclosure Statement will: (a) constitute a waiver or release of any Claims by or against the Covered Parties or Settling Insurers; (b) prejudice in any manner the rights of the Covered Parties, the Trust, or Settling Insurers; (c) constitute an admission, acknowledgement, offer, or undertaking by the Covered Parties or Settling Insurers in any respect, including but not limited to, in any proceeding or case against the Debtor; or (d) be admissible in any action, proceeding, or case against the Covered Parties or Settling Insurers in any Bankruptcy Court or other forum.

## ARTICLE XV.
## EFFECTS OF CONFIRMATION

15.1.    **Authority to Effectuate Plan**.  Upon the Effective Date, all matters provided under this Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Plan Proponents.   The Plan Proponents shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action necessary to achieve consummation and carry out this Plan and to effectuate the transactions provided for thereunder.

15.2.    **Binding Effect**.  Except as otherwise expressly provided in this Plan, on and after the Effective Date, this Plan shall bind all Holders of Claims.  Subject to the terms of this Plan, upon the Effective Date, every Holder of a Claim shall be precluded and permanently enjoined from asserting against the Debtor and/or Reorganized Debtor any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date.

15.3.    **Discharge and Release.**

(a)    Except as provided in this Plan, the Trust Distribution Plan or the Confirmation Order, upon the Effective Date, the Debtor shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted this Plan.

56

(b)     Except as provided in this Plan, the Trust Distribution Plan or the Confirmation Order, upon the Effective Date, all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor and their respective members, shareholders, officers, directors, partners, attorneys or advisors, any other or further Claims relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in this Plan, the Trust Distribution Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all Claims against the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

(c)     Notwithstanding the foregoing and anything herein to the contrary, to preserve and maintain coverage under Non-Settling Insurer Policies:  (i) the Debtor will not be discharged from any Abuse Claim and (ii) an Abuse Claim will not be released or enjoined against the Diocese, the Reorganized Debtor, any relevant Covered Party and any relevant Non-Settling Insurer for any Abuse that may be covered under Non-Settling Insurer Policies, in both cases (i) and (ii) until an Abuse Claim is settled with the Diocese, the Reorganized Debtor, any relevant Covered Party and any relevant Non-Settling Insurer or is fully adjudicated, resolved and subject to Final Order, but recourse is limited as described below.  Under this Section, recourse to Abuse Claimants is limited to (i) the proceeds of Non-Settling Insurer Policies and (ii) all other amounts awardable against any Non-Settling Insurers, including, but not limited to, extra-contractual damages, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs, that may be recoverable because of a Non-Settling Insurer's conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim.  For the avoidance of doubt, nothing herein requires any Class 5 and 6 Claimant to release any Claim(s) that is not a Channeled Claim.

(d)     Under no circumstances will the reservation of an Abuse Claimant's rights against any Person impair the discharge, Channeling Injunction, or Supplemental Settling Insurer Injunction with respect to any Covered Party or Settling Insurer to the extent provided in this Plan.

15.4.    **Release and Discharge of the Trade Committee**.  Effective on the Effective Date, the Trade Committee shall be disbanded and it and its professionals released from their duties and obligations.

15.5.    **Release and Discharge of the Tort Committee**.  Effective on the Effective Date, the Tort Committee and its professionals shall be disbanded and it and its professionals released from their duties and obligations.

4896-0343-6067, v. 1

# ARTICLE XVI.
## RETENTION OF JURISDICTION

Until such time as a Final Decree is entered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case pursuant to the provisions of chapter 11 of the Bankruptcy Code to make such orders as are necessary or appropriate to carry out the provisions of this Plan, and with respect to the following matters:

(a) To enable the Plan Proponents to consummate this Plan and to resolve any disputes arising therefrom;

(b) To adjudicate all controversies concerning the classification, estimation or allowance of any Claim herein (other than Class 5 and Class 6 Claims);

(c) To determine the classification, estimation and priority of all claims against the Debtor and to re-examine any Claims (other than Class 5 and Class 6 Claims) which may have been allowed;

(d) To determine applications for the rejection or assumption of Executory Contracts or unexpired leases pursuant to the provisions of this Plan which are not determined prior to Confirmation and to determine allowance of Claims for damages with respect to rejection of any such Executory Contracts or unexpired leases within such time as the Bankruptcy Court may direct;

(e) To oversee and issue further appropriate orders respecting disbursement of amounts deposited as may be required by this Plan;

(f) To conduct hearings on valuation, as necessary, and to determine whether any party in interest is entitled to recover against any Person any Claim, whether arising under section 506(c) of the Bankruptcy Code, or arising out of a voidable preference, a fraudulent transfer, or otherwise;

(g) To hear and determine all applications for compensation and other Administrative Expense Claims;

(h) To hear and determine any and all pending adversary proceedings or contested matters, including but not limited to, the Insurance Coverage Adversary Proceeding and all claims or causes of action related thereto or arising therefrom, whether or not presently asserted in the operative complaint therein;

(i) To hear and determine any and all Claims and causes of action that belong to the Debtor or its Estate on or prior to the Effective Date, including but not limited to, such Claims and causes of action that vest in the Trust on the Effective Date pursuant to this Plan, whether or not asserted prior to the occurrence of the Effective Date, including but not limited to, all Claims and causes of action presently asserted in, or that could be asserted in, the Insurance Coverage Adversary Proceeding;

(j) To determine all causes of action which may exist in favor of the Debtor or the

58

Trust;

(k)    To determine any modification of this Plan after confirmation pursuant to section 1127 of the Bankruptcy Code;

(l)    To enter any order, including injunctions, necessary to establish and enforce the rights and powers of the Debtor, or the Trust, under this Plan;

(m)    To enter the Final Decree pursuant to Rule 3022 of the Bankruptcy Rules;

(n)    To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan;

(o)    To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of the Bankruptcy Court in the Chapter 11 Case entered on or before Confirmation;

(p)    To hear and determine any and all objections to payments to be made under this Plan;

(q)    To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(r)    To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(s)    To adjudicate all causes of action to recover all assets and properties of the Debtor or the Trust wherever located;

(t)    To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and the Trust, and to impose such limitations, restrictions, terms and conditions on such title rights and powers as the Bankruptcy Court may deem necessary or appropriate;

(u)    Over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets;

(v)    Over conflicts and disputes among the Trust, the Reorganized Debtor and holders of Claims; and

(w)    To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, or enforcing the provisions thereof.

In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of this Plan in the manner as provided under section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code.  If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the

Plan Proponents, or their successors, elects to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

## ARTICLE XVII.
## BANKRUPTCY RULE 9019 REQUEST

Pursuant to Bankruptcy Rule 9019 and through this Plan, the Plan Proponents request approval of all compromises and settlements included in this Plan.

## ARTICLE XVIII.
## INCORPORATION OF CHILD PROTECTION PROTOCOLS

The Child Protection Protocols are incorporated into and made a part of this Plan as if fully set forth herein.

## ARTICLE XIX.
## MISCELLANEOUS PROVISIONS

19.1.    **Amendment or Modification of this Plan**.  On or before the Effective Date, this Plan or any exhibits hereto may be amended, modified, or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after ~~the~~ Confirmation ~~Date~~, the Reorganized Debtor or Trust Administrator, as applicable, may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.  The Plan Proponents may make appropriate technical adjustments and modifications to this Plan prior to the Effective Date without further order or approval of the Bankruptcy Court.

19.2.    **Revocation or Withdrawal of this Plan**.  The Plan Proponents reserve the right to revoke or withdraw this Plan before ~~the~~ Confirmation ~~Date~~.  If the Plan Proponents revoke or withdraw this Plan before ~~the~~ Confirmation ~~Date~~, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or the Trust Administrator or to prejudice in any manner the rights of the Plan Proponents or the Trust Administrator in any further proceedings.

19.3.    ~~**Reports**.  Until a Final Decree is entered, the Debtor or the Reorganized Debtor, as the case may be, shall submit all post-Confirmation quarterly reports to the U.S. Trustee as required by the U.S. Trustee guidelines (with a copy served on the Office of the U.S. Trustee) setting forth all receipts and disbursements of the Debtor.  The first report shall be filed within thirty (30) days after the end of the quarter in which the Effective Date occurs.~~**Final Decree**.  The Reorganized Debtor shall be responsible to request that a Final Decree be entered in this Chapter 11 Case.  ~~The Reorganized Debtor shall also be responsible for any quarterly fees due to the U.S. Trustee from and after the Effective Date until the Chapter 11 Case is closed.~~

19.4.    **Severability of Plan Provisions**.  If, prior to Confirmation, any term or provision

4896-0343-6067, v. 1

of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

19.5.  **No Interest**.  Except as expressly stated in this Plan, no interest, penalty or late charge is allowed or shall be paid on any Claim.

19.6.  **Allocation of Distributions Between Principal and Interest**.  To the extent that any Allowed Claim entitled to a Distribution under this Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

19.7.  **Notices**.  Any notices or requests by parties in interest under or in connection with this Plan shall be in writing and served either by:  (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

| **IF TO THE DEBTOR:** | **IF TO THE TORT COMMITTEE:** |
|---|---|
| TRENK ISABEL SIDDIQI & SHAHDANIAN P.C. | LOWENSTEIN SANDLER LLP |
| Richard D. Trenk, Esq. | Jeffrey D. Prol, Esq. |
| Robert S. Roglieri, Esq. | Michael A. Kaplan, Esq. |
| 290 Mt. Pleasant Avenue, Suite 2350, | Brent Weisenberg, Esq. |
| Livingston, New Jersey 07037 | One Lowenstein Drive |
| Email:  rtrenk@trenkisabel.law | Roseland, NJ 07068 |
| Email:  rroglieri@trenkisabel.law | Email:  jprol@lowenstein.com |
|  | Email:  mkaplan@lowenstein.com |
|  | Email:  bweisenberg@lowenstein.com |

19.8.  **Controlling Documents**.  Notwithstanding anything to the contrary contained herein or in the Disclosure Statement, in the event and to the extent that any provision of this Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence.  In the event of any inconsistency between this Plan and the Confirmation Order, the Confirmation Order shall control.  In the event of any inconsistency among this Plan Documents, the Confirmation Order and any Insurance Settlement Agreement, the Insurance Settlement Agreement shall control.

61

19.9.    **Filing of Additional Documents**.  Prior to the Effective Date, the Plan Proponents may File with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan that are not inconsistent with the terms of this Plan.  On or after the Effective Date, the Reorganized Debtor or the Trust Administrator may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate the terms and conditions of this Plan.

19.10.    **Reservation of Rights**.  If this Plan is not confirmed by the Bankruptcy Court for any reason, the rights of the Debtor, the Tort Committee and all parties in interest in the Bankruptcy Case shall and will be reserved in full.  Statements and provisions made in this Plan or in the Disclosure Statement are made only for the purpose(s) of this Plan.  If this Plan is withdrawn, the Confirmation Order is not entered, or if the Effective Date does not occur, no Person shall be bound by or deemed prejudiced by any such statement or provision.

19.11.    **Computation of Time**.  In computing any period of time prescribed or allowed by this Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

19.12.    **Successors and Assigns**.  The rights, duties and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

19.13.    **Waiver of Subordination**.  Notwithstanding any provision of this Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights to which they may have with respect to the distributions made pursuant to this Plan and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving distributions under this Plan.

19.14.    **Post-Effective Date Professional Fees**.  The reasonable fees and actual and necessary expenses incurred after the Effective Date by professionals for the Reorganized Debtor shall be paid by the Reorganized Debtor upon the submission of an invoice to the Reorganized Debtor without the need for further notice to any Person or approval by the Bankruptcy Court.

19.15.    **Governing Law**.  Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan and (b) governance matters shall be governed by the laws of the State of New Jersey, without giving effect to the principles of conflict of law thereof.

19.16.    **Headings**.  Headings are used in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

19.17.    **No Admissions**.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by any entity with respect to any matter set forth herein.

4896-0343-6067, v. 1

Dated: ~~May 2~~June 1, 2022                    Dated: ~~May 2~~June 1, 2022

**THE DIOCESE OF CAMDEN, NEW**                  **THE OFFICIAL COMMITTEE OF**
**JERSEY**                                      **TORT CLAIMANT CREDITORS**

By:  _/s/ Rev. Robert E. Hughes_               By:  _/s/ John Collins_
Reverend Robert E. Hughes,                     John Collins
Vicar General/Vice President                   _Co-Chairperson_

Dated: ~~May 2~~June 1, 2022                    Dated: ~~May 2~~June 1, 2022

**TRENK ISABEL SIDDIQI &**                      **LOWENSTEIN SANDLER LLP**
**SHAHDANIAN P.C.**

By:  _/s/ Richard D. Trenk_                     By:  _/s/ Jeffrey Prol_
Richard D. Trenk, Esq.                          Jeffrey Prol, Esq.
Robert S. Roglieri, Esq.                        Michael Kaplan, Esq.
                                                Brent Weisenberg, Esq.

_Counsel to The Diocese of Camden, New_         _Counsel to the Official Committee_
_Jersey_                                        _of Tort Claimant Creditors_

63