**~~EXHIBIT~~ Exhibit 2.2.24**

> Formatted: Footer distance from edge:  0.38"

> Formatted: Left, Line spacing:  Exactly 9 pt

1

4856-6996-4835, v. 1

## **CHILD PROTECTION PROTOCOLS**

Article XVIII of the Plan requires the Diocese, and where applicable, the Covered Parties, to comply with, and fulfill, the following "Child Protection Protocols," all of which shall be overseen by the Trust Advisory Committee.[1] The Trust Advisory Committee shall serve without remuneration and the Diocese shall have no obligation to pay the members of the Trust Advisory Committee for their services on such Committee or reimburse any member of the Trust Advisory Committee or any professionals retained by them for any expenses.

The Diocese, and where applicable, the Covered Parties, shall provide an annual certification and affirmation in writing to the Trust Advisory Committee certifying that they have strictly complied with all of the following requirements, including that the Bishop has no knowledge of alleged, reported, admitted or otherwise claimed or substantiated allegations of Abuse after the Effective Date of the Plan or that any such knowledge has been reported to law enforcement subject to the applicable privileges protected by Article 5.3 of the 2002 Memorandum of Understanding filed at docket number 3-3 for a period of four (4) years following the Effective Date.

No claim or cause of action shall arise from the failure to comply with, or fulfill, the following requirements. Rather, the Honorable Jose L. Linares, Chief Judge of the United States District Court for the District of New Jersey (ret.) (the "**Mediator**") shall have the sole and exclusive jurisdiction to mediate any disputes that arise hereunder other than disputes which arise under paragraph 6 below, which shall be resolved as set forth therein.[2]

1. **Composition of the Diocesan Review Board.** Within one-hundred and twenty (120) days after the Effective Date of the Plan, the Bishop, in consultation with the Trust Advisory Committee, shall appoint two survivors of sexual abuse (each a "**Survivor**") to the Diocesan Review Board.[3] Two Survivors shall remain at all times on the Diocesan Review Board. Any successor Survivor(s) will be appointed at the Bishop's discretion but in consultation with the Trust Advisory Committee so long as it remains in existence, and after it disbands, in consultation with a non-profit organization whose mission includes supporting or advocating for survivors of child abuse; *provided however*, if two (2) Survivors are not available or will not participate in a meeting of the Diocesan Review Board, such absence will not affect the determinations of the Diocesan Review Board.

2. **Postings, Public Statements and Announcements.**

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to such term in the accompanying ~~Seventh~~Eighth Amended Plan of Reorganization.

[2] To the extent that Judge Linares is not available, the parties will agree on a new or substitute Mediator. If the parties cannot agree after conferring in good faith, the parties shall jointly ask the Chief Judge of the United States Bankruptcy Court for the District of New Jersey to serve as Mediator or select a person whom he or she chooses after reasonable input from the parties.

[3] Consultation shall not be interpreted to mean that the Trust Advisory Committee has the power to designate any particular person or persons.

The Diocese hereby agrees to:

- Continue posting the names of all known diocesan priests, nuns, teachers and/or other agents for whom childhood sexual abuse allegations were substantiated, admitted, or otherwise determined to be credible on the Diocese website for not less than 25 years after the Effective Date of the Plan.[4]

- Continue publishing the names of the diocesan priests who have been restricted from presenting themselves as priests as a result of credible childhood sexual allegations.

- Issue a public statement, which statement shall be reviewed and commented on by the Diocesan Review Board in advance, acknowledging that the Bishop is grateful that Survivors came forward.[5]

- Make an announcement on the Diocese website, which announcement shall be reviewed and commented on by the Diocesan Review Board in advance, of (i) the full and complete release of all Survivors from any previous confidentiality requirement and (ii) a commitment and promise not to require any confidentiality provision concerning the sexual perpetrators or factual circumstances surrounding sexual abuse going forward, except upon written request of a settling Survivor. Confidentiality shall be respected only to preserve the identity or privacy of the Survivor.

- For a period of two (2) years after the Effective Date, allow Survivors to publish their stories of abuse not to exceed 500 words in the Catholic Star Herald, subject to reasonable editing by the Catholic Star Herald.

- Provide contact information on the Diocese website for anonymously reporting abuse complaints and continue the Diocese's current whistleblower policy.

- Issue letters of apology to Survivors who request such letters.

- Display in each diocesan or parish school appropriate signage stating that sexual abuse of children and young people by any person, including priests, in that parish, church or school or anywhere, shall not be tolerated and advising that any report or complaint of child sexual abuse will be fully investigated in a manner that respects and protects the victim of such abuse.

**3. Compliance with the Charter and the Procedures Previously Implemented by the Diocese.** The Diocese shall continue to strictly comply with (i) the *Charter for the Protection of Children and Young People* and the *Essential Norms for Diocesan Policies Dealing with*

---

[4] A credible allegation is one that after review of available and relevant information, there is reason to believe the allegation may be true as determined by the Bishop.

[5] This requirement was satisfied by the Diocese's press release issued on April 19, 2022.

*Allegations of Sexual Abuse of Minors by Priests or Deacons* (http://camdendiocese.org/images/safe_enviorment_office/B_Essential_Norms.pdf) (the "**Charter**") and any future documents issued by the U.S. Conference of Catholic Bishops and (ii) the following guidelines and procedures, most of which are set forth in the Declaration of Reverent Robert E. Hughes filed in this case

- Entered into compacts with the county prosecutors and the New Jersey Attorney General (the 2002 Memorandum of Understanding).

- Fingerprint-facilitated criminal history background checks for every adult having regular contact with minors.

- Zero tolerance policies.

- Every adult having regular contact with minors is required to take a safe environment training program.

- Utilization of the VIRTUS child abuse training awareness program entitled "Protecting God's Children."

- Required retraining every five years.

- Continuation of payment for therapy for all who have been harmed subject to Paragraph 4 below.

- Continued vigorous implementation of child protection programs, including mandatory psychological evaluations of new members of the Diocese clergy (seminarians, clergy transfers etc.) through the administration of the Child Abuse Protection Inventory (CAPI) and the Minnesota Multiphasic Personality Inventory (MMPI - latest edition) by a clinician independent from any association with the Diocese.

- Continued retention of StoneBridge Business Partners, or other reputable auditor. required to comply with the USCCB's Charter for the Protection of Children and Young People, which shall provide the Trust Advisory Committee with its written audit no less than thirty (30) days after its submission to the Diocese.

4. **Therapy.** Continue the Diocese's current policy to pay all therapeutic costs of Survivors as administered by the Victim Assistance Coordinator for 25 sessions subject to increase upon determination by the Clinical Advisory Panel, after consideration of the recommendation of the Survivors' therapists. Therapy shall be provided to Survivors regardless of whether a claim or cause of action is asserted against a Covered Party by a Survivor.

5. **Training, Protocols and Procedures.**
    - Continued Diocese retention of a Victim Assistance Coordinator and implementation of the VIRTUS Program to, *inter alia*, develop, publish, and implement mandatory child abuse prevention protocols and procedures to be adopted by the Diocese, and to be reviewed annually, which shall include:

**Formatted:** Left, Line spacing:  Exactly 9 pt

- All diocesan seminarians being required to attend a seminary which contains curriculum concerning child abuse prevention.

- Mandatory training on child abuse prevention in all schools and religious educational programs.

- Continued development, publication, and implementation of its child abuse prevention/safe environment curriculum for all Catholic Schools and religious education programs.

- Continued distribution of information on how to report sexual abuse.

- Distribution of the Code of Ethical Standards to all clergy.

- Continued addressing of topics of sexual abuse of minors, prevention, detection and reporting of same in the seminary formation program.

- Implementation of a Diocese policy requiring that the Bishop, diocesan leaders and diocesan spokespersons refer to clergy abuse survivors as "abuse survivors," "survivors of clergy sexual abuse," "victims of clergy sexual abuse," or other term(s) recommended by abuse survivor advocates, and not refer to substantiated abuse survivors as "alleged."

- For 25 years, the Diocese will continue to provide information to parishes and schools about reporting child sexual abuse.

- A commitment to never seek to eliminate the New Jersey existing mandatory child abuse reporting statutory requirements.

- The Bishop has been and will continue to be available for private conferences with Survivors upon reasonable notice.

**6. Document Production**

A.  Within one hundred twenty (120) days after the later of (i) the date upon which all Claims are settled or otherwise resolved with all of the Diocese's insurers (the "**Litigation Cessation Date**") and (ii) the Effective Date, or (iii) as otherwise agreed between the Diocese and the Trust Advisory Committee, the Diocese will make available to the Trust Advisory Committee copies of the documents maintained by the Diocese (a) on all clergy (ordained or religious orders) and other agents, employees or volunteers who were included as perpetrators of sexual abuse on the Diocese of Camden Clergy Disclosure List (https://camdendiocese.org/clergylist/) because allegations of Abuse of a minor or young adult have been admitted, substantiated or determined or considered to be credible (the "**Credibly Accused List**") and (b) setting forth all policies and procedures that the Diocese had in place to protect children and others from Abuse by any agent or representative of the Diocese.[6] The

---

[6]  The documents to be produced include the Separate Archive Files maintained by the Diocese.

Diocese may redact and/or remove from such production any privileged information, including attorney-client privileged, work product privileged information, unrelated personal information and communications, and medical information to the extent such information is not related to Abuse and any other information subject to privileges under New Jersey state or federal law (the "**Removed Documents or Information**").

B.   The Diocese will identify for the Trust Advisory Committee the Removed Documents or Information in a detailed log that identifies with sufficient particularity the nature of the Removed Documents or Information.  The Trust Advisory Committee and the Diocese agree to work cooperatively and in good faith to resolve any dispute regarding the Removed Documents or Information.  If an agreement cannot be reached between the Diocese and the Trust Advisory Committee on any dispute regarding any Removed Documents or Information, the Honorable Jose L. Linares (ret.) (the "**Arbitrator**") will make a determination as to whether good cause exists to for the Diocese to provide the disputed Removed Documents or Information to the Trust Advisory Committee and/or publicly release the Removed Documents or Information.  Both the Trust Advisory Committee and the Diocese will have the opportunity to submit their positions on the Removed Documents or Information to the Arbitrator, and the Arbitrator will make a determination, within 30 days of receiving the parties' submissions, whether good cause exists to publicly release the Removed Documents or Information.  The decision of the Arbitrator as to the release of the Removed Documents or Information will be binding and final.  Notwithstanding the foregoing provisions as to Removed Documents or Information, the Arbitrator shall not make any determinations as to any Removed Documents or Information, and no Removed Documents or Information shall be released, until the conclusion of the New Jersey Attorney General's Clergy Abuse Task Force investigation.  Any perpetrator of sexual abuse named on the Credibly Accused List, or their respective attorney, agent, estate, executor, or otherwise, shall be noticed by the Trust Advisory Committee of the proceeding before the Arbitrator on no less than thirty (30) days' written notice and shall have a right to appear and be heard by the Arbitrator as to the release of any information, whether privileged or not, in that perpetrator's file.  Nothing herein shall limit the rights of any perpetrator named on the Credibly Accused List from asserting any legal, equitable, or other rights with respect to the documents in that perpetrator's file referenced in this section 6.

C.   Within one hundred twenty (120) days after the later of (i) the Litigation Cessation Date; (ii) the Effective Date; and/or (iii) as otherwise agreed between the Diocese and the Trust Advisory Committee, the Diocese will make available to the Trust Advisory Committee all documents maintained by the Diocese related to any claim of sexual abuse of a minor (i) that was asserted prior to the Effective Date but (ii) that did not meet the credible standard set forth in footnote 2 above (the "**Disputed Documents**"). The Disputed Documents will be subject to procedures set forth in this Paragraph 6 (including removal of Removed Documents or Information). The Trust Advisory Committee will have a reasonable period of time to notify the Diocese after receipt of the Disputed Documents, in writing, if the Trust Advisory Committee believes that any of the Disputed Documents should be made public. The Diocese will have a reasonable time after receipt of the Trust Advisory Committee's written notification pursuant to the preceding sentence to notify the Trust Advisory Committee, in writing, of its objection to public release of any Disputed Documents. The Trust Advisory Committee will not publicly release any of the Disputed Documents unless the Diocese affirmatively permits the public release

in accordance with the terms of this Paragraph 6.C. in writing or the Arbitrator has determined that the Trust Advisory Committee can release the Disputed Documents as set forth below. The Trust Advisory Committee and the Diocese agree to work cooperatively and in good faith to resolve any dispute regarding the Disputed Documents. If an agreement cannot be reached between the Diocese and the Trust Advisory Committee on any dispute regarding any Disputed Documents, the Arbitrator will make a determination as to whether good cause exists to for the Diocese to provide the disputed Removed Documents or Information to the Trust Advisory Committee and/or publicly release the Disputed Documents. Each of the Trust Advisory Committee and the Diocese will have the opportunity to submit their positions on the Disputed Documents to the Arbitrator, and the Arbitrator will make a determination within 30 days of receiving the parties' submissions whether "good cause" exists to deem the allegation a credible accusation and, therefore, publicly release the Disputed Documents. The decision of the Arbitrator as to the release of the Removed Documents or Information will be binding and final and not subject to appeal or challenge of any kind. Notwithstanding the foregoing provisions as to Removed Documents or Information, the Arbitrator shall not make any determinations as to any Removed Documents or Information, and no Removed Documents or Information shall be released, until the conclusion of the New Jersey Attorney General's Clergy Abuse Task Force investigation. Any alleged perpetrator of sexual abuse whose file is the subject of this section or his respective attorney, agent, estate, executor, or otherwise, shall be noticed by the Trust Advisory Committee of the proceeding before the Arbitrator on no less than thirty (30) days' written notice and shall have a right to appear and be heard by the Arbitrator as to the release of any information, whether privileged or not, in that priest's file. Nothing herein shall limit the rights of any priest named on the Credibly Accused List from asserting any legal, equitable, or other rights with respect to the documents in that priest's file referenced in this section 6. Nothing contained herein shall relate to or require the production of any files related to non-Diocesan priests or personnel.

       D.     The parties' expectation is that the Diocese or the Trust will publicly release any documents provided under paragraph 6.A, any documents that the parties agree can be made public in accordance with paragraphs 6.B and 6.C, and any documents determined by the Arbitrator to be appropriate for public release under paragraphs 6.B and 6.C.

**Formatted:** Left, Line spacing: Exactly 9 pt

4856-6996-4835, v. 1