**Exhibit 2.2.110**

## THE DIOCESE OF CAMDEN PLAN TRUST AGREEMENT

This trust agreement (this "**Trust Agreement**") is made and entered into by and between The Diocese of Camden, New Jersey (the "**Diocese**") and [●] (the "**Trust Administrator**") pursuant to the ~~Seventh~~Eighth Amended Chapter 11 Plan of Reorganization dated ~~May 2~~June 1, 2022 (together with all amendments, exhibits, supplements, and schedules thereto, the "**Plan**") filed in the Diocese's chapter 11 bankruptcy case, Case No. 20-21257 (JNP), pending before the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**").  Unless otherwise stated in this Trust Agreement, capitalized terms used in this Trust Agreement shall have the meanings ascribed to them in the Plan, the Confirmation Order (defined below), and/or title 11 of the United States Code (the "**Bankruptcy Code**").

## RECITALS

A.    On the Petition Date, the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Diocese continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    The Bankruptcy Court entered an order confirming the Plan (the "**Confirmation Order**") on June [●], 2022.

C.    The Plan anticipates the creation of the Trust and the transfer and assignment to the Trust of the Trust Assets.

D.    Pursuant to the Plan, the Trust is to use the Trust Assets to pay Class 5 Claims and Class 6 Claims and carry out the purposes of the Plan, among other obligations set forth therein.

E.    Effective as of the date the Confirmation Order is entered, the Trust is established for the benefit of the Beneficiaries of the Trust (each defined below) and is intended to qualify as a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended (the "**Tax Code**") and Sections 1.468B-1 to -5 of the regulations promulgated under the Tax Code (the "**Treasury Regulations**").

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the premises and provisions in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is agreed as follows:

## DECLARATION OF TRUST

Subject to approval by the Bankruptcy Court and effective as of the Effective Date, the Diocese hereby absolutely assigns to the Trust, and to its successors in trust and its successors and assigns, all rights, title, and interest of the Diocese in and to the Trust Assets;

**TO HAVE AND TO HOLD** unto the Trust and its successors in trust and its successors and assigns forever;

**IN TRUST NEVERTHELESS** upon the terms and subject to the conditions set forth in this Trust Agreement and for the benefit of the Beneficiaries, as defined below, as and to the extent

2

provided in the Plan, and for the performance of, and compliance with, the terms of this Trust Agreement, the Plan, and the Confirmation Order;

**PROVIDED, HOWEVER**, that upon termination of the Trust in accordance with Article IV of this Trust Agreement, this Trust Agreement shall cease, terminate, and be of no further force and effect; and

**IT IS HEREBY FURTHER COVENANTED AND DECLARED** that the Trust Assets are to be held and applied by the Trust Administrator upon the further covenants and terms and subject to the conditions set forth in this Trust Agreement.

## ARTICLE I.
## AGREEMENT OF TRUST

1.1     Creation and Name.  Effective as of the date the Confirmation Order is entered, the Diocese hereby creates the Trust known as "The Diocese of Camden Plan Trust," which is the Trust provided for in the Plan.  In the event of any inconsistency between the Plan and this Trust Agreement, the terms of the Plan shall govern.

1.2     Purpose.  The purpose of the Trust is to assume responsibility for preserving, managing, and distributing Trust Assets to Class 5 Claimants and distributing the Unknown Abuse Claims Reserve to Class 6 Claimants in accordance with this Trust Agreement, the Plan, the Confirmation Order and the Trust Distribution Plan.

1.3     Transfer of Trust Assets.  Pursuant to the Plan and upon the Effective Date, the Diocese shall irrevocably transfer, absolutely grant, assign, convey, set over, and deliver to the Trust at all times as set forth in the Plan, all of the Diocese's rights, titles, and interests in and to the Trust Assets in accordance with the Plan to be held in trust and for the uses and purposes stated in this Trust Agreement and in the Plan.  The Trust Administrator is hereby authorized to file with the proper governmental authorities any and all documents necessary or helpful to establish the Trust as of the date the Confirmation Order is entered.

1.4     Transfer of Confidential Information.  The Trust Administrator shall maintain the confidentiality of all documents and follow the confidentiality procedures provided for in the Bankruptcy Court's *Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [ECF 409].

1.5     Irrevocability.  The Trust shall be irrevocable.  The Diocese shall not alter, amend, revoke, or terminate the Trust.  The Diocese shall have no power or authority to direct the Trust Administrator to return any of the Trust Assets to the Diocese.

1.6     Beneficiaries.  The beneficiaries of the Trust are Class 5 Claimants and Class 6 Claimants under the Plan whose Claims are allowed by the Abuse Claims Reviewer (each a "**Beneficiary**" and collectively, the "**Beneficiaries**").

4859-3047-0691, v. 1

    1.7       <u>Acceptance of Assets and Assumption of Liabilities.</u>

        1.7.1   In furtherance of the purposes of the Trust, the Trust Administrator hereby accepts the role of trustee of the Trust and accepts the grant, assignment, transfer, conveyance and delivery of the Trust Assets to the Trust, subject to the terms and conditions set forth in this Trust Agreement, the Plan, the Confirmation Order and the Trust Distribution Plan.

        1.7.2   In furtherance of the purposes of the Trust, the Trust Administrator, on behalf of the Trust, hereby expressly assumes all responsibility for preserving, managing and distributing Trust Assets to the Beneficiaries. The Claims of the Beneficiaries will be evaluated by the Abuse Claims Reviewer in accordance with the Trust Distribution Plan.

        1.7.3   The Trust Administrator shall have all of the rights, powers and duties set forth in this Trust Agreement, the Trust Distribution Plan, and the Plan, and available under applicable law, for accomplishing the purposes of the Trust. The Trust Administrator's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the applicable provisions of the Plan, the purpose of the Trust, and applicable law. The Trust Administrator shall have the authority to bind the Trust within the limitations set forth in this Trust Agreement, but shall be acting in the capacity as Trust Administrator, and not individually, for all purposes contained in this Trust Agreement.

        1.7.4   In furtherance of the purposes of the Trust, the Trust Administrator assumes responsibility for (a) making payments to the Beneficiaries and Holders of Unknown Claims; (b) receiving, collecting, liquidating, maintaining, and distributing the Trust Assets; and (c) fulfilling all other obligations of the Trust under this Trust Agreement, the Plan, the Confirmation Order, and the Trust Distribution Plan. The Trust will be administered consistent with the purpose of the Trust and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the value of the Trust Assets or as otherwise provided in the Plan, the Confirmation Order or the Trust Distribution Plan.

        1.7.5   All Trust expenses and all liabilities of the Trust with respect to the Beneficiaries shall be payable solely by the Trust Administrator out of the Trust Assets.

## ARTICLE II.
## <u>CORPUS OF THE TRUST</u>

    2.2       <u>Trust Composition</u>. The Trust Assets shall include all property transferred to the Trust pursuant to the Plan, Confirmation Order, and any future orders of the Bankruptcy Court, including without limitation, all rights of every kind, nature, and description transferred to the Trust pursuant to the Plan.

    2.3       <u>Transfer to Trust</u>. Upon the Effective Date, pursuant to the Plan and Confirmation Order, title to and all rights and interests in the Trust Assets shall be transferred to the Trust free and clear of all Liens, claims, encumbrances or Interests of any kind in the Trust Assets of any other Person (including all Liens, claims, encumbrances or Interests of creditors of the Diocese) in accordance with sections 1123, 1141, and 1146(a) of the Bankruptcy Code, except as otherwise

4

provided for in the Plan. The Trust Administrator, on behalf of the Trust, shall receive the Trust Assets when they are transferred to the Trust.

2.4    Trust Administrator's Right to and Title and Interest in Trust Assets. Upon the transfer of the Trust Assets, the Trust succeeds to all of the Diocese's and the Estate's right to and title and Interest in the Trust Assets, and the Diocese and the Estate shall have no further right to, or title or Interest in or with respect to, the Trust Assets or the Trust.

2.5    No Tax on Transfers to Trust. Pursuant to section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Trust, including any deeds, bills of sale, or assignments executed in connection with any transfer to the Trust or receipt or disposition/sale of assets by the Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax, or similar tax.

2.6    Spendthrift Provision. To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or in part, shall be subject to (a) any legal or equitable claims of creditors of any Beneficiary or others, (b) legal process, or (c) voluntary or involuntary transfer, assignment, anticipation, pledge, or other form of alienation or encumbrance except as may be ordered by the Bankruptcy Court.

2.7    Trust Corpus. The entirety of the Trust's corpus shall be available to pay the Beneficiaries and authorized expenses. The Trust Corpus shall be allocated, administered, and distributed as provided in this Trust Agreement, the Plan, the Confirmation Order, and the Trust Distribution Plan.

2.8    Unknown Abuse Claims Reserve. $500,000.00 of the Trust Assets shall be set aside in a reserve fund owned by the Trust for Unknown Abuse Claims pursuant to the Plan (the "**Unknown Abuse Claims Reserve**"). The payments to holders of Unknown Abuse Claims shall be made in accordance with the Trust Distribution Plan. The Unknown Abuse Claims Reserve will terminate in accordance with the Plan and the Trust Distribution Plan. After the Unknown Claims Reserve Establishment Period terminates, to the extent there are any remaining funds after payment to all Unknown Abuse Claims pursuant to the Trust Distribution Plan, such remaining funds shall be retained by the Trust, with no further restrictions on the Trust's use of such funds except for the general restrictions on use of Trust Assets provided for herein. For the avoidance of doubt, the Unknown Abuse Claims Reserve shall be treated as assets of the Trust and the Class 6 Claimants shall be treated as Beneficiaries of the Trust to the extent otherwise provided in this Trust Agreement, the Plan, and the Trust Distribution Plan.

### ARTICLE III.
### POWERS AND DUTIES OF TRUST ADMINISTRATOR

3.1    Trust Administrator's Bond. The Trust Administrator shall not be required to post any bond, surety, or other security for the performance of the Trust Administrator's duties unless otherwise ordered by the Bankruptcy Court, and, in the event the Trust Administrator is so otherwise ordered, all reasonable costs and expenses of procuring any bond or surety shall be borne by the Trust and paid for from the Trust Assets.

3.2    Powers and Duties.  The Trust Administrator shall have, in addition to any other powers and duties conferred on the Trust Administrator by applicable trust law (to the extent not inconsistent with applicable bankruptcy law, the Plan, and the Confirmation Order), the Plan, the Confirmation Order, and the Trust Distribution Plan, the following powers and duties:

3.2.1    To act as custodian of, and to receive, control, manage, liquidate, monetize, and dispose of, all Trust Assets and the Unknown Abuse Claims Reserve for the benefit of the Beneficiaries as the Trust Administrator deems appropriate to accomplish the purpose of the Trust, in accordance with the terms contained in this Trust Agreement, the Plan, the Confirmation Order, and the Trust Distribution Plan.

3.2.2    To abandon any property which the Trust Administrator determines in the Trust Administrator's reasonable discretion to be of *de minimus* value or of more burden than value to the Trust.

3.2.3    To protect and enforce the rights in and to the Trust Assets and the Unknown Abuse Claims Reserve by any method deemed appropriate, including without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity.

3.2.4    To enter into contracts in the course of administering the Trust Assets and the Unknown Abuse Claims Reserve under this Trust Agreement, the Plan, the Confirmation Order, and the Trust Distribution Plan.

3.2.5    To open and maintain bank accounts on behalf of the Trust, deposit funds in the bank accounts, and draw checks on the bank accounts, as appropriate under this Trust Agreement, the Plan, and the Confirmation Order.  Notwithstanding anything herein to the contrary, the Trust Administrator may open and maintain bank accounts on behalf of the Trust after the date the Confirmation Order is entered but prior to the Effective Date.

3.2.6    To obtain all reasonably available insurance coverage with respect to any property that is, or may in the future become, a Trust Asset.

3.2.7    To incur on behalf of the Trust, and pay from the assets of the Trust, all fees, costs, and expenses of administering the Trust as provided this Trust Agreement, the Plan, the Confirmation Order, and the Trust Distribution Plan.  These fees, costs, and expenses include:  (a) the fees of bankruptcy claims and/or distribution agents, (b) the fees and costs of professionals employed by the Trust Administrator (the "**Professionals**"), including without limitation, the Abuse Claim Reviewer, investment advisors, accountants, agents, managers, attorneys-at-law, actuaries, or auditors, and (c) the premiums charged by insurers, including without limitation, professional liability insurers.

3.2.8    In accordance with the evaluation of the Abuse Claim Reviewer under the Trust Distribution Plan, to make distributions, in accordance with the Trust Distribution Plan, to Beneficiaries who have provided signed copies of all releases as required by the Plan.

6

3.2.9   In the Trust Administrator's discretion, to rely on the authenticity of the signature of the Abuse Claim Reviewer, and the accuracy of the information set forth by, and the reasonableness of the determination of, the Abuse Claim Reviewer in the administration of the Trust Distribution Plan and assessment of the Class 5 Claims and Class 6 Claims without any verification or confirmation.

3.2.10  In the Trust Administrator's discretion, as a party in interest, to seek enforcement of any provision of the Plan or Confirmation Order pertaining to the Trust.

3.2.11  To retain any attorney-at-law, consultant, expert, accountant, investment advisor, bankruptcy management company, or such other agents and advisors as are necessary and appropriate to effectuate the purpose of, and maintain and administer, the Trust and shall be entitled to rely on advice given by such advisors within his, her, or its areas of competence.

3.2.12  Subject to consultation with the Trust Advisory Committee (defined below), to remove the Abuse Claim Reviewer for cause.  For purposes of this Trust Agreement, "**cause**" shall mean (a) the willful and continued refusal by the Abuse Claim Reviewer to perform the Abuse Claim Reviewer's duties as set forth in this Trust Agreement, the Trust Distribution Plan, and the Plan, (b) gross negligence, gross misconduct, fraud, embezzlement, or theft, (c) a breach of fiduciary duty, or (d) other cause as the Trust Administrator shall in good faith determine.  In the event the Abuse Claim Reviewer resigns, is removed, or is otherwise unable to perform the Abuse Claim Reviewer's obligations, the Trust Administrator, but subject to consultation with the Trust Advisory Committee, shall have exclusive authority to appoint a new Abuse Claim Reviewer. Nothing contained in this Trust Agreement shall prohibit the Trust Administrator from also serving as the Abuse Claim Reviewer if the Trust Administrator determines, but subject to consultation with the Trust Advisory Committee, that serving as both the Trust Administrator and the Abuse Claim Reviewer is in the best interest of the Trust and the Beneficiaries.

3.2.13  To make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan or the Trust or to maintain and administer the Trust.

3.2.14  To seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including without limitation Bankruptcy Rule 2004.

3.2.15  To amend, modify, or alter this Trust Agreement by filing a motion with the Bankruptcy Court, with notice to the Beneficiaries (through their counsel when known, and otherwise directly), the Diocese, and any or all other parties in interest.  For the avoidance of doubt, the amendments, modifications, or alterations may not be inconsistent with the terms of the Plan, the terms of the Confirmation Order, or the purpose of the Trust, as identified in Section 1.2 of this Trust Agreement.

3.2.16  Upon any event terminating the Trust, to defer distribution of Trust Assets and the Unknown Abuse Claims Reserve for a reasonable time needed to wind up the

7

affairs of the Trust, including time needed to provide for payment of debts and expenses, although the Beneficiaries' rights to distributions shall vest immediately.

3.2.17  To comply with section 345 of the Bankruptcy Code with regard to the investment of the Trust Assets.  The Trust Administrator is relieved of any obligation to diversify.

3.2.18  To establish the accounts, funds, and reserves, as required by the Plan, for ease of administration.  Nothing in this provision shall restrict the Trust Administrator's authority to pool the accounts, funds, or reserves for investment purposes or shall require separate bank accounts for the accounts, funds, or reserves.

3.2.19  To be responsible for only the Trust Assets and the Unknown Abuse Claims Reserve delivered to the Trust and have no duty to make, nor incur any liability for failing to make, any search for unknown property or liabilities.

3.2.20  To defend and indemnify the Covered Parties against Abuse Claims as provided in the Plan, the Confirmation Order, and/or the Trust Distribution Plan;

3.2.21  To obtain all recoveries on account of Transferred Insurance Interests as set forth in the Trust Distribution Plan and to assert and/or assign to any Abuse Claimant all Coverage Claims and Extra-Contractual Claims that currently exist or may arise in the future against Non-Settling Insurers.

3.2.22  To commence Coverage Claims and Extra-Contractual Claims against any Non-Settling Insurers in respect of the Transferred Insurance Interests as set forth in the Trust Distribution Plan.

3.2.23  To request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and

3.2.24  To take any action required to enforce the Insurance Settlement Agreements.

3.3    Limitations on the Trust Administrator.  Notwithstanding anything in this Trust Agreement to the contrary, the Trust Administrator shall not do or undertake any of the following:

3.3.1    Guaranty any debt other than as provided for in this Trust Agreement or as required by the Plan;

3.3.2    Make loan(s) of Trust Assets;

3.3.3    Make any transfer or distribution of Trust Assets other than those authorized in this Trust Agreement, the Plan, the Confirmation Order, or the Trust Distribution Plan;

3.3.4    Engage in any trade or business; or

8

       3.3.5   Engage in any investments or activities inconsistent with the treatment of the Trust as a "qualified settlement fund."

## ARTICLE IV.
## TERMINATION OF THE TRUST

4.1   <u>Pre-Effective Date Termination</u>. The Trust Administrator, with the written consent of the Tort Committee, may terminate the Trust if (a) the Plan does not become effective within one (1) year from the date the Confirmation Order is entered by the Bankruptcy Court or (b) the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code (the "**Pre-Effective Date Termination**"). Upon the Pre-Effective Date Termination of the Trust, the Trust Agreement shall be null and void and of no force and effect, with the Trust Administrator and the Diocese both discharged from any and all duties and obligations provided for in this Trust Agreement.

4.2   <u>Post-Effective Date Termination</u>. The Trust Administrator shall terminate the Trust after (a) the Trust Administrator's liquidation, administration, and distribution of the Trust Assets and the Unknown Abuse Claims Reserve in accordance with this Trust Agreement, the Plan, the Confirmation Order, and/or the Trust Distribution Plan and (b) the Trust Administrator's full performance of all other duties and functions set forth in this Trust Agreement and the Plan (the "**Post-Effective Date Termination**").

4.3   <u>Post-Effective Date Termination Procedures</u>. After the Post-Effective Date Termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trust Administrator shall continue to act as Trust Administrator until the Trust Administrator's duties in this Trust Agreement have been fully performed. The Trust Administrator shall retain the books, records, documents, and files that shall have been delivered to, or created by, the Trust Administrator until distribution of all the Trust Assets. For purposes of this provision, the Trust Assets and the Unknown Abuse Claims Reserve will be deemed distributed when the total amount remaining in the Trust is less than $50,000 and the Trust Administrator has decided that he or she can no longer make a cost efficient pro rata distribution of such Trust Assets and/or Unknown Abuse Claims Reserve to Beneficiaries. At the Trust Administrator's discretion, all of the books, records, documents, and files may be destroyed at any time following the later of: (a) the first anniversary of the final distribution of the Trust Assets and the Unknown Abuse Claims Reserve or (b) the date until which the Trust Administrator is required by applicable law to retain the books, records, documents, and files; provided that, notwithstanding the foregoing, the Trust Administrator shall not destroy or discard any books, records, documents, or files relating to the Trust without giving the Diocese and the Beneficiaries reasonable prior written notice.

4.4   <u>Post-Effective Date Termination Distribution</u>. Upon Post-Effective Date Termination of the Trust, provided that all fees and expenses of the Trust have been paid or provided for in full, the Trust Administrator will deliver all funds and other investments in the Trust, if any, including any investment earnings to a non-profit organization whose mission includes supporting or advocating for survivors of child sexual abuse.

4.5   <u>Discharge, Exculpation, and Exoneration</u>. Upon Post-Effective Date Termination of the Trust and accomplishment of all activities described in this Article, the Trust Administrator

9

and the Professionals shall be discharged and exculpated from liability, and the Trust Administrator's bond (if any), shall be exonerated except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Trust Administrator or his designated agents or representatives.  The Trust Administrator may, at the expense of the Trust, seek an order of the Bankruptcy Court confirming the discharges, exculpations, and exoneration referenced in this Section.

## ARTICLE V.
## IMMUNITY, LIABILITY, AND INDEMNIFICATION OF TRUST ADMINISTRATOR

5.1    Limitations on Liability.  Neither the Trust Administrator nor any of the Trust Administrator's duly designated agents, representatives, or Professionals shall be liable for any act or omission taken or omitted by the Trust Administrator in good faith, other than acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Trust Administrator or the Trust Administrator's designated agents, representatives, or Professionals.  The Trust Administrator may, in connection with the performance of the Trust Administrator's functions, and in the Trust Administrator's sole and absolute discretion, consult with the Professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with the advice or opinions rendered by the Professionals.  Notwithstanding this authority, the Trust Administrator shall be under no obligation to consult with the Professionals, and the Trust Administrator's good faith determination not to consult with the Professionals shall not result in the imposition of liability on the Trust Administrator, unless the determination is based on the Trust Administrator's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud.

5.2    No Recourse Against the Trust Administrator Personally.  No recourse shall be had, directly or indirectly, against the Trust Administrator personally, or against any employee, contractor, or Professional retained by the Trust Administrator in accordance with the terms of this Trust Agreement, Plan, or Confirmation Order, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement executed by the Trust Administrator in implementation of this Trust Agreement or the Plan or by reason of the creation of any indebtedness by the Trust Administrator under the Plan for any purposes authorized by this Trust Agreement or the Plan, it being expressly understood and agreed that any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement entered into by the Trust Administrator, whether in writing or otherwise, shall be enforceable only against, and be satisfied only out of, the Trust Assets and shall be evidence only of a right of payment out of the Trust Assets.  The Trust Administrator may be held liable for the Trust Administrator's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability for these grounds is established, recourse may be had directly against the Trust Administrator.  The Trust will not be covered by a bond.

5.3    Indemnification.  The Trust Administrator, using Trust Assets, shall defend, indemnify, and hold harmless the Trust Administrator, the Trust Administrator's officers, directors, attorneys, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of the state of New Jersey is entitled to defend, indemnify, and hold harmless its trustees, officers, directors, attorneys, agents, representatives, and employees

10

against any and all costs (including attorneys' fees and costs), judgments, awards, amounts paid in settlement, liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties under this Trust Agreement; provided that neither the Trust Administrator nor the Trust Administrator's officers, directors, attorneys, agents, representatives, or employees shall be defended, indemnified, or held harmless in any way for any liability, expense, claim, damage, or loss for which they are ultimately held liable under Section 5.1 of this Trust Agreement.

### ARTICLE VI.
### COMPENSATION AND EXPENSE
### REIMBURSEMENT OF TRUST ADMINISTRATOR AND ITS AGENTS

The Trust Administrator shall receive fair and reasonable compensation for his or her services based upon his or her regular hourly rate, which are subject to adjustment from time to time, plus reimbursement of all reasonable and documented costs and expenses.  The Trust Administrator shall notify the Trust Advisory Committee of any increases in his or her hourly rate. The Trust Administrator's compensation structure may be modified by agreement between the Trust Administrator and the Trust Advisory Committee.

All Professionals retained by the Trust Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of expenses reasonably incurred in rendering such services.

The payment of the fees and expenses of the Trust Administrator and Professionals retained by the Trust Administrator shall be made in the ordinary course of business and, unless otherwise required by an order of the Bankruptcy Court, shall not be subject to the approval of the Bankruptcy Court, but such payment shall be subject to the following procedures:

(i) All Professionals retained by the Trust Administrator shall deliver their invoices or fee statements (which invoices and/or fee statements shall be reasonably detailed (but may include redactions for privilege) and, with respect to attorney fee statements, shall not be provided in summary fashion) on a monthly basis via electronic mail to the Trust Administrator before payment of such invoices or fee statements shall be approved.

(ii) The Trust Administrator shall deliver reasonably detailed monthly invoices or fee statements via electronic mail to the Trust Advisory Committee c/o Lowenstein Sandler LLP, Attn: Brent Weisenberg (bweisenberg@lowenstein.com), One Lowenstein Drive, Roseland, NJ 07068.

(iii) The Trust Administrator and the Trust Advisory Committee, as applicable, shall have fourteen (14) days from the date of delivery of any invoice or fee statement to provide written notice of an objection to the invoice or fee statement to the Professional or Trust Administrator, as applicable, seeking compensation and/or reimbursement of expenses.

(iv) For an objection to an invoice or fee statement to be valid, it shall set forth in reasonable detail the specific fees objected to and the basis for the objection, and

11

  be sent via electronic mail to the Trust Administrator or the Professional (with a copy to the Trust Administrator), as applicable.  The uncontested portion of each invoice or fee statement shall be deemed approved and shall be paid within twenty (20) days after its original delivery to the Trust Administrator.

(v) Any objection to an invoice or fee statement that remains unresolved fifteen (15) days after it is made in writing may be submitted for resolution to the Bankruptcy Court (via motion on notice to the Trust Administrator) by the party seeking payment.

## ARTICLE VII.
## TRUST ADVISORY COMMITTEE

  7.1 <u>Members</u>.  The Trust Advisory Committee shall be appointed by the Tort Committee and formed as of the Effective Date to oversee certain actions of the Trust Administrator as set forth herein.  Upon the death or resignation of a member of the Trust Advisory Committee or removal for good cause shown, the remaining members of the Trust Advisory Committee may, but shall not be required to, fill the applicable vacancy on the Trust Advisory Committee with a new member, subject to the reasonable consent of the Trust Administrator, which consent shall not be unreasonably withheld.

  7.2 <u>Term of Service</u>.  Upon the completion of all the Trust Administrator's duties, responsibilities, and obligations under the Plan and this Trust Agreement, the Trust Advisory Committee shall be automatically disbanded and its members shall have no further duties, responsibilities, and obligations in connection with the Chapter 11 Case or the Plan and its implementation.

  7.3 <u>Reporting to the Trust Advisory Committee</u>.  After the Effective Date, and until the Trust Advisory Committee is disbanded, the Trust Administrator shall provide the Trust Advisory Committee with periodic updates on its and the Abuse Claims Reviewer's progress.  Nothing herein shall preclude the Trust Advisory Committee from reasonably requesting additional information from the Trust Administrator in the exercise of the Trust Advisory Committee's duties under the Plan or this Trust Agreement.

  7.4 <u>Fiduciary</u>.  The members of the Trust Advisory Committee shall act in a fiduciary capacity on behalf of the interests of all Beneficiaries.

  7.5 <u>No Compensation</u>. Members of the Trust Advisory Committee shall receive no compensation from the Diocese, the Trust Administrator, or the Trust on account of their membership on the Trust Advisory Committee except for reimbursement of their reasonable and documented out of pocket expenses (which, for the avoidance of doubt, shall not include the fees or expenses of any professionals retained individually by any member of the Trust Advisory Committee).

12

# ARTICLE VIII.
# SUCCESSOR TRUST ADMINISTRATOR

8.1     Vacancy Caused by the Trust Administrator's Resignation or Removal.

    8.1.1   The Trust Administrator may resign at any time upon thirty (30) days written notice to be filed with the Bankruptcy Court.  The outgoing trustee (the "**Outgoing Trust Administrator**") shall, within thirty (30) days after the Outgoing Trust Administrator's resignation takes effect, deliver to the successor trustee (the "**Successor Trust Administrator**") all of the Trust Assets which were in the possession of the Outgoing Trust Administrator along with a complete list of Trust Assets and a complete accounting of all transactions engaged by the Outgoing Trust Administrator while serving as the Trust Administrator.

    8.1.2   The Bankruptcy Court may remove a Trust Administrator for cause, which cause shall include, but shall not be limited to, the factors set forth in any applicable New Jersey law.  The removal will take effect upon the date the Bankruptcy Court specifies.  In the event of removal, the Trust Administrator shall, within thirty (30) days after such removal takes effect, or at some earlier date as the Bankruptcy Court may specify, deliver to the Successor Trust Administrator all of the Trust Assets which were in the possession of the Outgoing Trust Administrator along with a complete list of Trust Assets and a complete accounting of all transactions engaged in by the Outgoing Trust Administrator while serving as such**.**

8.2     Outgoing Trust Administrator Obligations.  In the event of the resignation or the removal of the Trust Administrator, the Outgoing Trust Administrator, in addition to the duties imposed under Sections 8.1.1 or 8.1.2, shall:

    8.2.1   Execute and deliver by the effective date of the resignation or removal the documents, instruments, records, and other writings as may be reasonably requested by the Successor Trust Administrator to effect the resignation or removal of the Outgoing Trust Administrator and the conveyance of the Trust Assets and the Unknown Abuse Claims Reserve to the Successor Trust Administrator.

    8.2.2   Deliver to the Successor Trust Administrator all documents, instruments, records, and other writings relating to the Trust Assets and the Unknown Abuse Claims Reserve as may be in the possession or under the control of the Outgoing Trust Administrator.

    8.2.3   Otherwise assist and cooperate in effecting the assumption of the Outgoing Trust Administrator's obligations and functions by the Successor Trust Administrator.

    8.2.4   The Outgoing Trust Administrator hereby irrevocably appoints the Successor Trust Administrator (and any interim trustee) as the Outgoing Trust Administrator's attorney-in-fact and agent with full power of substitution for the Outgoing Trust Administrator and the Outgoing Trust Administrator's name, place, and stead to do any and all acts that the Outgoing Trust Administrator is obligated to perform under this Trust Agreement.  The appointment of the Successor Trust Administrator as the Outgoing

13

Trust Administrator's attorney-in-fact and agent shall not be affected by the subsequent disability or incompetence of the Outgoing Trust Administrator. The Bankruptcy Court may also enter any order necessary to effect the termination of the appointment of the Outgoing Trust Administrator and the subsequent appointment of the Successor Trust Administrator.

8.3    Appointment of Successor Trust Administrator.  Any vacancy in the office of the Trust Administrator shall be filled by the nomination of a majority of the members of the Trust Advisory Committee

8.4    Preservation of Record of Changes in Trust Administrators.  A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement.

## ARTICLE IX.
## TRUST ADMINISTRATOR REPORTING AND DISCHARGE

9.1    Annual Accountings.  The Trust Administrator shall prepare, at least annually, a written accounting of the administration of the Trust listing the current Trust Assets and the Unknown Abuse Claims Reserve with fair market values and detailing all transactions that occurred during the period covered by the accounting.  Each accounting shall be filed with the Bankruptcy Court no later than April 30 of the following year for as long as the Chapter 11 Case remains open and pending before the Bankruptcy Court.  Copies of the accounting shall be available to the Beneficiaries upon request.  However, the Trust Administrator shall redact any and all confidential and personal identifying information from any and all accountings or reports filed with the Bankruptcy Court or provided to any Beneficiary.

9.2    Approval of Accountings and Discharge of the Trust Administrator.  At any time when the Chapter 11 Case is open, the Trust Administrator may file with the Bankruptcy Court a motion for approval of any accounting described in Section 9.1 of this Trust Agreement.  Upon the entry of an order of the Bankruptcy Court approving the accounting, the Trust Administrator shall be discharged from all liability to the Trust, any Beneficiary, or any Person who has or may have a claim against the Trust Administrator or Trust for acts or omissions in the Trust Administrator's capacity as Trust Administrator with respect to all assets listed and transactions detailed in the accounting.

## ARTICLE X.
## SECTION 468B SETTLEMENT FUND

10.1    Qualification.  In accordance with the Plan, the Trust Administrator shall take all reasonable steps to ensure that the Trust will qualify as, and remain, a "qualified settlement fund" within the meaning of Section 468B of the Tax Code and the Treasury Regulations. The Diocese shall be the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trust Administrator shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

10.2    All Events Test and Economic Performance Requirement.  It is intended that the transfer of the Trust Assets to the Trust shall satisfy the "All Events Test" and the "Economic

14

Performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulation Section 1.461-1(a)(2).

10.3    Employer Identification Number.  Upon establishment of the Trust, the Trust Administrator shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

10.4    Relation-Back Election.  If applicable, the Trust Administrator and the Diocese shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2) to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

10.5    Filing Requirements.  The Trust Administrator shall cause to be filed, on behalf of the Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1).  The Diocese shall supply to the Trust Administrator and to the Internal Revenue Service (the "**IRS**") the statement described in Treasury Regulation Section 1.468B-3(e)(2) no later than February 15 of the year following each calendar year in which the Diocese makes a transfer to the Trust.

10.6    Broad Powers of the Trust Administrator.  The Trust Administrator is empowered to take all actions, including any action consistent with those expressly set forth in Article IX of this Trust Agreement, as the Trust Administrator deems necessary to reasonably ensure that the Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the Treasury Regulations.  Further, the Trust Administrator may, unilaterally and without order from the Bankruptcy Court, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with this Article X of this Trust Agreement.

## ARTICLE XI.
## BENEFICIARIES

11.1    Register.  The Trust Administrator shall keep a register (the "**Register**") in which the Trust Administrator shall at all times maintain the names and addresses of the Beneficiaries and the actual distributions made to the Beneficiaries pursuant to the Plan and Trust Distribution Plan.  The Trust Administrator may rely upon the Register for the purposes of delivering distributions or notices.  In preparing and maintaining the Register, the Trust Administrator may rely on the name and address of each Holder of a Claim as set forth in a Proof of Claim filed by the Holder, or proper notice of a name or address change, which has been delivered by the Beneficiary to the Trust Administrator.  The Trust Administrator shall be obligated to maintain the confidentiality of all names, addresses, and any and all other personally identifying information of the Beneficiaries provided to the Trust Administrator.

11.2    Rights of Beneficiaries.  The rights of a Beneficiary under this Trust Agreement shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of the Beneficiary.  A Beneficiary shall have no title to, right to, possession of, management of, or control of the Trust Assets or Unknown Abuse Claims Reserve, or any right to call for a partition or division of the Trust Assets.  Title to all the Trust Assets shall be vested in the Trust

15

Administrator, and the sole interest of the Beneficiaries shall be the rights and benefits given to the Beneficiaries under this Trust Agreement, the Plan, the Confirmation Order, and the Trust Distribution Plan.

11.3   Tax Identification Numbers.  The Trust Administrator shall require any Beneficiary to furnish to the Trust Administrator the Beneficiary's employer or taxpayer identification number or social security number as assigned by the IRS, and other records or documents necessary to satisfy the Trust Administrator's tax reporting obligations (including, but not limited to, certificates of non-foreign status).  The Trust Administrator shall condition the payment of any distribution to any Beneficiary upon receipt of the number and records or documents.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

12.1   Plan Incorporation.  The terms of the Plan, the Confirmation Order, and the Trust Distribution Plan are incorporated into this Trust Agreement.  In the event of any conflict between the terms of this Trust Agreement and the Plan, the terms of the Plan shall govern.

12.2   Notices.  All notices or deliveries required or permitted under this Trust Agreement shall be given as directed in the Plan, to the following:

| IF TO THE DEBTOR: | IF TO THE TORT COMMITTEE: |
|---|---|
| TRENK ISABEL SIDDIQI & SHAHDANIAN P.C.<br>Richard D. Trenk, Esq.<br>Robert S. Roglieri, Esq.<br>290 Mt. Pleasant Avenue, Suite 2350,<br>Livingston, New Jersey 07037<br>Email:  rtrenk@trenkisabel.law<br>Email:  rroglieri@trenkisabel.law | LOWENSTEIN SANDLER LLP<br>Jeffrey D. Prol, Esq.<br>Michael A. Kaplan, Esq.<br>Brent Weisenberg, Esq.<br>One Lowenstein Drive<br>Roseland, NJ 07068<br>Email:  jprol@lowenstein.com<br>Email:  mkaplan@lowenstein.com<br>Email:  bweisenberg@lowenstein.com |
| IF TO THE TRUST ADMINISTRATOR: | |

12.3   Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect the right or remedy or constitute a waiver by the party of any right or remedy pursuant to this Trust Agreement.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

12.4   Reimbursement of Costs.  If the Trust Administrator or the Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement of a provision of this Trust Agreement, the Trust Administrator or the Trust, as the case may be, shall be entitled to collect from the non-prevailing party any and all costs, reasonable

16

and documented out-of-pocket expenses and fees, including attorneys' fees, incurred in connection with the dispute or enforcement action.

12.5   Entirety of Trust Agreement.  This Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter in this Trust Agreement.  This Trust Agreement, together with the Exhibits to the Trust Agreement, the Plan, and the Confirmation Order, contain the sole and entire Trust Agreement and understanding with respect to the matters addressed in the Trust Agreement.  It is acknowledged that there are no communications or oral understandings that are contrary to, or that in any way restrict, this Trust Agreement and that all prior agreements or understandings within the scope of the subject matter of this Trust Agreement are, upon execution and delivery of this Trust Agreement, superseded, null, and void.

12.6   Counterparts.  This Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on the counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Facsimile signatures or signatures delivered by any other electronic means shall have the same force and effect as original signatures.

12.7   Captions.  The captions of Articles and Sections are included for convenience only and are to be disregarded in interpreting this Trust Agreement.

12.8   Representation.  It is acknowledged that each of the parties to this Trust Agreement has reviewed this Trust Agreement and has consulted counsel, or knowingly chose not to consult counsel, before executing this Trust Agreement.  Each of the parties to this Trust Agreement relied upon its own judgment and that of its counsel in executing this Trust Agreement and has not relied on, or been induced by, any representation, statement, or act by any party that is not referred to in this instrument.  It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.  Each of the parties entered into this Trust Agreement voluntarily, with full knowledge of its significance, and the Trust Agreement is, in all respects, complete and final.

12.9   Interpretation.  This Trust Agreement has been reached through negotiations between the parties to this Trust Agreement.  Each of the parties to this Trust Agreement acknowledges that the party has participated in the drafting of this Trust Agreement and reviewed the terms of the Trust Agreement and, as such, no rule of construction shall apply which might result in this Trust Agreement being construed in favor or against any of the parties, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party.  The parties to this Trust Agreement have used their own judgment in entering into this Trust Agreement.

12.10   Savings Clause.  If any clause or provision of this Trust Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court or any other court with competent jurisdiction, such invalidity or unenforceability shall not affect any other clause or provision in this Trust Agreement, but this Trust Agreement shall be construed, insofar as reasonable to

effectuate the purpose of this Trust Agreement, as if the invalid or unenforceable provision had never been contained in the Trust Agreement.

      12.11 <u>Applicable Law</u>.  This Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of New Jersey applicable to contracts and trust agreements made and to be performed in this Trust Agreement, except that all matters of federal tax law and the Trust's compliance with Section 468B of the Tax Code and any Treasury Regulations shall be governed by federal tax law and all matters of federal bankruptcy law shall be governed by the Bankruptcy Code and federal bankruptcy law.

Dated:  June [●], 2022

**THE DIOCESE OF CAMDEN, NEW JERSEY**

By: _____

Reverend Robert E. Hughes,
Vicar General/Vice President

Dated:  June [●], 2022

**TRENK ISABEL SIDDIQI & SHAHDANIAN P.C.**

_____
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.

*Counsel to The Diocese of Camden, New Jersey*

Dated:  June [●], 2022

**THE TRUST ADMINISTRATOR**

By: _____

Name: _____

4859-3047-0691, v. 1