UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>DIOCESE OF CAMDEN, NEW JERSEY,<br><br>Debtor. | Case No. 20-21257<br><br>Chapter 11<br><br>Jerrold N. Poslusny, Jr. |

## MEMORANDUM DECISION

### JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge

The issue before the Court stems from a plan confirmation discovery dispute arising between the Diocese of Camden, New Jersey (the "Debtor"), and Official Committee of Tort Claimant Creditors (the "Committee" and, together with the Debtor the "Plan Proponents") on one hand and certain insurance companies[1] on the other. The Plan Proponents objected to many of the Insurers' discovery requests on various grounds, including that the Insurers lack standing to object to confirmation of the Plan (defined below), which issue the Court considers in this decision. For the reasons discussed herein, the Court finds that the Insurers do have standing to object to confirmation.

### BACKGROUND

The Plan Proponents filed the Eighth Amended Disclosure Statement (the "Disclosure Statement") and Eighth Amended Plan (the "Plan"), along with trust distribution procedures (the "TDP") on June 1, 2022, and the Court approved the Disclosure Statement on June 20. Dkt. Nos. 1724, 1725, 1818. In relevant part, the Plan calls for the creation of a trust (the "Trust") and

---

[1] These include Certain Underwriters at Lloyd's, London and Certain London Market Companies ("LMI"); Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, Federal Insurance Company and Illinois Union Insurance Company ("Century"); Interstate Fire & Casualty Company ("Interstate"); Granite State Insurance Company, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh PA.,("AIG," collectively, the "Insurers").

requires the Debtor and other non-debtor Catholic entities (the "OCE") to contribute $87.5 million. Dkt. No. 1724. The Plan also requires the Debtor and the OCE to assign certain rights and proceeds in insurance policies (the "Policies") to the Trust. Generally, these Policies are excess indemnity above a self-insured retention ("SIR") policies, which require the insured to defend any claims, and to pay a deductible towards any judgment against them, and then have the right to seek reimbursement from the applicable insurer if the judgment exceeds the deductible.[2] However, they also afford the Insurers certain rights including the right to participate in the defense.

Generally, under the Plan all abuse claims (the "Claims") will be assigned to the Trust and the only recovery available will be from assets of the Trust, including any potential recoveries from the assigned Policies. Under the Plan and the TDP, there will be a Trust Advisory Committee (the "TAC"), appointed by members of the Committee. Dkt. No. 1724. The initial abuse claims reviewer (the "Claim Reviewer") is also appointed by the Committee. Dkt. No. 1724 at 147; Dkt. No. 2089. The Committee has already selected the Trust Administrator, Dkt. No. 2089, who will have the authority to make distributions to the Claimants and, subject to consultation with the TAC, to remove the Abuse Claims Reviewer and appoint a new one. Id. at 158, 227. Additionally, a "Neutral," will be selected by the Trust Administrator after consultation with the TAC, and shall make the Verdict Value Assessment, determining the value of each claim. Id. at 243. Under the Plan and the TDP, the Trust would be assigned the right to pursue the Insurers to recover on behalf of Claimants and their Claims after a stipulated judgment has been entered. Id.

The confirmation hearing is currently scheduled for the end of August and a scheduling order has been entered which required the parties to serve written discovery no later than June 24, 2022, with responses due June 30. Dkt. No. 1845. The Plan Proponents objected to much of the discovery sought by the Insurers on various grounds resulting in the parties filing several letters

---

[2] Century asserts that the policies it issued are somewhat different and create a contractual duty for Century to defend claims brought against the Debtor that fall within its coverage period.

2

with the Court. See, e.g., Dkt. Nos. 1926, 1928, 1933, 1934. The Plan Proponents' primary basis for not providing discovery is their argument that the Insurers have only limited standing to object to confirmation of the Plan and therefore are not entitled to discovery concerning other issues. Century and Interstate filed a letter brief (the "Letter Brief") arguing that the Insurers' standing is not limited, and that they are entitled to discovery on all section 1129 confirmation elements. Dkt. Nos. 1980-82. Most of the other Insurers filed joinders or other documents in support of the Letter Brief. See Dkt. Nos. 1994, 1999, 2040. Broadly, the Insurers argue that confirmation of the Plan would cause them injury because: (a) the Policies are executory and the Plan improperly assigns them without the Debtor first assuming them, and that any such assignment would be in violation of the anti-assignment clauses; (b) the Plan alters the Debtor's obligations under the contracts and strips the Insurers' contractual rights and defenses to coverage under the Policies; and (c) the Plan violates rights the Insurers hold under the Policies to have matters resolved by jury trial, and places such decisions in the hands of the Trust representatives. Dkt. Nos. 1980-82. The Plan Proponents filed a reply (the "Reply Brief") arguing that because the Plan is "insurance neutral," the Insurers have no standing to object to confirmation of the Plan at all, and therefore are not entitled to any further discovery.[3] Dkt. No. 2014. In the alternative, the Plan Proponents argue standing should be limited to issues in which the Insurers have a pecuniary interest, specifically excluding the issues of feasibility, third party releases, the channeling injunction, and good faith. Id. Additional responses were filed by all parties. See Dkt. Nos. 2040, 2044, 2045.

## DISCUSSION

Although this matter stems from a discovery dispute, the Plan Proponents have raised a confirmation issue. Specifically, the Plan Proponents argue that the Plan itself is insurance neutral and seek a determination on that issue. Because a finding of insurance neutrality would perhaps

---

[3] This is a different argument then the Plan Proponents took initially, which argued that the Insurers had standing, but only as to a limited number of issues. See Dkt. No. 1980.

3

leave the Insurers without standing, the Court will discuss this issue first, then consider whether Insurers have standing to obtain discovery more generally.

### A. Insurance Neutrality

"'Insurance neutrality' is a meaningful concept where . . . a plan does not materially alter the quantum of liability that the insurers would be called to absorb." In re Glob. Indus. Techs., Inc., 645 F.3d 201, 212 (3d Cir. 2011) (citing In re Combustion Eng'g, Inc., 391 F.3d 190, 218 (3d Cir. 2004), as amended (Feb. 23, 2005)). Insurance neutrality requires that a plan "neither increase[] the insurers' pre-petition obligations nor impair[] their pre-petition contractual rights under the subject insurance policies." Id.

The Plan Proponents appear to seek a summary judgment ruling that the Plan is insurance neutral, however, they have not filed a motion seeking such relief. As noted, this is a discovery dispute, in which the Plan Proponents turned over only a portion of the discovery sought by the Insurers, arguing that the Insurers had only limited standing to object to confirmation. See Dkt. No. 1980. In their Reply Brief the Plan Proponents appear for the first time to seek a pre-trial ruling on the issue of insurance neutrality. Dkt. No. 2014.

The Court will not consider a motion for summary judgment clothed in a response to a discovery dispute. The Scheduling Order for confirmation is already truncated, allowing only approximately twelve weeks for the Court to consider all discovery disputes and motions in limine, and for the parties to prepare for the confirmation hearing. Dkt. No. 1845. Moreover, making such a determination without a motion is procedurally improper under Federal Rules of Bankruptcy Procedure ("Rule") 9014(c) and 7056, particularly in this case. While the Court has been amendable to certain informalities related to discovery issues given the shortened schedule, it will not do so with regard to summary judgment and in particular with the issue of insurance neutrality. If the Plan Proponents intend to pursue such a determination, they must file a formal motion,

4

allowing adequate time for all parties to fully brief the issue. Therefore, to the extent the Plan Proponents seek a decision on the issue of insurance neutrality, it is denied without prejudice.

B. <u>Standing</u>

To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's Constitutional requirements; (2) federal court prudential standing requirements; and (3) the "party in interest" requirements under Bankruptcy Code section 1109(b). <u>In re Old Carco LLC</u>, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013) (citing <u>Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)</u>, 677 F.3d 869, 884 (9th Cir. 2012)); <u>In re Saratoga & N. Creek Ry., LLC</u>, 635 B.R. 581, 602–03 (Bankr. D. Colo. 2022). A party seeking constitutional standing must demonstrate an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent," and that such injury "fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." <u>In re Glob. Indus. Techs., Inc.</u>, 645 F.3d at 210 (citing <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990)). This standard is "very generous" and can be met as long as the party alleges a "specific, 'identifiable trifle' of injury," or a "personal stake in the outcome of [the] litigation." <u>Id.</u> (citing <u>Bowman v. Wilson</u>, 672 F.2d 1145, 1151 (3d Cir.1982); <u>The Pitt News v. Fisher</u>, 215 F.3d 354, 360 (3d Cir. 2000)). Prudential standing merely requires the party raise its own legal rights and cannot rest their claim on the legal rights or interests of third parties. <u>In re Quigley Co., Inc.</u>, 391 B.R. 695, 702 (Bankr. S.D.N.Y. 2008) (citing <u>Warth v. Seldin</u>, 422 U.S. 490 (1975)); <u>Singleton v. Wulff</u>, 428 U.S. 106, 113–14 (1976). The doctrine of prudential standing is applied on an issue-by-issue basis. <u>Id.</u> at 705; <u>In re Fencepost Prods., Inc.</u>, 629 B.R. 289, 298 (Bankr. D. Kan. 2021). Finally, a party must demonstrate statutory standing under section 1109(b), which provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this

chapter." 11 U.S.C. § 1109(b). The list of potential parties in interest in section 1109(b) is not exclusive. On the contrary, that section "has been construed to create a broad right of participation in Chapter 11 cases." Glob. Indus. Techs., 645 F.3d at 210 (citing Combustion Eng'g, 391 F.3d at 214 n.21). The Third Circuit has adopted the standard that a party in interest is "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." Id. (quoting In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir.1992)). The Third Circuit further stated that any "parties in interest may object to confirmation of a plan." Id. (citing 11 U.S.C. § 1128(b)). As such, the test to determine who is a party in interest is at least as broad as the test to determine who has standing. See id. Therefore a "party in interest" under section 1109 must satisfy the general requirements of the standing doctrine, and show a specific injury that is traceable to the plan to be confirmed. Quigley, 391 B.R. at 703.

However, standing under Article III of the Constitution is evaluated on an issue-by-issue basis. In re Congoleum Corp., 414 B.R. 44, 56 (D.N.J. 2009); Fencepost Prods., 629 B.R. 289 ("Doctrine of prudential standing is applied on issue-by-issue basis."); In re Pittsburgh Corning Corp., 417 B.R. 289, 315–16 (Bankr. W.D. Pa. 2006) ("Pittsburgh I"); In re Tonopah Solar Energy, LLC, 2022 WL 982558, at *7 (D. Del. 2022); Quigley, 391 B.R. at 703–04; In re Motors Liquidation Co., 430 B.R. 65, 92 (S.D.N.Y. 2010). As a result, courts have found that, although "[a] party in interest may object to confirmation of a plan, 11 U.S.C. 1128(b), it cannot challenge portions of the plan that do not affect its direct interests." Quigley, 391 B.R. at 703 (citing In re Orlando Inv., L.P., 103 B.R. 593, 596–97 (Bankr. E.D. Pa. 1989) (objectors could not challenge plan releases that only affected other interest holders)); In re Johns–Manville Corp., 68 B.R. 618, 623 (Bankr. S.D.N.Y. 1986) ("[N]o party may successfully prevent the confirmation of a plan by raising the rights of third parties who do not object to confirmation."), aff'd, 78 B.R. 407 (S.D.N.Y.1987), aff'd sub nom. Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.), 843

F.2d 636, 644 (2d Cir.1988)); In re Simplot, 2007 WL 2479664, at *10 (Bankr. D. Idaho 2007) (limiting standing of entity in which debtor owned stock to specific issues and rejecting standing to raise other issues); Greer v. Gaston & Snow (In re Gaston & Snow), 1996 WL 694421, at *7 (S.D.N.Y. 1996) (creditor, who did not allege that he would receive more under a Chapter 7 liquidation than under the plan cannot argue that the plan violated the "best interest of the creditors" test as to other creditors); In re Tascosa Petroleum Corp., 196 B.R. 856, 863 (D. Kan. 1996) (class 5 creditor could not assert rights of class 4 creditors in objecting to plan); In re Evans Prods. Co., 65 B.R. 870, 874 (S.D. Fla. 1986) (affiliated debtors lacked standing "to raise the rights of wrongly classified creditors as a means to attack the overall reorganization plan").

Therefore, in order to determine whether the Insurers have standing to object to confirmation of the Plan at all, "the question is simply whether [the Insurers] have legally protected interests that could be affected by the [Plan]." Glob. Indus. Techs., 645 F.3d at 212. The Court has already determined that it will not consider insurance neutrality as part of a discovery dispute, and therefore the Insurers have standing to object to the Plan on the grounds that the Plan would affect their rights under the Policies, i.e., that it is not insurance neutral. However, because standing is "evaluated on an issue-by-issue basis," the Insurers have standing to raise issues as to the Plan only to the extent it affects their rights and obligations, Congoleum, 414 B.R. at 56, and lack standing to object to confirmation as to issues that affect only third parties. Pittsburgh I, 417 B.R. at 316. Therefore, it is necessary to review the parties' arguments as to each issue to determine the extent of the discovery requests which relate to areas which affect the Insurers' rights and obligations.

The Insurers seek discovery related to: (1) the assignment of the Insurance Contracts, including the extent of the rights and obligations being assigned; (2) issues regarding the Plan and the Trust, including the proposed makeup of the Trust, the extent of independence of the Trust

7

Administrator and the Neutral, and the precise procedures delineating all parties right and ability to challenge the Neutral's verdict value or otherwise proceed in State Court; (3) the feasibility of the Plan, (4) the good faith of the Debtor with regard to the formulation and drafting of the Plan, negotiating the settlement agreement with the Committee (the "Committee Settlement") and the abandonment of the previous settlement with the Insurers (the "Insurance Settlement");[4] (5) the injunction and release of third parties, including the contributions being made by released parties; (6) solicitation and voting on the Plan, and the treatment of particular classes of creditors. Dkt. No. 1980. The Plan Proponents argue, as an alternative to the Plan being insurance neutral, that the Insurers have no standing to challenge feasibility, the injunction and releases of third parties, nor the issue of good faith. Dkt. No. 2014. Additionally, the Plan Proponents argue that the Insurers standing should be limited to whether: (1) rights under the Policies can be assigned without consent; (2) the Policies are executory contracts; and (3) the Plan is Insurance Neutral.[5] See Dkt. No. 1980 (citing Dkt. Nos. 1926, 1751).

In this case, the Insurers make several arguments why they have standing to object to confirmation. Initially, they point to several clauses in the Plan and the TDP which they argue impact their rights and cause them injury. For example, the Plan assigns the Policies to the Trust. Dkt. No. 1724. However, the Insurers argue the Policies contain material obligations yet to be performed by the Debtor, including the duty to administer and defend any claims, provide the Insurers with notice, records, cooperation, and opportunity to associate in the defense of claims. Dkt. No. 1661. The Insurers argue that these obligations make the Policies executory and ineligible

---

[4] Prior to reaching the Committee Settlement, the Debtor filed a motion for approval of the Insurance Settlement, which is still pending. Because the two settlements contain mutually exclusive terms, the Debtor withdrew the proposed plan that incorporated the Insurance Settlement and confirmation of the Plan includes a request for approval of the Committee Settlement.

[5] The Plan Proponents have made this argument in the past, it is not clear from their most recent filings, whether they still concede the Insurers have standing to challenge these three aspects.

8

for assignment without assumption. Additionally, the Plan includes provisions which state that the Insurers retain all defenses to coverage:

> except any defense regarding or arising from the Insurance Assignment, but confirmation or effectuation of this Plan shall not trigger any coverage defense, or give rise to any additional coverage defense, that did not exist prior to the Debtor's filing for bankruptcy or Plan Confirmation, and no coverage defenses are created by the Debtor's bankruptcy or the negotiation, solicitation, or confirmation of the Plan, or the terms thereof, including the treatment of, or protections afforded to any Covered Party or Settling Insurer under this Plan.

Dkt. No. 1724 Art. 7.8.1.2. This contrasts somewhat with the TDP, which contains provisions indicating that all defenses of the Insurers are preserved, "except as otherwise provided in the Plan." Dkt. No. 1724 Art. 9(v). The Plan also calls for this Court to determine the validity of the assignments, and whether and to what extent the assignment affects any of the Insurers' coverage defenses. Id. Art. 7.8.2.1.

Courts have found that conflicting or inconsistent language of this kind can create grounds for standing to object when it concerns legally protected interests. See Quigley, 391 B.R. at 700. In Quigley, the proposed plan assigned rights to insurance coverage to a trust and included language that all of the insurers' defenses to coverage under the policies were preserved. Id. at 700. However, the court noted that the proposed plan also included language which would eliminate the coverage defense on the grounds that the policies were assigned in violation of an anti-assignment clause, as well as requiring the confirmation order to include a finding that the Plan did not violate the anti-assignment clause. Id. The Quigley court ruled that this could affect the legally protected interests of the insurers, and thus they had standing to object to confirmation on at those grounds. Id. at 706. Other courts have come to similar conclusions. For example, In re Pittsburgh Corning Corp., 453 B.R. 570, 587 (Bankr. W.D. Pa. 2011) ("Pittsburgh II") the court noted that the proposed plan contained multiple contradictory sections, both using preemptory

language, which seemed to simultaneously preserve and eliminate certain defenses to insurance coverage. The court determined that if the proposed plan seeks to be insurance neutral, the language must follow the Combustion Engineering analysis without qualifications that create ambiguity as to the treatment of the insurers' or the insured's rights, duties and obligations. Id. at 589 (citing Combustion Eng'g, 391 F.3d at 209). If reasonable minds could disagree about the effect the proposed plan would have on the rights of the insurers, that was a sufficient impact on a legally protected right to create grounds to object to a plan as to that issue. See id. Indeed, the Pittsburgh II court found that this ambiguity was sufficient to create a basis for objection on grounds of lack of good faith. See id.

The Court agrees with the rationale of these decisions and concludes that the Insurers have made non-frivolous allegations that the Plan and the TDP contain ambiguous language at best, that could result in the Insurers being stripped of rights and defenses they hold under the Policies, which are legally protected interests. Further, that the assignment of these Policies might not be permitted under the Bankruptcy Code, or state law, and that confirmation of the Plan could further threaten legally protected interests of the Insurers.

Similarly, the Insurers argue that the Trust itself is subject to undue influence from the Committee, given that the Committee appoints the TAC, the Trust Administrator, and that those two parties select the Neutral and ultimately every aspect of determining the value of the claims which will be used to set the amount owed by Insurers. See Dkt. Nos. 1980-82. The Court has previously raised concerns as to how these Verdict Value Assessments will be treated if the Insurers choose to challenge them in a court of competent jurisdiction, whether the burden of proof will be altered given that the Trust, acting on behalf of the Debtor, has essentially settled the claim, and now only seeks reimbursement. There are several aspects to the operation of the Plan and TDP which are not specified or are ambiguous, including the extent of the Debtor's involvement in

challenging the claims, and precisely how much of the Debtor's and the OCE contribution will be applied to their deductibles, and whether these amounts are sufficient to cover their contractual obligations, given that the same pool of funds will be used to pay for the Trust's operations, legal challenges, etc.

In Quigley, the court considered similar arguments by the insurers that the trust procedures in that case circumvented the insured's duty under the policies to cooperate with the insurers. 391 B.R. at 706. In that case, the policies required the insured to allow the insurer to control the defense and cooperate with the insurer, including in some cases, the right to accept and reject settlement offers. The court found that such rights, duties and obligations were legally protected interests that the proposed plan could affect and as such, the insurers had standing, and were entitled to discovery on the issues related to the structure and functioning of the trust. Id. This Court agrees with Quigley, and finds that the structure and operation of the Trust could potentially impact the legally protected interests of the Insurers.

As such the Court finds that the Insurers have standing to challenge confirmation on these grounds, the rights and duties of the parties under the Policies are legally protected interests, such that the Insurers have the right to present their case at confirmation, and therefore are entitled to discovery on the issues which threaten their legally protected interests. In this case, those issues are: assignment of the Policies; good faith; and the structure of the Trust. Similarly, the Insurers are entitled to discovery on the issue of feasibility, although likely limited in scope, because they have filed a complaint seeking an administrative claim and so the ability of the Debtor to fund the Plan is relevant to the Insurers' legally protected interests.

However, and for the same reasons, the Insurers have not demonstrated that they have any legally protected interest related to the proposed injunction and releases under the Plan, or the solicitation and voting procedures of the Plan. The injunction would not bar any claims the Insurers

11

may have against the released parties, and therefore cannot impact the legally protected interests of the Insurers. As noted, a party cannot rest its claim on the legal rights or interests of third parties. Quigley, 391 B.R. at 702 (citing Wulff 428 U.S. at 113-14). The Insurers are not voting creditors, and their claims are not impaired and therefore and have no legally protected interest in the classification, treatment, or solicitation of other creditors, nor do they have any interest in whether other creditors are barred from bringing claims against the Debtor in the future.

## CONCLUSION

The Court will not consider a summary judgment request of a confirmation issue through a discovery dispute. However, the Court does find that the Insurers have standing and therefore are entitled to discovery on issues which threaten to impact their legally protected interests, including the assignment of the Policies, the structure and functioning of the Trust, the good faith and feasibility of the Plan, but not to any issues which relate only to the rights of third parties such as the Plan's proposed injunction or third party releases, or its solicitation or voting procedures. This decision addressing only the issue raised by the parties but should be used as a guide should any additional disputes arise.

Dated: August 12, 2022

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE