| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1 |
| **LOWENSTEIN SANDLER LLP** <br> Jeffrey D. Prol, Esq. <br> Lynda A. Bennett, Esq. <br> Michael A. Kaplan, Esq. <br> Brent Weisenberg, Esq. <br> Colleen M. Restel, Esq. <br> Rasmeet K. Chahil, Esq. <br> One Lowenstein Drive <br> Roseland, New Jersey 07068 <br> Telephone: (973) 597-2500 <br> Email: jprol@lowenstein.com <br> Email: lbennett@lowenstein.com <br> Email: mkaplan@lowenstein.com <br> Email: bweisenberg@lowenstein.com <br> Email: crestel@lowenstein.com <br> Email: rchahil@lowenstein.com <br><br> *Counsel to the Official Committee of Tort Claimant Creditors* |

| | |
|---|---|
| In re: | Chapter 11 |
| THE DIOCESE OF CAMDEN, NEW JERSEY, | Case No. 20-21257 (JNP) |
| Debtor. | |

**MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANT CREDITORS (I) COMPELLING INTERSTATE FIRE & CASUALTY COMPANY, ALLIANZ REINSURANCE AMERICA, INC., AND INSURANCE SERVICES OFFICE TO PROVIDE DISCOVERY AND TESTIFY REGARDING THE BREACH OF CONFIDENTIALITY, (II) REQUIRING ISO TO DELETE ABUSE CLAIM INFORMATION, (III) HOLDING INTERSTATE IN CONTEMPT OF COURT, AND (IV) REQUIRING INTERSTATE TO PAY THE COMMITTEE'S ATTORNEYS' FEES**

The Official Committee of Tort Claimant Creditors (the "Committee") of The Diocese of Camden, New Jersey (the "Debtor" or the "Diocese") files this motion (this "Motion") for entry of an Order, substantially in the form attached (the "Proposed Order"), (i) compelling Interstate Fire & Casualty Company ("Interstate"), Allianz Reinsurance America, Inc., d/b/a Allianz

Resolution Management ("AZRA") and Insurance Services Office ("ISO") to provide discovery and testify regarding the breach of confidentiality regarding abuse survivor proofs of claim ("Abuse Claims"), (ii) enjoining AZRA and ISO from accessing, using, or sending the Abuse Claim information while this Motion is pending, other than to comply with an Order on item (i); requiring ISO to delete the Abuse Claim information in its possession, (iii) holding Interstate in contempt of court, and (iv) requiring Interstate to pay the Committee's attorneys' fees in connection with this Motion.

## PRELIMINARY STATEMENT

1. In this case, protecting the interests of sexual abuse survivors ("Survivors") has been paramount, including the need to maintain the confidentiality of Survivor names. The Court put into place a detailed confidentiality protocol to protect that sensitive information when setting a bar date and approving a proof of claim form for Abuse Claims. Survivors were reassured, when completing the proof of claim forms, that their information would be kept confidential following those protocols. However, Interstate did not take seriously the requirements of that Court Order and gave Survivor claim information, including Survivor names, to a third party (AZRA) that gave the information to another third party (ISO), that may have given access to the information to *additional* third parties. Not only did Interstate fail to inform the parties prior to the disclosure, Interstate waited two years after receiving the Abuse Claims to disclose that they have been provided to third parties.

2. Making matters even worse, ***Interstate has improperly disclosed survivor names that it has obtained in other diocesan cases***, violating multiple confidentiality orders. Interstate filed similar disclosure notifications in the Diocese of Rockville Centre and the Diocese of Syracuse, stating that it also provided confidential abuse claims in those cases to AZRA and ISO.

Interstate has facilitated the creation of an illicit nationwide claims database containing improperly disclosed confidential claimant information. The breadth of Interstate's improper and violative disclosures and lack of regard for court orders is astounding.

3. Interstate's disregard for Survivor confidentiality not only harms the Survivors in this case, but also calls into question the integrity of the system for all sexual abuse bankruptcies. A foundation of these cases is keeping Survivor information confidential, so that Survivors are not dissuaded from filing claims or further traumatized from having their names made public. Attorneys have been sanctioned for violating such confidentiality orders and earlier this year, a claims agent in a diocesan case was discharged for inadvertently posting survivor names on the docket. Interstate's egregious actions warrant similar relief from this Court.

4. "[T]he bankruptcy process as it was intended to function under the Bankruptcy Code quickly falls apart when courts cannot depend on the integrity, ethics, and honesty of litigants and professionals who have accepted roles of great responsibility and trust." *In re Roman Cath. Church for Archdiocese of New Orleans*, No. 20-10846, 2022 WL 7204872, at *2 (Bankr. E.D. La. Oct. 11, 2022). This is particularly true in cases involving sexual abuse and the resulting trauma that Survivors face. Interstate has not acted in accordance with the trust that was placed in it by the parties, the Court, and Survivors. The Court should hold Interstate in contempt and order the remedial measures and sanctions requested by the Committee.

**JURISDICTION, VENUE, AND STATUTORY PREDICATES**

5. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey*, entered on July 23, 1984, and amended on September

-3-

18, 2012 (Simandle, C.J.). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

6. The predicates for the sought relief are found in Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 1009, 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

7. On October 1, 2020, the Diocese commenced the above-captioned bankruptcy case in this Court. No trustee or examiner has been appointed here and the Diocese continues to operate its business and manage its properties as a debtor-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code. On October 23, 2020, the Office of the United States Trustee appointed the Committee under Section 1102(a)(1) of the Bankruptcy Code.

8. The Diocese filed its *Motion for Entry of an Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (Dkt. 74) ("Bar Date Motion") on October 14, 2020. The Bar Date Motion included a request that the Court approve a protocol for maintaining the confidentiality of Survivors, "to protect the privacy of abuse victims" while also "ensur[ing] that sufficient information regarding their claims can be collected and analyzed." (Dkt. 74-1 ¶ 28.) The Diocese was "sensitive to the privacy and other concerns which might otherwise impede an Abuse Claimant's willingness to assert a claim against the Diocese's estate" and its goal was to "provid[e] a claim submission process that will not discourage Abuse Claimants from coming forward and asserting their claims." (*Id*. ¶ 35.)

9. The Diocese's proposed protocol in the Bar Date Motion would limit those who could receive and review to certain "Authorized Parties." (*Id*. ¶ 34.) The Diocese proposed that "any insurance company that provided insurance or reinsurance that may cover the claims

described in any Abuse Proof of Claim, together with their respective successors, reinsurers and counsel," but only "[u]pon the consent of the Diocese," could be an Authorized Party. (*Id.*)

10. The insurers in this case objected to this procedure. Century Indemnity Company ("Century") argued "that insurers in this case have a significant interest in evaluating the claims at issue, and Century and other insurers must have direct access to all proofs of claim." (Dkt. 337 at 16.) Century further argued that the Diocese should not have consent rights and that all insurers be considered "Authorized Parties" and automatically be provided with the Abuse Claims. (*Id.* at 15–16.) Finally, Century complained that the Bar Date Motion did not "provide for the use of experts to evaluate the claims" and asked that "the Bar Date Order include experts and outside consultants in the definition of "Authorized Parties." (*Id.* at 16.) Interstate filed a joinder specifically joining in Century's objection regarding the confidentiality procedures. (Dkt. 345 ¶ 5 ("Interstate agrees with, and joins in, part III of Century's Objection regarding the overbreadth of the confidentiality procedures proposed by the Diocese.").)

11. Ultimately, the entered *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (Dkt. 409) ("Bar Date Order") provided that the insurers would be provided with all Abuse Claims alleging abuse during their policy periods, "together with their respective successors, reinsurers, counsel, experts and consultants." (Dkt. 409 ¶ 15(iii)(iv).)

12. The insurers continued to object to this language in the Bar Date Order and requested access to **all** the Abuse Claims, regardless of whether the abuse occurred within the insurer's policy period. Counsel for Interstate went so far as to say that "such unrestricted access has occurred in all but one other Diocesan bankruptcy. There has never been even a hint (of which I am aware) that any of the parties in those other proceedings breached confidentiality."

(Certification of Michael A. Kaplan ("Kaplan Cert."), dated October 3, 2023, Ex. A.) The Committee and the Diocese eventually agreed to allow all insurers to access all Abuse Claims, with the remaining safeguards of the Bar Date Order in place. (*See* Dkt. 605.) And now Interstate has breached those confidentiality requirements, despite touting how well they supposedly have been followed.

13. The Bar Date Order provides that the Abuse Claims cannot be provided to anyone else besides the Bishop, officers of the Diocese, counsel to the Diocese, Committee, and Trade Committee, members of the Committee (in redacted form), any appointed mediator, any future claims representative, any trustee appointed to administer payments to Survivors, the U.S. Trustee, and "any person with the express written consent of the Diocese and the Committee, upon 10 business days' notice to the affected Survivor Claimant(s) and the affected Survivor Claimant(s)' attorney, if known." (Dkt. 409 ¶ 15(iii)(viii).) Further, under the Bar Date Order, no one, not even Authorized Parties, could obtain copies of any Abuse Claim prior to the execution of the Confidentiality Agreement attached as Exhibit C to the Bar Date Order ("Authorized Party Agreement"). (*Id*. ¶ 15(iv).)

14. Similarly, the claim form for Abuse Claims tells Survivors:

> Unless you indicate below, your identity and this Survivor Proof of Claim, will be kept ***confidential*** under seal, and outside the public record. However, information in this Survivor Proof of Claim will be confidentially provided, pursuant to Court-approved guidelines, to such persons necessary to adjudicate the claim under Section 502 of the Bankruptcy Code including the Debtor, the Committee, the Office of the United States Trustee, any unknown claims representative appointed in the bankruptcy case, insurers of the Diocese including authorized claims administrators of such insurers and their reinsurers, and each of the respective counsel, retained advisors and experts of the foregoing persons and any special arbitrator, mediator, or claims reviewer appointed to review and resolve Survivor Proof of Claims, as trustee, or functional equivalent thereof, appointed to administer payments to holders of

> Survivor Proof of Claims, and confidentially to such other persons that the Court determines need the information in order to evaluate the claim.

(Dkt. 409-1 at 28.)

15. Interstate ignored these requirements. On September 28, 2023, Interstate disclosed that it provided Abuse Claims information to its claims handler, AZRA, which provided the information to a third party, ISO. (Dkt. 3385.) ISO is not an Authorized Party under the Bar Date Order and Interstate never informed the Diocese or the Committee that it planned to disclose Abuse Claims information to AZRA or ISO.[1] Interstate did not specify when this disclosure occurred or when it became aware of the disclosure (or if it knew of the disclosure all along). One of the Authorized Party Agreements attached to Interstate's Notification of Disclosure is dated September 15, 2023, meaning that Interstate waited at least **two weeks** before making this disclosure to the Court and the parties. (*Id.* at 12.)

16. Interstate also disclosed that it provided information regarding confidential abuse claims in at least two other bankruptcy cases, the Diocese of Rockville and the Diocese of Syracuse. (*See* Kaplan Cert., Exs. B & C.) In both cases, Interstate filed substantially similar Notifications of Disclosure stating that it disclosed abuse claim information to AZRA and ISO for 178 claims and 101 claims, respectively. (*See id.*) For at least two claimants in the Rockville case, another insurance company accessed confidential claim information using ISO's database. (*See* Kaplan Cert., Ex. B at 2.)

17. According to Interstate's Notifications of Disclosure, ISO is a vendor that Interstate contracts with to access a claims database called ClaimSearch. Interstate did not engage ISO for

---

[1] While the disclosure to AZRA may have been permissible under the Bar Date Order, this should have been disclosed and an Authorized Party Agreement should have been signed by AZRA.

ISO to provide expert, advisory, consulting, or any type of unique services to Interstate. Instead, it used ISO to upload claims to check them against a claims database used by 95 percent of property/casualty insurers, according to ISO's website.[2] While Interstate's Notification in this case states that no "matching reports" were sent to any insurers or other entities participating in the database, it is not clear whether anyone else accessed the Abuse Claims information on their own. ISO should be required to provide a certification with this information so that the Committee and all parties know which third parties have information on the Abuse Claims and what was done with the information, so that further remedial measures, if necessary, can be taken.

18. Regardless of who accessed it, the fact that insurers have been creating a nationwide database with highly sensitive information—unbeknownst to Survivors—is highly concerning. Even setting aside that Interstate has violated Court Orders in multiple cases, gathering this information and putting it into a database for all insurers to access presents tremendous security risks and concerns, especially given the heightened cyber risk environment that exists today with respect to such aggregated information.

## RELIEF REQUESTED

19. Under Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 9014 and 9020, the Committee seeks the entry of an order:

   i. Requiring AZRA to provide to the Diocese and the Committee the Abuse Claim information that was sent to ISO, including the claimants' names;

   ii. Requiring Interstate to produce a summary of all bankruptcy cases ("Other Bankruptcy Cases") (a) in which it is a party; (b) the claimants are sensitive populations similar to the Survivors in this case, including but not limited to victims of sex abuse, opioid victims, medical device malfunction victims, and cancer agents; and (c) where Interstate has similarly been requested to maintain the confidentiality of such claimants;

---

[2] *See* Verisk Analytics, Inc., *ClaimSearch*, https://www.verisk.com/insurance/products/claimsearch-intelligence-platform/ (last visited Oct. 3, 2023).

iii. Requiring a designee of Interstate to sit for a deposition, in person, and be prepared to testify about the disclosure, including the following topics: the sources and errors that led to the disclosure, all parties to which Interstate has disclosed any information from the Abuse Claims, the relationship between Interstate and AZRA, the relationship between Interstate and ISO, remedial measures taken to address the disclosure, the controls that were in place at the time of the disclosure, what controls have subsequently been deployed or what controls Interstate will deploy to prevent similar disclosures from occurring, and whether similar disclosures to AZRA or ISO have occurred in the Other Bankruptcy Cases;

iv. Requiring a designee of AZRA to sit for a deposition, in person, and be prepared to testify about the disclosure, including the following topics: the sources and errors that led to the disclosure, all parties to which AZRA has disclosed any information from the Abuse Claims, the relationship between Interstate and AZRA, the relationship between AZRA and ISO, remedial measures taken to address the disclosure, the controls that were in place at the time of the disclosure, what controls have subsequently been deployed or what controls AZRA will deploy to prevent similar disclosures from occurring, and whether similar disclosures to ISO have occurred in the Other Bankruptcy Cases;

v. Requiring a designee of ISO to sit for a deposition, in person, and be prepared to testify about the disclosure, including the following topics: the sources and errors that led to the disclosure, all parties to which ISO has disclosed any information from the Abuse Claims or that have accessed Abuse Claim information from its database, the relationship between Interstate and ISO, the relationship between AZRA and ISO, remedial measures taken to address the disclosure, the controls that were in place at the time of the disclosure; and what controls have subsequently been deployed or what controls ISO will deploy to prevent similar disclosures from occurring;

vi. Requiring ISO to file a sworn affidavit disclosing the following with regard to any instance of access of Abuse Claim information from its database: the date of access, the name of the accessing party, the specific information accessed, and whether the information was downloaded or printed from the database.

vii. Requiring representatives of Interstate, AZRA, and ISO to appear live for a hearing before the Court to testify about the topics (iii) through (v) above;

viii. Requiring Interstate to file a list of the Other Bankruptcy Cases, along with a proposed disclosure statement regarding the breach of confidentiality;

ix. Enjoining AZRA and ISO from accessing, using, or sending the Abuse Claim information while this Motion is pending, other than to comply with the above items (i) through (vii);

x. Requiring ISO, following compliance with the above (and any other discovery requested by the parties or ordered by Court), to delete or otherwise destroy all

        Abuse Claim information in its possession and to file a certification that it has done so;

    xi.    Holding Interstate in contempt of Court; and

    xii.    Requiring Interstate to pay the Committee's fees incurred in connection with this Motion.

20.    The relief sought is consistent with the measures ordered by the court in the Diocese of Norwich, which involved a similar situation of an improper disclosure of survivor information. (*See* Kaplan Cert., Ex. D.)

## ARGUMENT

### A. Confidentiality for Sexual Abuse Survivors is Paramount, as Recognized by other Courts and in other Diocesan Cases.

21.    Courts across the country recognize the importance of shielding personally identifying information about survivors of childhood sexual abuse from the public. *See, e.g.*, *Hearts with Haiti, Inc. v. Kendrick*, No. 2:13-39, 2013 WL 5724176, at *2 (D. Me. Oct. 21, 2013) (citing *Curry v. McNeil*, No. 3:08cv539/LAC/EMT, 2009 WL 395247, at *2 (N.D. Fla. Feb. 17, 2009); *Survivor v. Our Kids of Miami-Dade/Monroe, Inc.*, No. 11-24611, 2016 WL 950952, at *12 (S.D. Fla. Mar. 7, 2016) (noting that the "Court issued dozens of seal orders as part of an effort to prevent the re-victimization of [a child survivor of abuse]"). New Jersey also recognizes survivors' rights to privacy, and provides that a survivor's name, address, and identity in a state court lawsuit are not to be in any public record. *See* N.J.S.A. 2A:61B-1(f).

22.    In diocesan bankruptcy cases, survivor names are routinely kept confidential in light of the survivors' rights to privacy. *See, e.g.*, *In re Diocese of Buffalo*, 642 B.R. 881, 884 (Bankr. W.D.N.Y. 2022) (denying debtor's request to share abuse proofs of claim with accused clergyman, an independent investigator, the Diocesan Review Board, and the District Attorney based on the survivor's right to privacy). Violations of these confidentiality orders have led to

-10-

sanctions. In *In re Roman Catholic Church for Archdiocese of New Orleans*, No. 20-10846, 2022 WL 7204872 (Bankr. E.D. La. Oct. 11, 2022), *aff'd*, No. 22-4101, 2023 WL 4105655 (E.D. La. June 21, 2023), the court sanctioned an attorney who violated a protective order and disclosed the identity of a priest, details of sexual abuse allegations made against that priest, and the individual who alleged the abuse. The court assessed monetary sanctions against the attorney of $400,000.00. *Id.*

23. In the Diocese of Norwich bankruptcy, a claims agent inadvertently posted survivor names on the docket, leading to the debtor terminating the claims agent and the claims agent agreeing to pay back all fees to the debtor's estate and waive claims for fees not yet paid, in addition to paying the debtor's, committee's and new claim agent's fees incurred in addressing the inadvertent disclosure. *See In re Norwich Roman Cath. Diocesan Corp.*, No. 2l-20687, Dkts. 1213, 1394 (Bankr. D. Conn.). The United States Bankruptcy Court for the District of Connecticut also required a member of the claims agent's leadership team to appear for a hearing to address, among other things, the sources and errors that led to the disclosure, remedial actions taken, the controls in place at the time of disclosure, and a summary of all bankruptcy cases with a sensitive population in which the agent was serving and was requested to maintain confidentiality. (*See* Kaplan Cert., Ex. D at Dkt. 1121.) Additionally, the Court ordered the agent to file a list of those cases, along with a proposed disclosure statement regarding the breach of confidentiality "to better ensure the integrity of confidential filings both in this Court and other bankruptcy courts across the judiciary." (*See* Kaplan Cert., Ex. D at Dkt. 1177.)

24. As evident from these cases and the measures implemented against parties who do not follow confidentiality orders, the violation of survivor confidentiality is an extremely serious matter.

### B. Interstate Should be Held in Contempt for Violating the Bar Date Order by Providing Abuse Claim Information to Unauthorized Parties.

25. Interstate should be held in contempt for violating the Bar Date Order. Section 105 of the Bankruptcy Code, together with Bankruptcy Rule 9020,[3] allows the bankruptcy court to exercise contempt powers. *In re Lands End Leasing, Inc.*, 220 B.R. 226, 233 (Bankr. D.N.J. 1998); *see also In re Faiella*, No. 05-50986, 2008 WL 1790410, at *6 (Bankr. D.N.J. Apr. 18, 2008) ("A bankruptcy court is vested with the power 'to enforce its subpoenas and orders by the power of civil contempt.'") (quoting *In re Sciaba,* 334 B.R. 524, 526 (Bankr. D. Mass. 2005) (further citations omitted)). The purposes of sanctions in a civil contempt proceeding are to coerce the contemnor into complying with an order of the court and to compensate the harmed party for losses sustained because of the contempt. *Faiella*, 2008 WL 1790410, at *6; *Sciaba,* 334 B.R. at 526.

26. Bankruptcy courts within the United States Court of Appeals for the Third Circuit regularly exercise their contempt power under Section 105(a) to remedy violations of court orders. A court may impose civil contempt sanctions where there is clear and convincing evidence that (1) a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995); *In re Meyers*, 344 B.R. 61, 65 (Bankr. E.D. Pa. 2006). Willfulness is not a necessary element of civil contempt. *Robin Woods, Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir. 1994); *Lands End Leasing*, 220 B.R. at 234.

27. Here, the Bar Date Order is clear: it lists the Authorized Parties that may access Abuse Claims and requires the express written consent of the Diocese and the Committee, upon ten business days' notice to the affected Survivor and the affected Survivor's attorney, to provide

---

[3] Under Bankruptcy Rule 9020, a motion for an order of contempt is governed by Rule 9014. Fed. R. Bankr. P. 9020. Bankruptcy Rule 9014 in turn provides the procedures for requesting relief by motion in contested matters. *See* Fed. R. Bankr. P. 9014.

the Abuse Claims to anyone else. (Dkt. 409 ¶ 15(iii)(viii).) *See Meyers*, 344 B.R. at 65 ("[A] valid order is one whose terms are specific and definite.") (citing *In re Close,* No. 93–17145DWS, Adv. No. 03–0153, 2003 WL 22697825, at *10 (Bankr. E.D. Pa. Oct. 29, 2003)). Additionally, Authorized Parties must sign the Authorized Party Agreement to receive access to the Abuse Claims. The confidentiality protocol in the Bar Date Order is important to protect Survivor privacy interests and was heavily contested by the insurers, including Interstate. Interstate knew of the Bar Date Order and the importance of the confidentiality protocol (as its counsel signed the Authorized Party Agreement on March 11, 2021 and March 15, 2021) yet disobeyed it.

28. ISO is not an Authorized Party and is not a consultant for Interstate, contrary to Interstate's attempts to justify the improper disclosure after the fact. A consultant is a "person qualified to give professional advice or services."[4] Interstate did not retain ISO to provide individualized advice or services; instead, Interstate merely contracts with ISO for access to a claims database. Whether ISO used the information for a "Permitted Use" under the Authorized Party Agreement is irrelevant; the Bar Date Order governs who can access the information, and ISO is not one of those parties. Finally, whether AZRA's agreement with ISO contains confidentiality provisions is similarly irrelevant, as it does not transform ISO into an Authorized Party under the Bar Date Order.

29. Courts in the Third Circuit recognize that "protective orders serve an important function in litigation." *Mains v. Sherwin-Williams Co.*, No. 20-00112, 2022 WL 1443391, at *1 (E.D. Pa. May 6, 2022). Courts routinely find parties and their attorneys in contempt for violating a protective order or sealing order protecting sensitive documents from disclosure. *See, e.g.*, *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982) (upholding contempt finding

---

[4] *Consultant*, Oxford English Dictionary, https://www.oed.com/search/dictionary/?scope=Entries&q=consultant (last visited Oct. 3, 2023).

against expert who disclosed confidential document containing trade secrets); *Mains*, 2022 WL 1443391, at *2 (holding plaintiffs' counsel in contempt for twice filing confidential documents on the docket); *York Group, Inc. v. Pontone*, No. 10–1078, 2014 WL 3811014, at *8 (W.D. Pa. Aug.1, 2014) (holding party in contempt for providing a confidential consulting agreement to counsel in a different case involving some of the same parties). The court in *Mains* noted that the breaches of a confidentiality and protective order "may not have been intentional, but that does not make them any less serious." *Mains*, 2022 WL 1443391, at *5.

30. It is not clear from Interstate's Notification of Disclosure whether its disclosure to ISO, through AZRA, was intentional, but it does not matter. Interstate has engaged in a pattern of violation of similar confidentiality orders in at least two other diocesan cases. Holding Interstate in contempt is appropriate given the seriousness of the confidentiality obligations under the Bar Date Order and Interstate's utter lack of regard for them. Interstate's violations of confidentiality orders in this case and others have harmed hundreds of sexual abuse survivors and undermined the trust that they placed in the bankruptcy process.

C. **The Committee's Requested Relief is Appropriate.**

31. This Court has the authority to impose various types of sanctions in response to civil contempt. *Lands End Leasing*, 220 B.R. at 234; *In re Baker*, 195 B.R. 309, 320 (Bankr. D.N.J. 1996); *cf. Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 567–68 (3d Cir. 2003) (affirming that bankruptcy courts have the equitable power to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain). "Sanctions pursuant to section 105(a) include monetary damages, as well as 'other relief as necessary and appropriate to prevent such abuse.'" *In re Hopkins*, No. 18-28111-ABA, 2019 WL 6357249, at *7 (Bankr. D.N.J. Nov. 19, 2019)

(quoting *In re Suh,* 17-17221-ABA, 2018 WL 2113092, at *9 (Bankr. D.N.J. May 4, 2018) (further citations omitted)). "In determining an appropriate sanction, the court should consider the goals of compensation to the injured party, punishment and deterrence." *In re Hopkins*, 2019 WL 6357249, at *7 (quoting *In Re Glob. Prot. USA, Inc.,* 546 B.R. 586, 631 (Bankr. D.N.J. 2016) (further citations omitted)). "The sanction 'should be tailored to fit the particular wrong." *Id.* (quoting *Glob. Prot. USA,* 546 B.R. at 631) (further citations omitted)).

32. Attorneys' fees may be awarded against a party that is held in contempt, and courts regularly award them. *See York Grp., Inc.*, 2014 WL 3811014, at *6 (citing *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994)). The Third Circuit Court of Appeals recognized in *Robin Woods* that "the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party" and that "the mental state of the violator should not determine the level of compensation due." *Id.*

33. The discovery and testimony sought from Interstate, AZRA, and ISO, the deletion of Abuse Claim information by ISO, and the reimbursement of the Committee's attorneys' fees are an appropriate remedy for Interstate's violation of the Bar Date Order. The relief sought is consistent with ordered in other diocesan cases involving a similar breach of confidentiality.

[*Remainder of this page intentionally left blank*]

**WHEREFORE,** the Committee requests that this Court (i) grant the sought relief in the same form or substantially the same form as the Proposed Order attached, and (ii) grant such other and further relief as this Court deems just and proper.

Dated: October 3, 2023                                   **LOWENSTEIN SANDLER LLP**

/s/ Michael A. Kaplan
Jeffrey D. Prol, Esq.
Lynda A. Bennett, Esq.
Michael A. Kaplan, Esq.
Brent Weisenberg, Esq.
Colleen M. Restel, Esq.
Rasmeet K. Chahil, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Email: jprol@lowenstein.com
Email: lbennett@lowenstein.com
Email: mkaplan@lowenstein.com
Email: bweisenberg@lowenstein.com
Email: crestel@lowenstein.com
Email: rchahil@lowenstein.com

*Counsel to the Official Committee of Tort Claimant Creditors*