**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>DIOCESE OF CAMDEN, NEW JERSEY,<br><br>Debtor. | Case No. 20-21257<br><br>Chapter 11<br><br>Judge: Jerrold N. Poslusny, Jr. |

**OPINION DENYING INSURERS' MOTION
FOR STAY PENDING APPEAL**

The Insurers (as defined in the Motion) filed a motion for stay pending appeal (the "Motion") of this Court's Order confirming (the "Confirmation Order") the Third Modified Eighth Amended Plan of Reorganization (the "Plan"). Because the Insurers have not shown an irreparable harm if a stay is not imposed, and the Plan Proponents (as defined in the Motion) have established a harm to themselves and other parties if a stay were imposed, the Court will deny the Motion.

A.    Background

The Diocese of Camden, New Jersey (the "Debtor") filed a Chapter 11 petition on October 1, 2020 (Dkt. No. 1), and following a protracted and contentious proceeding reached a settlement with the Official Committee of Tort Claimant Creditors (the "Committee"). That settlement resulted in the Plan, which the Court approved by an oral decision on March 14, 2024. The Confirmation Order was entered the next day. Dkt. No. 3684. The Plan calls for the claims of abuse survivors ("Survivor Claims") to be channeled to a trust (the "Trust") to be established on the Effective Date of the Plan. Dkt. No. 3598, Art. 2.2.22. The assets of the Trust will include both cash from the Debtor and the Other Catholics Entities (the "OCE") and their interests in insurance policies (the "Policies") issued by the Insurers. Id., Plan Art. 7. The Survivor Claims for which the Trust may seek recovery from the Insurers will be valued through any method permitted by law, including mediation or arbitration, in which case the mediator or arbitrator would be selected in

1

accordance with the JAMS Rules & Procedures, the AAA Consumer Arbitration Rules or the rules of another national alternate dispute resolution association. TDP § 8(ii).

The Court issued several decisions related to the Insurers' standing during litigation over confirmation of the Plan, ultimately concluding that the Insurers lacked Article III standing related to third-party releases, certain aspects of the Disclosure Statement related to the Plan, voting and solicitation procedures, and classification and treatment of creditors. In re Diocese of Camden, New Jersey, 2022 WL 3369087, at *5 (Bankr. D.N.J. Aug. 12, 2022) Dkt. No. 2226 at 11. In its initial decision denying confirmation (the "First Decision"), the Court also ruled that the Insurers lacked standing to object to the fiduciaries of the Trust and the Trust's internal process for valuing claims, although the Insurers did have standing related to valuing any claims for which the Trust would seek coverage from the Insurers. In re Diocese of Camden, New Jersey, 653 B.R. 309, 357 (Bankr. D.N.J. 2023). Additionally, the Court ruled the Insurers lacked standing to object to the Plan on the grounds that the personal injury attorneys that represented the Survivor Claimants were charging excessive fees. See id. at 361.

Eventually the Plan Proponents filed the Plan, which met all requirements for confirmation and the Court entered the Confirmation Order. The Confirmation Order was stayed for fourteen days pursuant to Rule 3020(e). Dkt. No. 3684. On March 28, 2024, the Court extended that stay until entry of an order related to the Motion. Dkt. No. 3715.

The Plan provides that the Effective Date shall not occur until "the Confirmation Order shall be a Final Order and no stay of the Confirmation Order shall then be in effect." Plan Art. 14.2. The Plan defines a Final Order as one which can no longer be appealed. Id. Art. 2.2.59. The requirement for the Confirmation Order to be a final order can be waived by the Plan Proponents and any Settling Insurer. Id. Art. 14.4. The Insurers filed their appeals on March 26, 2024, and filed the Motion on the next day. Dkt. No. 3701.

The Motion argues the Court erred by: denying the Insurers standing on various issues; approving the third-party releases; stripping the Insurers of rights; and approving assignment of the Policies. Dkt. No. 3701. Further, the Insurers argue they will suffer irreparable harm without a stay, that other parties would not be harmed by a stay, and that a stay is in the public interest. Id.

The Plan Proponents argue that the Insurers do not meet the standard for relief, face no imminent and actual harm from the Plan becoming effective, and granting a stay will severely harm both the Debtor, and Survivors. Dkt. No. 3751. The Insurers' reply generally reiterates their arguments. Dkt. No. 3761. A hearing was held on April 17, 2024 (the "Hearing"), at which all parties appeared and argued.

B. Discussion

Bankruptcy Rule 8007 requires a party to initially seek a stay pending appeal in the Bankruptcy Court. See Fed. R. Bankr. P. 8007(a). The Motion seeks a stay of proceedings while the Insurers' appeals proceed in the District Court pursuant to Bankruptcy Rule 8007(a)(1)(C). In In re Revel AC, Inc., 802 F.3d 558 (3d Cir. 2015), the Third Circuit noted that the following four factors "come into play" when seeking a stay pending appeal:

> (1) whether the appellant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Id. at 568 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The first two factors are the most important in the Court's consideration of a request for a stay pending appeal. See id. (citing Nken v. Holder, 556 U.S. 418, 434 (2009)). The Court should employ a sliding scale approach related to those factors. See id. For example, if the chance of success is low and the likelihood of irreparable injury is also low, a stay should not be granted, but if a movant satisfies the first two factors, the Court should consider the harm to the non-moving parties and the public policy implications. See id. at 569.

*1. Likelihood of Success*

To show a likelihood of success, the Insurers must show "a reasonable chance, or probability, of winning." Revel, 802 F.3d at 568 (quoting Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011)). So, while the Insurers must show that their chances of success are more than negligible, they need not show that it is more likely than not that the appeal will be successful. See id. at 659 (citing Nken, 556 U.S. at 434, Singer Mgmt. Consultants, 650 F.3d at 229).

As discussed above, among the issues the Insurers raise on appeal is the Plan's granting of third-party releases, as well as the Court's decision denying the Insurers standing on several issues related to confirmation of the Plan. Dkt. No. 3701. The Insurers argue that the primary evidence of their potential success on the merits is that these two issues are both currently before the Supreme Court. See Harrington v. Purdue Pharma L.P., 144 S.Ct. 44 (2023); Truck Ins. Exch. v. Kaiser Gypsum Co., 144 S.Ct. 325 (2023). In response, the Plan Proponents argue that the decisions related to confirmation were based on controlling Third Circuit law, with considerable support, that the Supreme Court has not made any decisions, and the Insurers' arguments are speculative at best. Dkt. No. 3751.

The district court in Delaware was recently faced with a similar set of facts, in which a group of insurers sought a stay of a confirmation of a Chapter 11 plan, based, in part, on the plan granting nonconsensual third-party releases. See In re Boy Scouts of Am. & Delaware BSA, LLC, 2023 WL 6442586, at *8 (D. Del. Oct. 3, 2023). In Boy Scouts, the plan called for the insurance policies to be placed in a trust to pay abuse survivors with claims against the debtor. The plan in Boy Scouts is similar to the Plan here, and many of the issues on appeal in that case are similar as well. See id. The court in Boy Scouts discussed Purdue, noting that the Supreme Court had stayed further proceedings until it issued a decision regarding the validity of third-party releases, and

4

found that the "Supreme Court's grant of stay to consider the issue of nonconsensual third-party releases in Purdue signals at least a reasonable chance that Claimants may succeed on their challenge to that aspect of BSA's Plan with respect to their own claims." Id. at *8.

Despite similarities, there are differences between Boy Scouts and this case. For example, in Boy Scouts, certain survivors challenged third-party releases, but the insurers had not. See id. In this case, this Court has ruled that the Insurers lack standing to challenge the granting of third-party releases. Dkt. No. 2226 at 11. However, as the Insurers point out, the issue of the extent of insurer standing is also presently before the Supreme Court. See Truck Ins. Exch., 144 S. Ct. 325. This Court agrees with the reasoning of Boy Scouts, that having these issues before the Supreme Court is sufficient to establish at least a reasonable chance that the Insurers will succeed on appeal.

### 2. Irreparable Harm

The Insurers must show that "irreparable harm is likely [not merely possible] in the absence of [a] [stay]." Revel, 802 F.3d at 569 (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)) (emphasis and brackets in Revel). To demonstrate irreparable harm absent a stay pending appeal, a movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent." Boy Scouts, 2023 WL 6442586 at *8 (quoting Revel, 802 F.3d at 571). The movant must establish a resulting injury "that cannot be redressed by a legal or equitable remedy." Id. (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)). Finally, a purely economic injury generally does not meet the burden. Id.

The Insurers make several arguments as to the irreparable harm that parties will suffer if no stay is imposed. First, the Insurers argue that other parties, including the OCE and the Settling Insurers will be irreparably harmed if a stay is not granted. Dkt. Nos. 3701, 3763. The Insurers argue that without a stay, the Committee will pressure the Debtor to fund the Trust, in violation of the terms of the Plan which, as noted above, requires that the Confirmation Order be final before

5

Plan will become effective. See Plan Art. 2.2.59. The Insurers argue this will harm non-debtor parties, including the Settling Insurers because it violates the specific terms of the Plan, places the Plan in financial peril by requiring payments earlier than expected, and will harm the OCE specifically, as it will require the OCE to contribute funds to the Trust earlier than expected, and they may lose those contributions if the third-party releases are later invalidated. Dkt. Nos. 3701 at 25-27; 3763 at 15-16.

This argument is rejected on several grounds. First, the Insurers lack standing to raise the rights of third party such as the OCE, the Settling Insurers, or other parties in interest. See Diocese of Camden, 2022 WL 3369087, at *2 (citing In re Quigley Co., Inc., 391 B.R. 695, 702 (Bankr. S.D.N.Y. 2008) (citing Warth v. Seldin, 422 U.S. 490 (1975))); Singleton v. Wulff, 428 U.S. 106, 113-14 (1976) Dkt. No. 2226. In this case, both the OCE and the Settling Insurers have sophisticated counsel, more than capable advising their clients and raising and defending their clients' rights. Moreover, if the Insurers' argument is correct and it is a violation of the terms of the Plan to require the funding of the Trust before all appeals are exhausted, then those non-debtor parties can raise this issue when appropriate. Further, the Insurers argue that funding the Trust early would require waiver "not only by the Plan Proponents but also 'any Settling Insurer.'" Dkt. No. 3763. As such, the Settling Insurers are in no danger of harm because the Settling Insurers have the right to refuse to waive the requirement of a final order. Finally, even assuming the Insurers had standing to raise the rights of third parties, and these parties would be harmed, the only injury identified by the Insurers is that the OCE could lose their contributions to the Trust, which would be a purely economic injury, and so not an "irreparable harm." For all these reasons, this argument is rejected.

The Insurers next argue that they will be irreparably harmed if the stay is not extended because it could make the appeal equitably moot. Dkt. Nos. 3701, 3763. They argue the Plan

6

Proponents will attempt to fund the Trust and "substantially consummate" the Plan, denying the Insurers any appellate remedy. Dkt. No. 3701 at 28. However, the Insurers also argue that the issues on appeal "relate to issues other than the Debtor's contribution to the Trust" and therefore they do not believe that the appeal could be equitably mooted. Id.

The court in Boy Scouts considered this issue, in a factually similar scenario and noted that "[t]he possibility that an appeal may become moot does not alone constitute irreparable harm for purposes of obtaining a stay." See Boy Scouts, 2023 WL 2891519, at *7 (D. Del. Apr. 11, 2023) (citing In re Tribune Co., 477 B.R. 465, 477, n.12 (Bankr. D. Del. 2012)). "[I]f equitable mootness alone could serve as the basis of irreparable injury, a stay would be issued in every case of this nature pending appeal," the appellants must show something more. Id. (quoting In re W.R. Grace & Co., 475 B.R. 34, 207 (D. Del. 2012), aff'd sub nom. In re WR Grace & Co., 729 F.3d 332 (3d Cir. 2013), and aff'd, 532 F. App'x 264 (3d Cir. 2013), and aff'd sub nom. In re WR Grace & Co., 729 F.3d 332 (3d Cir. 2013), and aff'd, 729 F.3d 311 (3d Cir. 2013)). The Boy Scouts court stated that the appellants had failed to demonstrate any further harm they could suffer that would be irreparable. The insurers in Boy Scouts argued that if the appeal was equitably mooted, they may lose the benefit of their bargain in the insurance policies. Id. at *8. However, the court found that this was a speculative harm, and fell short of being "actual and imminent," as required. Id. (citing Revel, 802 F.3d at 571). The insurers in that case also argued that equitable mootness would not apply to the case, and that the Third Circuit would retain the ability to fashion relief with respect to the plan. Id.

Similarly in this case, the potential that the appeal will become equitably moot is not sufficient to show "irreparable harm." The Insurers argue that equitable mootness can be sufficient basis to show irreparable harm, relying on In re Cujas, 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007). Dkt. No. 3763. However, the majority view holds that "risk of mootness," standing alone, does not

7

constitute irreparable harm, and the Third Circuit has already ruled on this issue. See Rep. of Phil. v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir.1991) ("Certainly the fact that the decision on the stay may be dispositive of the appeal in some cases is a factor that an appellate court must consider, but that alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant should the stay not be granted."). See also In re Trans World Airlines, Inc., 2001 WL 1820325, at *10 (Bankr. D. Del. Mar. 27, 2001), aff'd 322 F.3d 283 (3d Cir. 2003); In re Tribune Co., 477 B.R. at 477, n.12; Schroeder v. New Century Liq. Trust (In re New Century TRS Holdings, Inc.), 2009 WL 1833875, at *2 (D. Del. June 26, 2009); In re W.R. Grace, 475 B.R. at 207; In re Los Angeles Dodgers LLC, 465 B.R. 18, 36 (D. Del. 2011). Indeed, in Boy Scouts the appellants returned to court seeking a stay after the Supreme Court granted certiorari on the issue of third-party releases in Purdue, the court reiterated that equitable mootness, by itself is insufficient basis to grant a stay pending appeal. In re Boy Scouts of Am. & Delaware BSA, LLC, 2023 WL 6442586, at *8 (D. Del. Oct. 3, 2023).

The Court agrees with Boy Scouts and the majority of other courts to consider this issue - equitable mootness, alone, is not sufficient to establish an "irreparable injury." Moreover, as the Insurers argue, it is not a forgone conclusion that their appeals would be equitably moot if the Plan becomes effective. If the Insurers prevail on their appeals, it is quite possible the District Court or Third Circuit could craft a remedy to grant the Insurers relief. As such, equitable mootness would be a hypothetical injury at best.

The Insurers' remaining arguments are equally unpersuasive. The Insurers argue that they will suffer irreparable harm if no stay is granted because they will be unable to exercise their due process rights, due to the Court denying them standing to object on several issues. Dkt. Nos. 3701 at 30; 3763 at 19-20. Further, they argue that they are denied their due process rights because the

8

plan strips them of their rights to object to claims. Id. However, this argument is merely a rephrasing of the equitable mootness argument. The Insurers' alleged harm is that the appellate court would be unable to fix any error the Court made in confirming the Plan, because the Plan would be substantially consummated. These arguments are rejected for the same reasons as discussed above. Further, the Insurers' alleged harms are speculative or hypothetical only, and do not appear valid. The Insurers argue the Plan strips them of their defenses by providing that: (i) an interim distribution cannot, by itself, form a basis to deny coverage, and (ii) the Insurance Assignment cannot form a basis to deny coverage (subject to the Insurers' rights to challenge the assignment under state law). Dkt. No. 3701 at 23. However, these arguments are dubious. If the assignment is not valid under New Jersey law, the Insurers can raise that as a basis to deny coverage. If the assignment is valid under state law, then it was not a defense the Insurers held under the Policies to begin with. Similarly, the Insurers maintain their right to all defenses to coverage, including that the Debtor improperly settled with a Survivor, and therefore the interim distributions caveat does not strip them of any defense they held under the Policies. Therefore, these arguments do not present evidence any harm, let alone irreparable harm, to the Insurers. In addition, the only actual harm the Insurers have identified in this argument is that this would lead to the Trust tendering invalid claims to the Insurers for payment, which "would create 'enormous' costs and uncertainty for the Insurers." Dkt. No. 3701. These potential injuries are speculative, and as the Insurers note in the Motion, not imminent as the process of evaluating and paying out Survivor Claims will take years. Dkt. No. 3701 at 32-33. Moreover, purely economic injury does not meet the burden to establish "irreparable harm." Boy Scouts, 2023 WL 6442586 at *8 (quoting Revel, 802 F.3d at 571). Economic injuries are the only remaining injuries of which the Insurers complain, and these can be addressed by a legal or equitable remedy. Id.

For all these reasons, the Insurers have failed to meet their burden to show an irreparable harm absent a stay pending appeal. Therefore, this factor weighs against granting a stay.

### 3. Substantial Injury to Other Parties

In considering the potential harm to other parties, "courts balance the harms by weighing the likely harm to the movant absent a stay, the second factor, against the likely harm to stay opponents if the stay is granted, the third factor." Boy Scouts, 2023 WL 6442586, at *9 (citing Revel, 802 F.3d at 569). The Insurers argue a stay of the Plan going effective would not harm other parties. Dkt. Nos. 3701; 3763. Specifically, the Insurers argue that because the Plan was solicited noting that the Effective Date could be delayed if appeals were filed, voting creditors were aware of this risk when they voted and accepted that risk. Further, they argue that there is no harm to Survivors, because the Abuse Claims must go through a lengthy evaluation process and may wait "four years" to receive their full claim amounts. Id.

These arguments are not persuasive. Initially, while the claim evaluation process may indeed be lengthy, that process cannot begin until the Plan becomes effective and the Trust is formed. Therefore, if the Effective Date is delayed for several years during appeals, it will extend the time Survivors will have to wait to receive any recovery. This is particularly concerning given that many of the Survivors are elderly, raising the concern that a delay of considerable length would risk some or even many of the Survivors not receiving any recovery or closure prior to passing. See Boy Scouts, 2023 WL 6442586, at *9 (noting that a large group of abuse survivors are aged and should not continue to wait for compensation or closure).

The Plan Proponents note that, in addition to the harm of delay to Survivors, the Debtor will suffer harm from continued delay. Dkt. No. 3751. The Plan Proponents note that the Debtor is a non-profit entity, and its purpose in filing bankruptcy was to reach a settlement with survivors while ensuring it could continue to serve its mission to the public. Additionally, the Plan

10

Proponents argue that Survivors will be injured because the Trust will not earn interest on the millions of dollars it will hold until it is funded. Id. Finally, they (and the Trade Committee) argue that other creditors will be injured by a stay because of the delay in receiving their distributions under the Plan. Id. In addition to those raised by the Plan Proponents, the Court notes that continued the uncertainty surrounding the status of this case may result in a greater difficulty to secure donations and recruit new members, as the case is continually delayed. See generally, Boy Scouts, 2023 WL 2891519, at *1 (noting the debtor's complaint that a continued stay pending appeal will hurt the organizations' ability to recruit new members and secure donations).

The Court finds the potential harm to other parties, including the Debtor, the Survivors, and other creditors could be substantial, and outweighs any of the hypothetical harms described by the Insurers. This factor weighs against granting a stay.

### 4. Public Policy

"In weighing a request for a stay pending appeal, courts 'consider the good of the case as a whole,' because the 'public interest cannot tolerate any scenario under which private agendas can thwart the maximization of value for all.'" Boy Scouts, 2023 WL 6442586, at *9 (quoting In re Adelphia Commc'ns Corp., 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007)).

The Insurers argue that "public interest favors the correct application of the law," particularly where property interests are at stake. Dkt. No. 3701. The Insurers also argue that ensuring litigants are able to pursue appellate rights is a strong public interest. However, neither of these is persuasive. If ensuring the correct application of the law was paramount, then this factor would always weigh in favor of granting a stay pending appeal, and there would be no need to consider it. Further, the Insurers failed to establish that their property rights will be in jeopardy when arguing that they would suffer irreparable harm absent a stay pending appeal. Moreover, the Insurers' appellate rights are likely not in jeopardy, because as the Insurers argue, equitable

mootness may not apply. Additionally, this is simply a way of recasting the irreparable harm argument into a public policy argument.

The Plan Proponents argue that the strongest public interest is in ensuring the Survivors receiving compensation for the abuse they suffered. In Boy Scouts, the court found that timely resolution of the bankruptcy estate was in the public interest, particularly in a case, such as here, where there are significant number of creditors whose claims were premised on sexual abuse, and many of whom are elderly and entitled not only to recovery, but closure. See Boy Scouts, 2023 WL 6442586, at *9. Finally, the court noted that "public interest cannot tolerate any scenario under which private agendas can thwart the maximization of value for all." Id. (quoting Adelphia Commc'ns, 368 B.R. at 284).

This Court agrees and finds that the public interest weighs in favor of denying the Motion.

## C. Alternative Relief

At the Hearing the Insurers also requested a ten-week stay, pending the decision of the Supreme Court on the issues pending before it. Hearing, at 11:40 a.m. However, for all the reasons discussed above, the Insurers failed to establish they were entitled to a stay, and that analysis is no different when considering a ten-week stay.

Finally, the Insurers requested that, in the alternative to granting a stay pending appeal, the Court grant a stay for the benefit of the District Court, to allow it time to consider the Insurers request for a stay pending appeal. Hearing, at 11:15-16 a.m. The district court in Boy Scouts considered a very similar question, when it denied the appellants request for a stay for the benefit of the Third Circuit. 2023 WL 2891519, at *2. The court noted that appeal and motion for stay were already before the Third Circuit, which had authority to grant any order in deemed appropriate, including stay orders to preserve the status quo, and stated "I do not think it is my place to suggest how much time the [Third Circuit] needs to consider requests directed to it for

emergency relief." Id. This Court agrees with that reasoning and finds it equally applicable here. The Insurers have filed a motion seeking a stay pending appeal before the District Court, that court has the authority to grant any order it deems appropriate, and it is not the place of this Court to presume to tell the District Court how much time it requires to consider the motions before it. Therefore, this relief is also denied.

### D. Conclusion

For the reasons discussed above, the Insurers have not shown that there is likelihood of irreparable harm, and the balancing of harms and public interest both weigh in favor of not granting a stay pending appeal. Therefore, the Motion will be denied. The alternative relief of a ten-week stay is denied. The request for a stay until the District Court rules on the motion before it is also denied.

Dated: April 23, 2024

_____
JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE